UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────

PALANI KARUPAIYAN,

                          Plaintiff,


                    -v.-                                19 Civ. 8814 (KPF)

CVS HEALTH CORPORATION; AETNA INC.;            **OPINION AND ORDER**
ACTIVEHEALTH MANAGEMENT, INC.;
LAKSHMI KALYANI BELLAMKONDA; ROBERT
DENNER; APN CONSULTING, INC.; VEDANT
PATHAK; NEELA PATHAK; and PURVI JHALA,

                          Defendants.

─────────────────────────────

KATHERINE POLK FAILLA, District Judge:

Plaintiff Palani Karupaiyan ("Plaintiff"), proceeding *pro se*, brings this suit

against APN Consulting, Inc. ("APN"), APN executives Vedant Pathak, Neela

Pathak, and Purvi Jhala (collectively, the "APN Defendants"); CVS Health

Corporation ("CVS"), Aetna, Active Health Management ("AHM"), and Aetna

employees Kalyani Lakshmi Bellamkonda and Robert Denner (collectively, the

"CVS Defendants," and together with the APN Defendants, "Defendants"),[1]

alleging a litany of civil rights violations, tortious conduct, and criminal

activity, stemming from the two-month period in the summer of 2019 when

───────────────

[1]    For ease of reference, the Court refers to Vedant Pathak and Neela Pathak as "Vedant"
       and "Neela," respectively, and to Kalyani Lakshmi Bellamkonda as "Kalyani."  Vedant,
       Neela, Jhala, Kalyani, and Denner are collectively referred to as the "Individual
       Defendants."  APN, CVS, Aetna, and AHM are collectively referred to as the "Corporate
       Defendants."

       The CVS Defendants clarify in their motion to dismiss that Defendants Aetna,
       ActiveHealth Management, and Kalyani Lakshmi Bellamkonda are properly identified as
       Aetna Inc., ActiveHealth Management, Inc., and Lakshmi Kalyani Bellamkonda,
       respectively.  (Dkt. #42).  The Clerk of Court is directed to amend the caption of this
       case to conform with the caption of this Opinion.

Plaintiff provided services to CVS and its affiliates.  Plaintiff's Amended Complaint posits wide-ranging theories of harm in its 33 counts, including claims for discrimination, retaliation, hostile work environment, constructive discharge, failure to hire, failure to promote, failure to accommodate disabilities, breach of contract, copyright infringement, intentional infliction of emotional distress, assault, and attempted murder.  Plaintiff's efforts to be thorough, however, are at times overinclusive, such as his invocation of upwards of 30 statutory provisions, without regard to whether each provision exists, is applicable to this case, or contains a private cause of action.  Plaintiff seeks billions of dollars of compensatory and punitive damages, as well as declaratory and injunctive relief.

The CVS Defendants and the APN Defendants have separately moved to dismiss the entirety of Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6).  For the reasons set forth in the remainder of this Opinion, Defendants' motions to dismiss are granted in part and denied in part.

## BACKGROUND[2]

### A.    Factual Background

Plaintiff is a 49-year-old naturalized U.S. citizen, who was born in Tamil Nadu, a state in southern India.  (Am. Compl. ¶¶ 25, 28).  He describes himself

---

[2]    This Opinion draws its facts primarily from Plaintiff's Amended Complaint ("Am. Compl." (Dkt. #34)), the well-pleaded allegations of which are taken as true for purposes of this motion.  *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).  The Court also relies on the exhibits attached to the Declaration of Vedant Pathak submitted in support of the APN Defendants' motion to dismiss ("Pathak Decl., Ex. [ ]" (Dkt. #40)).  In particular, the

as a follower of the Hindu religion.  (*Id.* at ¶ 25).  Plaintiff has diabetes, as well as Situs Inversus Totalis ("SIT"), a genetic disability to which he ascribes pulmonary and vascular issues.  (*Id.* at ¶¶ 27, 88).  Plaintiff is also a seasoned software engineer, with more than 25 years of engineering, coding, and information technology experience.  (*Id.* at ¶¶ 28-29).

AHM is a health data management company that offers "clinical and consumer analytics, care management, [and] health, lifestyle and wellness programs[.]"  (Am. Compl. ¶ 5).  AHM is a fully owned subsidiary of Aetna, which in turn is owned by CVS.  (*Id.* at ¶¶ 4-5).

On or about May 3, 2019, Plaintiff was contacted by a recruiter from APN, an information technology staffing firm, regarding a "contract to hire [a] Software Engineer with AHM/Aetna."  (Am. Compl. ¶¶ 11-13, 30).  The application process involved multiple interviews and a background check.  (*Id.*

---

Court considers the Contractor Agreement between APN and Karupaiyan Consulting, Inc. ("Contractor Agreement" (Pathak Decl., Ex. A)), and the Fee Schedule & Assignment Outline ("Fee Schedule" (*id.*, Ex. B)), the latter of which was incorporated into the Contractor Agreement, because Plaintiff refers extensively to these documents in the Complaint and relied upon them in bringing certain causes of action.  (*See* Am. Compl. ¶ 40 (citing ten provisions of the Contractor Agreement); *id.* at ¶¶ 164-165 (asserting claim for breach of contract)).  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." (internal quotation marks and alterations omitted)); *accord Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

For ease of reference, the Court refers to the CVS Defendants' memorandum of law in support of their motion to dismiss as "CVS Br." (Dkt. #43); Plaintiff's opposition to the CVS Defendants' motion to dismiss as "Pl. CVS. Opp." (Dkt. #46); the CVS Defendants' reply brief as "CVS Reply" (Dkt. #48); the APN Defendants' memorandum of law in support of their motion to dismiss as "APN Br." (Dkt. #38); Plaintiff's opposition to the APN Defendants' motion to dismiss as "Pl. APN Opp." (Dkt. #47); and the APN Defendants' reply brief as "APN Reply" (Dkt. #50).  Except as otherwise noted, the Court's citations to Plaintiff's written submissions are not edited, but rather reflect Plaintiff's typographical and grammatical conventions.

at ¶¶ 32-33, 35-36).  Thereafter, on or about May 28, 2019, Plaintiff, via the

business entity Karupaiyan Consulting, Inc., entered into a Contractor

Agreement with APN that delimited the relationship between Plaintiff and APN

and the services that Plaintiff was to provide to APN's client, AHM.  (*See id.* at

¶ 40; *see also* Pathak Decl., Ex. A (the "Contractor Agreement")).  In relevant

part, the Contractor Agreement provided that Plaintiff was to submit monthly

invoices and weekly client-approved timesheets to APN, and that APN would, in

turn, invoice AHM for Plaintiff's hours and pay Plaintiff for the services

rendered.  (*See* Am. Compl. ¶ 40(c), (e); Contractor Agreement ¶¶ 3, 5-6).  The

Fee Schedule & Assignment Outline, which was incorporated by reference into

the Contractor Agreement, set Plaintiff's hourly rate at $68 per hour and

provided that "[o]nce [the] Client determines the Project is completed, the

Contractor Service Agreement will terminate unless otherwise agreed."  (Pathak

Decl., Ex. B (the "Fee Schedule")).  The Contractor Agreement further provided

that "either party may terminate this agreement by giving the other 2 weeks'

prior written notice."  (Contractor Agreement ¶ 13; Am. Compl. ¶ 40(h)).

On or about June 17, 2019, Plaintiff began working as an "Independent

full-stack software engineer to single integrated employer

CVS/AETNA/AHM/APN."  (Am. Compl. ¶ 42).[3]  In particular, Plaintiff worked

---

[3]     Plaintiff makes little effort to distinguish the Corporate Defendants, frequently
        conflating them in conclusory fashion into a "single integrated enterprise."  Although
        CVS, Aetna, and AHM are all part of the same corporate family (Am. Compl. ¶¶ 4-6), the
        character of these distinct entities is highly relevant to several of Plaintiff's claims,
        especially those that require an employment relationship as a precondition.  For this
        very reason, Defendants dispute that Plaintiff had an employment relationship, as
        opposed to an independent contractor relationship, with any of them.  (*See, e.g.,* APN

on implementing technical improvements to an AHM application called "MyActiveHealth," or "MAH," which application assisted AHM clients and customers in maintaining their health management plans. (*Id.* at ¶¶ 41-43, 112). Plaintiff has acknowledged that "APN hired [him] to only work with this CVS project." (*Id.* at ¶ 47).

Plaintiff alleges that, throughout the course of his engagement with Aetna-AHM, he was subjected to unfair, harmful, and discriminatory treatment at the hands of various colleagues. One way this mistreatment manifested was via issues with Plaintiff's work equipment and workspace. According to Plaintiff, Aetna-AHM delayed in providing him a work laptop for the first three weeks of his employment (Am. Compl. ¶ 75), and when the laptop finally arrived, it turned out to be inefficient, "poor performing," and "costly" (*id.* at ¶¶ 54-57). In addition, Plaintiff's desk was wobbly, which forced him to take the extra precaution of buying a laptop case, at his own expense, to guard against the risk that his computer would teeter off his desk. (*Id.* at ¶¶ 80-81). Separately, renovations taking place on the floor above his workspace caused large amounts of dust to fall from the ceiling onto Plaintiff's desk, which "made it difficult [for him] to breathe, and caused chest pain and frequent coughing." (*Id.* at ¶ 88). Plaintiff's request to move was denied by Kalyani, a Senior

Br. 1, 9; CVS Br. 7 n.6). The Court will address these arguments later in this Opinion. *See* Discussion Sec. C(2)(a).

Notwithstanding the difficulty in discerning the precise entities to which Plaintiff provided services, and without expressing a legal conclusion as to the nature of Plaintiff's relationship with any Defendant, the Court will use "Aetna-AHM" in this Opinion to refer to the entity to which Plaintiff provided services during the relevant period.

Director at Aetna and his direct supervisor, despite her apparent awareness of Plaintiff's lung condition.  (*Id.* at ¶¶ 62-63, 88).

Plaintiff made several additional requests for accommodations, all of which were denied by Kalyani.  These included: (i) his request to eat at his desk (Am. Compl. ¶ 87); (ii) his request to be given access to an office locker to store his laptop because of pain attributed to carrying the laptop to and from work (*id.* at ¶ 89); (iii) his multiple requests to use a larger computer monitor because his diabetes caused his eyes to strain while using the small laptop screen (*id.* at ¶¶ 90-92); and (iv) his requests to work from home when he had doctor's appointments (*id.* at ¶¶ 93-95).  Plaintiff alleges that in each instance, other employees were permitted the very accommodations he sought.  (*Id.* at ¶¶ 87, 89, 90-91, 93, 95).

Plaintiff's supervisors also made repugnant comments concerning his race and national origin.  In or about the third week of June 2019, Kalyani and a test engineer from Plaintiff's team told Plaintiff that "he speaks like a 'black apple.'"  (Am. Compl. ¶ 97).  On another unspecified occasion, Neela, a Vice President at APN Consulting who also supervised Plaintiff, told him that because he was a "black old Madrasi" she would endeavor to remove him from the project on which they were working.  (*Id.* at ¶¶ 15, 98).  And on or around September 6, 2019, Plaintiff called Vedant, APN's founder and CEO, to look into backpay he believed he was owed, to which request Vedant responded that he would "beat [Plaintiff] because [he is] black, sick, madrasi tamil if [he] request[s] money again."  (*Id.* at ¶¶ 14, 117).

In early August 2019, Kalyani told Plaintiff that someone else would be replacing him in his position. (Am. Compl. ¶ 100). Plaintiff's replacement was a "young white Muslim man in [his] 20s." (*Id.* at ¶ 73). In or about the second week of August 2019, Kalyani told the other members of Plaintiff's team that they should not speak to Plaintiff about work-related matters. (*Id.* at ¶ 105). Plaintiff was subsequently fired from his position on August 26, 2019. (*Id.* at ¶ 106).

Plaintiff alleges that around the time of his termination, Kalyani told Denner, an Aetna employee, to "kick the 'black old tamil guy out of here immediately.'" (Am. Compl. ¶ 107). Denner proceeded to lead Plaintiff to a meeting room, where Jhala, an APN employee, was waiting. (*Id.*). Upon entering the room, Denner and Jhala told Plaintiff that his job was being outsourced to India. (*Id.* at ¶ 108). Denner asked Plaintiff to hand over his laptop, after which time "[s]omeone grabbed [Plaintiff] and kicked [him] repeatedly." (*Id.*). Denner then told Plaintiff, "you black guy, go back to India," before escorting him off the premises. (*Id.*). At some point, Plaintiff overheard Denner and Jhala say that they should "erase the evidences from the Macbook." (*Id.* at ¶ 223).

Plaintiff was never paid for the work he performed during his time at Aetna-AHM. (Am. Compl. ¶ 103). As a result, Plaintiff was unable to purchase "kidney protection medicine" and consequently suffered damage to his kidneys and bladder. (*Id.* at ¶¶ 110, 114-115). He further alleges that a number of

personal items, including his monitor cables, USB hub, iPhone, and laptop

case, remain in Aetna's possession.  (*Id.* at ¶ 111).

## B.    Procedural Background

Plaintiff initiated the instant lawsuit on September 23, 2019, with the

filing of a 38-count complaint against the CVS and APN Defendants.  (Dkt.

#2).[4]  On March 9, 2020, the APN Defendants filed a letter motion seeking leave

to file a motion to dismiss the initial complaint.  (Dkt. #26).  On March 16,

2020, the CVS Defendants filed a letter motion seeking the same.  (Dkt. #29).

On May 26, 2020, the Court held a pre-motion conference, during which it

sought to clarify the allegations contained in Plaintiff's initial complaint, and

granted Plaintiff leave to file an amended pleading.  (*See* Dkt. #56 at 9-21, 42-

43 (transcript)).  Also at this conference, Plaintiff provided the Court his

consent to contact the New York Legal Assistance Group ("NYLAG") to speak

with Plaintiff about preparing an amended pleading.  (*See id.* at 41).  The

following day, the Court issued an order, which set a deadline for Plaintiff to

---

4      Plaintiff appends to his Amended Complaint two Equal Employment Opportunity
       Commission ("EEOC") right-to-sue letters, dated May 4, 2020, and May 6, 2020, as well
       as a letter from the New York State Division of Human Rights, dated December 19,
       2019, the latter communicating the agency's contemplation of dismissal of Plaintiff's
       action.  (Am. Compl. at 28-31).  Although Plaintiff initiated the instant dispute *before*
       the issuance of any of these documents, Defendants do not challenge Plaintiff's
       discrimination claims on grounds of procedural infirmity.  Thus, the Court does not
       consider these procedural deficiencies as a basis for dismissal of Plaintiff's employment
       discrimination claims.  *See Brunson-Bedi* v. *New York*, No. 15 Civ. 9790 (NSR), 2018 WL
       2084171, at *4 (S.D.N.Y. May 1, 2018) ("Courts in this circuit have ... held that where a
       plaintiff has received a right to sue letter subsequent to commencement of a Title VII
       action and while the federal action is still pending, the statutory exhaustion
       requirements have been met based on ... equitable principles." (internal quotation
       marks omitted)) (collecting cases); *see also Moore* v. *City of New York*, No. 15 Civ. 4578
       (KPF), 2016 WL 3963120, at *6 (S.D.N.Y. July 21, 2016) ("[T]he filing requirements of
       Title VII and the ADA are *not* jurisdictional[.]" (quoting *Zerilli-Edelglass* v. *N.Y.C. Transit
       Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003))).

file an amended complaint and informed Plaintiff that a NYLAG representative was expected to contact him about his matter. (Dkt. #32).

On July 31, 2020, Plaintiff filed the Amended Complaint, which is the operative pleading in this case. (Dkt. #33-34).[5] On August 14, 2020, the CVS and APN Defendants jointly filed an application noticing the Court of their intent to move to dismiss Plaintiff's Amended Complaint. (Dkt. #35). That same day, the Court granted Defendants' application and set a briefing schedule for their motions to dismiss. (Dkt. #36). Defendants filed their opening submissions on September 14, 2020 (Dkt. #37-40 (APN); Dkt. #42-43 (CVS)). After receiving an extension on the deadline for his opposition (*see* Dkt. #45), Plaintiff filed his opposition papers on December 15, 2020 (Dkt. #46 (Pl. CVS Opp.)), and December 22, 2020 (Dkt. #47 (Pl. APN Opp.)).[6] Defendants filed their reply papers on February 22, 2021. (Dkt. #48 (CVS); Dkt. #49-50 (APN)).

On March 23, 2021, Plaintiff filed motions seeking to compel Defendants to produce a laptop in discovery and to move for summary judgment due to Defendants' purported destruction of evidence. (Dkt. #51-53). That same day,

---

[5]    The Southern District of New York's Pro Se Intake Unit received and docketed Plaintiff's Amended Complaint on August 5, 2020. (Dkt. #34). Despite the separate docket entry, this amended pleading is substantively identical to that which was filed on July 31, 2020. The only difference the Court can discern between these two filings is that the earlier filed Amended Complaint appears to have mis-rendered Plaintiff's May 4, 2020 EEOC right-to-sue letter. (*See* Dkt. #33 at 28). As this letter is properly rendered in the latter-filed version of the Amended Complaint (*see* Dkt. #34 at 31), all citations to the operative pleading in this Opinion are to this document.

[6]    Plaintiff's opposition papers mainly consist of reassertions of the factual allegations in the Amended Complaint and citations to caselaw, not all of which is apposite. As such, the Court makes only sparing reference to Plaintiff's briefing.

the Court denied these motions as premature, noting the pendency of Defendants' two fully-briefed motions to dismiss.  (Dkt. #54).  Accordingly, Defendants' motions to dismiss are ripe for review.

## DISCUSSION

**A.      Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**[7]

Under Rule 12(b)(6), a defendant may seek dismissal of a plaintiff's action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in Plaintiff['s] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'"  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff is entitled to relief if the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it

---

[7]      Defendants argue that Plaintiff's claims should be dismissed for failure to comply with Federal Rule of Civil Procedure 8's requirement that a complaint plead a "short and plain statement of the claim showing that the pleader is entitled to relief."  (APN Br. 4; CVS Br. 5 n.3 (quoting Fed. R. Civ. P. 8(a)(2))).  While the Amended Complaint is hardly a model of clarity, this Court is obligated to "make reasonable allowances to protect *pro se* litigants from the inadvertent forfeiture of important rights because of their lack of legal training."  *Traguth* v. *Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  The Court is cognizant of the burden that Defendants have shouldered in responding to Plaintiff's scattered allegations, but it does not perceive the Amended Complaint to be so "confused, ambiguous, vague, or otherwise unintelligible" as to warrant dismissal on Rule 8 grounds.  *Salahuddin* v. *Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials."  *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  This narrow universe includes "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken," as well as documents that can properly be considered "integral" to the complaint. *Id.* (internal alterations omitted).  Here, the Court may consider the Contractor Agreement and the Fee Schedule incorporated by reference therein, as they are integral to the Amended Complaint.  *See id.* ("A document is integral to the complaint "where the complaint relies heavily upon its terms and effect." (quoting *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'"  *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  "However inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff

11

can prove no set of facts in support of her claim which would entitle her to relief." *Legeno* v. *Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (summary order) (internal quotation marks and alterations omitted) (quoting *Posr* v. *Ct. Officer Shield No. 207*, 180 F.3d 409, 413 (2d Cir. 1999)). With that said, to survive a Rule 12(b)(6) motion to dismiss, a *pro se* plaintiff's factual allegations must at least "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Even in the *pro se* context, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

The Court notes that Plaintiff secured the services of NYLAG in preparing his Amended Complaint. (*See* Am. Compl. at 1 n.1). This Court has previously declined to afford special solicitude to *pro se* plaintiffs whose submissions were prepared with NYLAG's assistance. *See Littlejohn* v. *Consol. Edison Co. of N.Y., Inc.*, No. 18 Civ. 6336 (KPF), 2019 WL 3219454, at *1 n.1 (S.D.N.Y. July 17, 2019); *Price* v. *City of New York*, No. 15 Civ. 5871 (KPF), 2018 WL 3117507, at *5 n.5 (S.D.N.Y. June 25, 2018). The Court remains cognizant, however, that "[i]f *pro se* litigants who receive limited assistance from NYLAG lose all protections afforded to them, NYLAG faces a catch-22: providing less than full representation will harm litigants by eliminating the special care otherwise afforded." *Antrobus* v. *N.Y.C. Health & Hosps. Corp.*, No. 19 Civ. 7449 (KPF), 2021 WL 964438, at *6 (S.D.N.Y. Mar. 15, 2021) (quoting *Campa* v. *Entergy*

*Nuclear Operations, Inc.*, No. 17 Civ. 792 (KMK), 2019 WL 4221560, at *8 n.2

(S.D.N.Y. Sept. 5, 2019)).  As in *Antrobus*, this Court need not resolve this

conflict at this time, as Plaintiff's allegations are insufficient to state a claim for

relief as to certain claims "even when read with special solicitude."  *Id.*

## B.     Overview of Plaintiff's Claims

Plaintiff includes 33 counts in the Amended Complaint, presented

without any discernable organizing principle.  In each numbered count,

Plaintiff includes a variegated list of purported causes of action, in which he

eschews specific provisions of law in favor of gesturing broadly to a catalog of

potentially applicable laws.  One consistent through line is that Plaintiff

invokes civil rights claims under federal, state, and city antidiscrimination laws

in every count, regardless of their applicability.  Plaintiff also brings most

counts against all Defendants, both individual and corporate, irrespective of

whether the statutes cited allow for individual liability.

To facilitate an orderly adjudication of this motion, the Court considers

each of Plaintiff's claims as falling into one of five overarching categories of

violations: (i) Employment Discrimination;[8] (ii) Wage and Hour;[9] (iii) Common

---

[8]    The Court classifies the following counts as asserting employment discrimination
       claims: Count 1 (Racial/Color/Ethnicity/Heritage Discrimination); Count 2 (Disability
       Discrimination); Count 3 (National Origin Discrimination); Count 4 (Religion
       Discrimination); Count 5 (Retaliation); Count 6 (Age Discrimination); Count 7 (Genetic
       Disability Discrimination); Count 8 (U.S. Citizenship Discrimination); Count 9 (Hostile
       and Abusive Working Environment); Count 10 (Constructive Termination/Wrongful
       Discharge); Count 11 (Failure to Hire or Failure to Promote); Count 12 (Favoring
       Foreigner Against U.S. Citizen); Count 14 (Unequal Terms and Conditions); Count 24
       (Harmful/Unsafe Workplace); Count 27 (Outsourcing Discrimination Against U.S.
       Citizen); Count 28 (Harassment); and Count 30 (Gender).

[9]    The Court classifies the following counts as asserting wage and hour claims: Count 15
       (Unpaid Expenses); Count 25 (Loss of Income); and Count 32 (Unpaid Overtime).

Law Torts;[10] (iv) Criminal and Racketeering Acts;[11] and (v) Copyright and Intellectual Property.[12]  The Court will proceed to assess the claims contained in each category in turn.

## C.     The Court Grants in Part and Denies in Part Defendants' Motions to Dismiss Plaintiff's Employment Discrimination Claims

The first category is the most expansive: Plaintiff brings seventeen claims that the Court classifies under the general rubric of employment discrimination.  As described above, rather than tie particular defendants to discrete statutory violations, Plaintiff takes a much looser organizational approach, bundling together multiple potentially relevant statutes in each count, without specifying any particular provision that any particular Defendant may have violated.  Thus, as the Court understands his pleadings, Plaintiff asserts many more than seventeen employment discrimination claims. Considering the appropriate legal framework for Plaintiff's assertions, the Court focuses on whether Plaintiff has stated viable claims for discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101 to 12213; 42 U.S.C. § 1981 ("Section 1981"); the Age Discrimination

---

[10]     The Court classifies the following counts as asserting common law tort claims: Count 13 (Intentional Infliction of Emotional Distress); Count 16 (Fraud); Count 18 (Assault); Count 19 (Elevated Injury); Count 20 (Extreme Cruelty); and Count 31 (Destruction of Evidence).

[11]     The Court classifies the following counts as asserting criminal or racketeering claims: Count 17 (Bribery/Corruption); Count 21 (Attempted Murder); Count 22 (Reduced Lifespan); Count 23 (Torture); Count 26 (Robbery); and Count 29 (Civil Conspiracy).

[12]     The Court classifies the following count as asserting copyright or intellectual property claims: Count 33 (Copyright/Intellectual Property).

in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621 to 634; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 to 297; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-131.[13]

In brief, Plaintiff alleges that during his approximately two-month engagement with Aetna-AHM, both the Corporate and the Individual Defendants perpetrated discriminatory acts against him on the basis of at least eleven protected characteristics, including race, color, ethnicity, heritage, national origin, age, gender, and U.S. citizenship. In addition to discrete instances of allegedly biased conduct, Plaintiff asserts broader claims of hostile work environment, harassment, and retaliation. Defendants argue that Plaintiff has failed to adequately plead any of his employment discrimination claims.

---

[13]     Plaintiff also cites the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. ch. 21F ("GINA"), in various counts. The GINA makes it unlawful for an employer to discriminate based on an employee's genetic information, defined as "information about — (i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." 42 U.S.C. §§ 2000ff(4)(A), 2000ff-1(a)(1).

Nowhere in the Amended Complaint does Plaintiff suggest that any Defendant possessed or considered any of his genetic information, as statutorily defined. Thus, the GINA does not apply to any of Plaintiff's claims, and the Court accordingly dismisses Count 7 ("Discrimination of Genetic disability/Genetic information in Violation of Title VII, GINA") in its entirety, as well as the portions of Counts 2, 5, 9, 10, 11, 13-25, 27, and 28 that reference the GINA.

1.   **The *McDonnell Douglas* Framework for Evaluating Claims of Employment Discrimination**

Disparate treatment claims under Title VII, the NYSHRL,[14] and Section 1981 are analyzed using the burden-shifting framework adopted in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).  *See Tolbert* v. *Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (Title VII, NYSHRL, and Section 1981 claims).  This analytical frame is also used for claims brought pursuant to the ADEA and the ADA.  *See Wells* v. *Achievement Network*, No. 18 Civ. 6588 (KPF), 2021 WL 810220, at *10 (S.D.N.Y. Mar. 2, 2021) (ADA); *Carter* v. *Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *4 (S.D.N.Y. Jan. 20, 2015) (ADEA).[15]

Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *McDonnell Douglas,* 411 U.S. at 802.  To satisfy that burden, a plaintiff must show that: "[i] he is a member of a protected class; [ii] he was qualified for the position he held; [iii] he suffered an adverse employment action; and [iv] the adverse action took place under circumstances giving rise to the inference of discrimination."  *Ruiz* v. *Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010).  The Supreme Court has held that, to withstand a motion to dismiss, an "employment discrimination plaintiff need not plead a *prima facie* case of discrimination."

---

[14]   In August 2019, the NYSHRL was amended to broaden its liability standards.  *See* NYSHRL § 300.  However, the conduct alleged here pre-dates the amendment, which does not have retroactive effect.  *See McHenry* v. *Fox News Network, LLC*, 510 F. Supp. 3d 51, 68-69 (S.D.N.Y. 2020).

[15]   In addition, "[f]ederal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*."  *Zann Kwan* v. *Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).  The Court discusses Plaintiff's retaliation claims below.  *See* Discussion Sec. C(2)(g)(i).

*Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 515 (2002). The Second Circuit clarified in the context of the analogous Equal Pay Act that, following *Swierkiewicz* and the pleading standards subsequently articulated in *Iqbal*, "while a discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC* v. *Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal citation, alterations, and quotation marks omitted); *accord Brown* v. *Daikin Am. Inc.*, 756 F.3d 219, 228-29 & n.10 (2d Cir. 2014) (discussing Title VII claims). As a practical matter, however, the elements of a *prima facie* case often provide an outline of what is necessary to render a plaintiff's claims for relief plausible. *See Wilson* v. *N.Y.C. Dep't of Corr.*, No. 11 Civ. 9157 (PAE), 2013 WL 922824, at *4 (S.D.N.Y. Mar. 8, 2013), *appeal dismissed* (July 24, 2013).

The standard for unlawful employment practices is lower under the NYCHRL than under federal or (pre-amendment) state law. *See Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *see also* NYCHRL § 8-107. For NYCHRL claims, a plaintiff need not show that any adverse employment action was "material," but rather must allege differential treatment that is "more than trivial, insubstantial, or petty." *Gorman* v. *Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015) (quoting *Williams* v. *Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011)); *see also Mihalik*, 715 F.3d at 110 (concluding that to state a claim for discrimination

17

under the NYCHRL, "the plaintiff need only show differential treatment — that [he] is treated 'less well' — because of" a protected characteristic). Therefore, where a discrimination claim under federal or New York state law is dismissed, a separate analysis is needed to determine whether a parallel NYCHRL allegation states a claim. *See Gachette* v. *Metro-N. Commuter R.R. Co.*, 804 F. App'x 65, 67 (2d Cir. 2020) (summary order).

Title VII, the ADEA, and the ADA do not provide for individual liability. *See Tomka* v. *Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (Title VII), *abrogated on other grounds by Burlington Indus., Inc.* v. *Ellerth*, 524 U.S. 742 (1998); *Cherry* v. *Toussaint*, 50 F. App'x 476, 477 (2d Cir. 2002) (summary order) (ADEA); *Gomez* v. *N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 302-03 (S.D.N.Y. 2016) (ADA). Thus at the threshold, all of Plaintiff's claims brought against the Individual Defendants pursuant to these statutes are dismissed.

Conversely, Section 1981 does allow for individual liability under appropriate circumstances. *See Whidbee* v. *Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) ("A claim seeking personal liability under section 1981 must be predicated on the actor's *personal involvement.*" (emphasis added)). To state a claim under Section 1981 against an individual, a plaintiff must allege sufficient facts to demonstrate the defendant was personally or directly involved in the violation, that is, that there exists "some affirmative link to causally connect the actor with the discriminatory action." *Tardd* v. *Brookhaven Nat'l Lab'y*, 407 F. Supp. 2d 404, 411-12 (E.D.N.Y. 2006) (quoting *Whidbee*, 223 F.3d at 75).

The NYSHRL also provides for individual liability where the individual defendant: (i) is considered an "employer," NYSHRL § 296(1), or (ii) aided and abetted the unlawful discriminatory acts of others, *id.* § 296(6).  *See Gorman*, 146 F. Supp. 3d at 521-22.  As relevant to this motion, an individual defendant may be liable as an "employer" under the NYSHRL "when that individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others," *i.e.*, the power to hire or fire. *Townsend* v. *Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (internal quotation marks omitted).  A supervisor can be held individually liable under the NYSHRL if he or she "actually participates in the conduct giving rise to [the] discrimination."  *Feingold* v. *New York*, 366 F.3d 138, 157 (2d Cir. 2004) (quoting *Tomka*, 66 F.3d at 1317).

"The NYCHRL provides a broader basis for direct individual liability than the NYSHRL," in that individual liability of an employee may be found "regardless of ownership or decisionmaking power."  *Malena* v. *Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012).  "A claim for aider and abettor liability is also cognizable under the NYCHRL."  *Schanfield* v. *Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009); *see generally Boonmalert* v. *City of New York*, 721 F. App'x 29, 34 (2d Cir. 2018) (summary order).

### 2.   Analysis of Plaintiff's Disparate Treatment Claims

Plaintiff alleges that Defendants unlawfully discriminated against him based on at least eleven different protected classifications, including race,

color, ethnicity, and heritage (Count 1), disability (Count 2), national origin (Count 3), religion (Count 4), age (Count 6), genetic information (Count 7), U.S. citizenship (Counts 8, 12, and 27), and gender (Count 30).  Both groups of Defendants decry Plaintiff's myriad discrimination claims as resting solely on conjecture and unsupported by any non-conclusory facts suggesting a discriminatory animus.  (*See* CVS Br. 8; APN Br. 10-11).  While the Court dismisses many of Plaintiff's discrimination claims for failure to adequately allege either an adverse employment action or indicia supporting a minimal inference of discrimination, certain of Plaintiff's claims of race and age discrimination survive Defendants' motions to dismiss.

### a. Plaintiff Has Plausibly Alleged an Employment Relationship with CVS, Aetna, AHM, and APN

Before turning to the merits of Plaintiff's discrimination claims, the Court addresses the threshold issue of whether Plaintiff has pleaded the existence of an employment relationship with any Defendant.  It is well established that an employer-employee relationship is a primary element of an employment discrimination claim under each of Title VII, the ADA, the ADEA, and the NYSHRL.  *See Christiansen* v. *Omnicom Grp., Inc.*, 167 F. Supp. 3d 598, 608 (S.D.N.Y. 2016) (Title VII, ADA, and NYSHRL), *aff'd in part, rev'd in part on other grounds*, 852 F.3d 195 (2d Cir. 2017); *Frankel* v. *Bally, Inc.*, 987 F.2d 86, 88-89 (2d Cir. 1993) (ADEA).  In other words, these laws provide antidiscrimination protection to employees, but not independent contractors. *See Frankel*, 987 F.2d at 89 (ADEA); *Attis* v. *Solow Realty Dev. Co.*, 522 F. Supp. 2d 623, 627 (S.D.N.Y. 2007) (ADA and NYSHRL); *Tagare* v. *Nynex*

20

*Network Sys. Co.,* 994 F. Supp. 149, 154 (S.D.N.Y. 1997) (Title VII).  As such, the Court considers Defendants' argument that Plaintiff was an independent contractor, rather than an employee of any Defendant.  (*See* CVS Br. 7 n.6; APN Br. 1-2, 9, 15).  While the Court is skeptical that Plaintiff will ultimately be able to carry his burden of establishing an employment relationship with any of the Defendants, at this stage of the litigation, and in consideration of the Court's obligation to a *pro se* plaintiff, the Court finds that Plaintiff has plausibly alleged the existence of an employment relationship with CVS, Aetna, AHM, and APN.

Both groups of Defendants base Plaintiff's purported independent contractor status on the Contractor Agreement, which expressly classifies Plaintiff as an "independent contractor" and ties the scope of his engagement to a particular AHM project.  (*See* Contractor Agreement ¶ 15; Fee Schedule).  But "what Plaintiff, Defendant, or anyone else labeled Plaintiff … is not dispositive" in determining whether he is an employee for purposes of Title VII or other antidiscrimination statutes.  *Meyenhofer* v. *Larsen & Toubro Infotech Ltd.*, 503 F. Supp. 3d 39, 48 (S.D.N.Y. 2020); *see also Frankel*, 987 F.2d at 88-91 (finding contract characterizing persons situated like plaintiff to be "independent contractors" insufficient to warrant dismissal of ADEA claim).  Instead, the employee-employer inquiry under Title VII is "a fact intensive determination that 'requires the application of the common law of agency[.]'" *Meyenhofer*, 503 F. Supp. 3d at 46 (quoting *Eisenberg* v. *Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000)).  And in the context of an

employment discrimination suit, "the hiring party's right to control the manner and means of work — due to its quintessential importance in the common law conception of an employee-employer relationship" is of paramount importance. *Id.* (citing *Eisenberg*, 237 F.3d at 114-16).

Here, Plaintiff has alleged that he: (i) worked full days at an Aetna office, accessing the premises with an Aetna employee identification card (Am. Compl. ¶¶ 6, 43-44); (ii) was part of a team of engineers working on the development and refinement of an AHM healthcare application (*id.* at ¶¶ 41, 61); (iii) was supervised and had his tasks overseen by senior employees at Aetna and APN (*id.* at ¶¶ 8, 15, 63, 98); (iv) used Aetna equipment to perform his work (*id.* at ¶ 41); and (v) agreed to a payment arrangement in which an Aetna supervisor submitted approved timesheets to APN for payment (*id.* at ¶ 40).  Given the liberality with which it must construe Plaintiff's allegations, the Court cannot conclude at this early stage of the litigation that Plaintiff did not have an employment relationship with any of the Defendants.  *See Gaffney* v. *Dep't of Info. Tech. & Telecomm.*, 536 F. Supp. 2d 445, 460-61 (S.D.N.Y. 2008) (finding employment relationship for purposes of Title VII where — as Aetna-AHM did with APN — putative employer "transferred funds" to "administrator" to make payment to plaintiff); *see also Meyenhofer*, 503 F. Supp. 3d at 47 ("[Defendant] may choose to outsource its recruitment and payroll functions, but that does not mean that as a matter of law that [it] is not an employer.").  Accordingly, the Court finds that the facts presented in the Amended Complaint are

sufficient at the pleading stage to allege the existence of an employment relationship.

The next question is with whom, precisely, has Plaintiff plausibly alleged an employment relationship?  Plaintiff paints a vague picture of his relationships with CVS, Aetna, AHM, and APN, frequently referring to them collectively as a "single integrated employer." (*See, e.g.*, Am. Compl. ¶¶ 20, 21, 42, 45-47, 77).  Despite Plaintiff's attempt to elide the distinctions between these separate entities, this much is clear:  Plaintiff signed the Contractor Agreement with APN to provide services to AHM, which is a wholly-owned subsidiary of Aetna.  (*Id.* at ¶¶ 5, 40; *see also* Contractor Agreement; Fee Schedule).  Aetna, in turn, is a wholly-owned subsidiary of CVS.  (Am. Compl. ¶ 3).  And during his approximately two-month tenure at Aetna-AHM, Plaintiff interfaced with both Aetna and APN employees.  (*See, e.g., id.* at ¶¶ 63, 83, 86, 98, 103).

Here, Plaintiff alleges that CVS, Aetna, AHM, and APN were part of a "single integrated enterprise."  (Am. Compl. ¶ 20).  The Second Circuit directs courts to consider four factors to assess whether nominally distinct entities are actually a single employer for purposes of a discrimination suit: "[i] interrelation of operations, [ii] centralized control of labor relations, [iii] common management, and [iv] common ownership or financial control," *Cook* v. *Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240-41 (2d Cir. 1995), with "control of labor relations [being] the central concern," *Brown*, 756 F.3d at 227 (internal quotation marks omitted).  "Whether two related entities are

sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss." *Id.* at 226.

Plaintiff has pleaded facts that, if true, suggest that CVS, APN, and AHM, as parent and subsidiary corporations, had interrelated operations, centralized control of labor relations, and common management.  Going to the most important factor, control of labor relations, Plaintiff has alleged that he was interviewed both in person and via videoconference by more than five "AHM/AETNA/CVS employees" and that Aetna had the power to recommend termination of employees working on AHM projects.  (Am. Compl. ¶¶ 33, 102). As to interrelation of operations, Plaintiff alleges that CVS, Aetna, and AHM had a common repository for computer code, interchangeable software licensing, and common security credentials, and that AHM applications ran on Aetna's servers.  (*Id.* at ¶¶ 50-53).  Plaintiff also alleges that Aetna and AHM operate out of the same business address (*id.* at ¶ 6); that after signing Aetna's security policy, he had access to Aetna equipment and certain AHM applications (*id.* at ¶ 41); and that his email signature contained the CVS Health logo and designated him as "Senior Software Engineer, Aetna Digital-AHM" (*id.* at ¶ 44).  Related to common management, Plaintiff claims that CVS, Aetna, and AHM had a common Chief Technology Officer who convened a town hall meeting shortly after Plaintiff joined (*id.* at ¶ 48), and that a senior director at Aetna oversaw Plaintiff's work for an AHM project (*id.* at ¶¶ 8, 62).  These facts plausibly satisfy Plaintiff's minimal burden of alleging the existence of a single integrated enterprise among these corporate affiliates.

24

While APN is not formally within the CVS family of companies, Plaintiff has also pleaded facts to support APN's inclusion in this "single integrated enterprise."  Notably, Plaintiff has indicated that prior to his being hired, APN notified him of the job opportunity at AHM, coordinated his interviews for this opportunity, and assisted with his background check.  (*See* Am. Compl. ¶¶ 30-33, 35-36).  Once hired, APN's involvement with Plaintiff did not cease.  Senior APN employees continued to supervise him (*id.* at ¶ 98), and Aetna employees were empowered to submit termination notices to APN regarding employees, such as Plaintiff, with service contracts (*id.* at ¶ 102).  Moreover, Plaintiff was required to submit timesheets approved by Aetna-AHM to receive payment from APN, and only APN was permitted to invoice Aetna-AHM for Plaintiff's compensable work.  (*Id.* at ¶ 40; *see also* Contractor Agreement ¶¶ 3-6).

The Court recognizes that Plaintiff includes many conclusory assertions regarding his employment relationship with the "single integrated enterprise" comprising CVS, Aetna, AHM, and APN, and that merely affixing this label to these Defendants does not make it so.  But, at this early stage in the litigation, and remaining mindful of Plaintiff's *pro se* status, the Court finds that the facts presented in the Complaint are adequate to suggest that Plaintiff had an employment relationship with this integrated enterprise.

### b.   Plaintiff Adequately Pleads Race Discrimination Claims Against Certain Defendants

Having determined that Plaintiff has plausibly alleged the existence of an employment relationship with CVS, Aetna, AHM, and APN, the Court proceeds to assess Plaintiff's discrimination claims.  In Count 1, Plaintiff alleges that

both the Individual and the Corporate Defendants discriminated against him
because he is black, Indian, and Tamil, in violation of, as relevant here, Title
VII, Section 1981, the NYSHRL, and the NYCHRL.[16]  On the particular issue of
Defendants' discriminatory motive, Plaintiff points to comments by Kalyani,
Neela, Denner, and Vedant, that allegedly reflected racial animus against him.
The APN Defendants rejoin that Plaintiff's racial discrimination claims
necessarily fail because "Plaintiff makes *no* factual assertions to support a
plausible inference that the APN Defendants' actions were even remotely
motivated by any kind of discrimination" and, further, that his claims "are
simply legal conclusions couched as factual allegations."  (APN Br. 10-11).
Striking a similar chord, the CVS Defendants argue that Plaintiff "stops short
of connecting the dots between [his] enumerated protected characteristics and
the allegedly discriminatory actions taken against him[.]"  (CVS Br. 8).  To be
sure, as discussed further below, the Court agrees with Defendants that many
of Plaintiff's discrimination claims are lacking.  However, the Court cannot
agree that Plaintiff has set forth *no* facts in support of certain of his claims of
racial discrimination.

---

[16]     Count 1 alleges discrimination on the grounds of race, color, ethnicity, and heritage.
However, Plaintiff does not ground his causes of action in any particular one of these
protected characteristics, but rather ascribes them all, under the umbrella of a single
count, as the motivating factor for a series of alleged adverse employment actions.  As
Plaintiff has effectively conflated these protected characteristics in presenting his
allegations of discriminatory animus, the Court will consider Plaintiff's first count as a
discrimination claim based on race for purposes of the present motion.  *See Vill. of
Freeport* v. *Barrella*, 814 F.3d 594, 606-07 (2d Cir. 2016) (acknowledging that the
protected characteristics outlined in Title VII "are not mutually exclusive" and that "for
purposes of Title VII, 'race' encompasses ethnicity, just as it does under [Section]
1981").

Plaintiff has satisfied — and Defendants do not contest — the first two elements of his *prima facie* claim of employment discrimination, that is, his membership in a protected class and his competency for the position at issue. (*See* Am. Compl. ¶¶ 28-29 (setting forth Plaintiff's software engineering experience)). Instead, the parties dispute whether Plaintiff suffered an adverse employment action under circumstances that gave rise to an inference of discrimination.

The Court understands Plaintiff to posit several potential adverse employment actions. Specifically, he alleges that because of certain of his protected characteristics, Aetna-AHM: (i) furnished him with incorrect login information to a database that was necessary for him to complete his job; (ii) removed and replaced him from his job; and (iii) deprived him of any pay for the duration of his engagement with Aetna-AHM. (Am. Compl. ¶ 123). The APN Defendants argue that none of these actions constitutes an actionable adverse employment action (*see* APN Br. 9-10), whereas the CVS Defendants argue that only Plaintiff's "termination by APN after the contract engagement with Aetna" pleads an adverse employment action (CVS Br. 8 n.9).

An adverse employment action under Title VII is a "materially adverse change in the terms and conditions of employment." *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). To plead an adverse employment action, the action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry* v. *Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). "Examples of materially adverse changes include

27

termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (internal quotation marks and alteration omitted); *accord Vega*, 801 F.3d at 85.

Plaintiff's first allegation that he was initially provided incorrect database login information is precisely the type of inconvenience that does not amount to an adverse employment action. It is unclear for how long Plaintiff was deprived of access to this statedly crucial database, or what tasks this lack of access delayed Plaintiff from completing. Moreover, the Court understands that Plaintiff was able to access the database upon asking another employee for the correct information. (*See* Am. Compl. ¶ 99). Thus, the provision of incorrect login information cannot be classified as a materially adverse change in Plaintiff's employment conditions, and Plaintiff's claims of discrimination resting thereon are dismissed.

The Court arrives at a different conclusion as to Plaintiff's two remaining allegations of negative treatment. Both the termination of Plaintiff's employment and the failure to pay him for the duration of his two-month engagement with Aetna-AHM are quintessential examples of adverse employment actions. The Second Circuit has provided an illustrative list of adverse employment actions, which list expressly includes "termination of employment" and "a decrease in wage or salary" as examples. *See Vega*, 801

F.3d at 85.  The Court thus finds that Plaintiff has properly alleged these two

adverse employment events.

The Court next turns to the final element of Plaintiff's *prima facie* case:

indicia of discrimination.  "[T]he 'ultimate issue' in an employment

discrimination case is whether the plaintiff has met [his] burden of proving that

an adverse employment decision was motivated at least in part by an

'impermissible reason.'"  *Vega*, 801 F.3d at 87.  "A plaintiff can meet that

burden through direct evidence of intent to discriminate or by indirectly

showing circumstances giving rise to an inference of discrimination....  At the

pleadings stage, then, a plaintiff must allege that the employer took adverse

action against [him] *at least in part* for a discriminatory reason[.]"  *Id.*

(emphasis added) (internal citations omitted).  What is more,

> [a]n inference of discrimination can arise from
> circumstances including, but not limited to, "the
> employer's criticism of the plaintiff's performance in
> ethnically degrading terms; or its invidious comments
> about others in the employee's protected group; or the
> more favorable treatment of employees not in the
> protected group; or the sequence of events leading to
> the plaintiff's discharge."

*Littlejohn* v. *City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting

*Leibowitz* v. *Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Plaintiff primarily bases his racial discrimination claims on several

degrading remarks attributed to Kalyani, Neela, Denner, and Vedant,

concerning Plaintiff's dark skin and Tamil ethnicity.  Plaintiff provides the

following context for the purportedly discriminatory comments: (i) in or about

the third week of June 2019, Plaintiff expressed disagreement with a

conversation that Kalyani and another team member were having about U.S. immigration policy, in response to which Kalyani told Plaintiff "he speaks like a 'black apple'" (Am. Compl. ¶ 97); (ii) at an unspecified time, Plaintiff asked Neela about receiving payment for his work, in response to which Neela called Plaintiff a "black old Madrasi" and said that "she should put every effort to remove [Plaintiff] from the project [his team was] working on" (*id.* at ¶ 98); (iii) on August 26, 2019, following Plaintiff's termination, Kalyani told someone to "kick the 'black old tamil guy out of here immediately'" (*id.* at ¶ 107); (iv) also on August 26, 2019, just prior to being escorted off the work premises, Denner told Plaintiff, "you black guy, go back to India" (*id.* at ¶ 108); and (v) on September 6, 2019, Plaintiff called Vedant to request back pay, to which Vedant replied that he would beat him if he asked for payment again because Plaintiff is a "black, sick madrasi tamil" (*id.* at ¶ 117). As discussed below, some of these comments plausibly support an inference that discrimination factored into the adverse employment actions suffered by Plaintiff. As such, Plaintiff has stated a claim of racial discrimination against the Corporate Defendants, as well as certain of the Individual Defendants.

Typically, "verbal comments may raise an inference of discrimination, but not where they lack a causal nexus" to an adverse employment action. *Luka* v. *Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (internal quotation marks omitted). The Second Circuit has established a four-factor test to determine whether purportedly offensive statements suggest discriminatory bias or are merely "stray remarks" that generally "do not

constitute sufficient evidence to support a case of employment discrimination."

*Danzer* v. *Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998).  The test considers:

> [i] who made the remark (*i.e.*, a decision-maker, a supervisor, or a low-level co-worker); [ii] when the remark was made in relation to the employment decision at issue; [iii] the content of the remark (*i.e.*, whether a reasonable juror could view the remark as discriminatory); and [iv] the context in which the remark was made (*i.e.*, whether it was related to the decision-making process).

*Fried* v. *LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (summary order). Applying these factors, the Court finds that Denner's alleged remark does not give rise to an inference that any adverse employment action was tinged with discrimination.  However, Kalyani's, Neela's, and Vedant's remarks have a closer causal nexus, and thus may be construed as supporting a discriminatory motive for the adverse employment events experienced by Plaintiff.

*First*, as to Denner, nowhere in the Amended Complaint does Plaintiff suggest that Denner had any hand in the decision to terminate Plaintiff or that Denner possessed any supervisory function vis-à-vis Plaintiff.  This is highly relevant to the analysis of Denner's derogatory remark, as it is well established in the employment discrimination context that "[c]omments made by non-decision-makers, such as supervisors or co-workers, are 'rarely given great weight.'"  *Martin* v. *City Univ. of N.Y.*, No. 17 Civ. 6791 (KPF), 2018 WL 6510805 (S.D.N.Y. Dec. 11, 2018) (quoting *Silver* v. *N. Shore Univ. Hosp.*, 490 F. Supp. 2d 354, 363 (S.D.N.Y. 2007)); *see also Tomassi* v. *Insignia Fin. Grp., Inc.*, 478

F.3d 111, 115 (2d Cir. 2007) ("[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark.").  Denner's responsibilities involved "procurement" and interacting with Aetna's vendors and contractors (Am. Compl. ¶ 10), and his participation in Plaintiff's termination was limited to his escorting Plaintiff out of a room at Kalyani's request (*id.* at ¶ 107).  As a function of Denner's lack of involvement in any relevant decisionmaking, his comment — while inappropriate if made — does not support an inference that the initial decision to terminate Plaintiff was motivated by racial animus.

*Second*, the Court assesses Kalyani's alleged racially discriminatory conduct.  Kalyani was Plaintiff's direct supervisor, and possessed a direct role in managing Plaintiff's team of engineers and approving his timesheets for submission to APN.  (Am. Compl. ¶¶ 62-63).  Kalyani also hired the individual who replaced Plaintiff at Aetna-AHM.  (*Id.* at ¶ 100).  The Complaint includes two allegedly offensive remarks, which Plaintiff says support an inference of discrimination: one calling Plaintiff a "black apple" and the other telling Denner on the day of his termination to "kick the black tamil guy out of here immediately."  The Court considers Kalyani's "black apple" comment to be a mere stray remark lacking a nexus to any adverse employment event, as it was made in a context wholly divorced from any adverse employment action averred in the Complaint.  However, the Court views Kalyani's August 26, 2019 remark as plausibly supporting an inference that Plaintiff's termination was related to

his race, as she invoked Plaintiff's race while informing Plaintiff of his termination.

*Third*, Neela's comment calling Plaintiff a "black old Madrasi" and expressing a desire to do everything she could to remove him from the MAH project is sufficiently connected to Plaintiff's termination and failure to receive pay to support an inference of race discrimination.  Plaintiff alleges that Neela had a supervisory role over him; that she was a "primary decision maker in APN consulting"; and that she had power over hiring decisions because of her personal relationships with top CVS management.  (Am. Compl. ¶¶ 39, 98). The Court expresses no view as to the accuracy of Plaintiff's characterization of Neela's role, but his allegations suffice to allege that Neela's comment was more than a stray remark.  Indeed, Neela allegedly made these comments in response to an inquiry from Plaintiff about his failure to receive pay, which failure the Court has already determined to constitute an adverse employment action.  Neela also suggested that she would exert her influence as an APN Vice President to remove Plaintiff from the project on which he was working, which statement may be understood as connected to Plaintiff's termination.  Drawing all reasonable inferences in Plaintiff's favor, the Court finds that Neela's comments plausibly support an inference that racial animus at least partly contributed to Plaintiff's adverse employment events.

*Lastly*, the Court finds that Vedant's racially hostile remark threatening to beat up Plaintiff if he repeated his request for payment plausibly supports an inference that Plaintiff was refused pay, at least in part, because of

33

discriminatory animus.  Even though Vedant's remark was made 11 days following Plaintiff's termination, the Court cannot dismiss this comment, made by the founder and CEO of APN (Am. Compl. ¶ 14), and directly related to a complaint that Plaintiff had lodged during his employment, as a mere stray remark.[17]

Accordingly, the Court finds that Plaintiff has plausibly alleged a claim of racial discrimination against CVS, Aetna, AHM, and APN under Title VII and Section 1981.  Because the standards under the NYSHRL and NYCHRL are equally or more protective than that under Title VII, Plaintiff's claims against the Corporate Defendants under these laws necessarily survive as well. Furthermore, the Court finds that Plaintiff has adequately stated a claim

---

[17]    Plaintiff also brings his claims of racial discrimination in Count 1 against the Individual Defendants.  But his claims for individual liability against Denner and Jhala do not survive Defendants' motions to dismiss, as he has not adequately alleged that either of these Defendants was directly and personally involved in conduct actionable under the antidiscrimination laws.  As discussed above, Plaintiff has not pleaded that Denner had a hand in the decision to terminate him.  Plaintiff also has not stated any facts supporting Jhala's direct involvement in an adverse employment action.  The Court does not give credence to Plaintiff's naked proclamations that these individual defendants violated the law and discriminated against Plaintiff.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to survive a motion to dismiss.]").  Accordingly, Plaintiff's claims under Section 1981, the NYSHRL, and the NYCHRL asserting individual liability for employment discrimination against Denner and Jhala are dismissed.

Plaintiff has, however, sufficiently pleaded Kalyani's, Neela's, and Vedant's direct participation in discriminatory conduct so as to state claims for individual liability under Section 1981, the NYSHRL, and the NYCHRL.  Kalyani is alleged to have played a decision-making role in Plaintiff's termination and in hiring his replacement.  Neela is alleged to have been involved in supervising Plaintiff, and this involvement is coupled with the timing of her statement reflecting an intent to force Plaintiff out of his role.  And Vedant, APN's CEO, purportedly threatened Plaintiff with physical violence when asked about giving Plaintiff backpay he was owed.  These allegations are all sufficient at the pleading stage to support claims for discrimination against these individuals.

against individual Defendants Kalyani, Neela, and Vedant under Section 1981, the NYSHRL, and the NYCHRL.

### c. Plaintiff's Age Discrimination Claims Fail Under Federal and State Law, But Survive Under City Law

In Count 6, Plaintiff alleges that CVS, Aetna, AHM, and APN discriminated against him in terminating his employment and in replacing him with someone younger, in violation of the age discrimination provisions of the ADEA, the NYSHRL, and the NYCHRL.[18]  Plaintiff does not bring his age discrimination claims against any of the Individual Defendants.

Defendants argue in their briefing that Plaintiff's claims of age discrimination suffer from the same flaws as his claims for racial discrimination, namely, they rest on conclusory assertions of discriminatory treatment without any facts suggesting discriminatory animus.  (CVS Br. 7-8; APN Br. 8, 10-11).  In response, Plaintiff points to the allegations in the Amended Complaint that Kalyani told Robert to kick the "black *old* Tamil guy out of here immediately" and that he was replaced by someone who was in his twenties.  (Pl. APN Opp. 7-8 (emphasis added)).

For an age discrimination claim under the ADEA, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  *Lively* v. *WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) (internal

---

[18]    Plaintiff's Count 6 also asserts an age discrimination claim under Title VII, but this law does not cover discrimination based on an individual's age.  *See* 42 U.S.C. § 2000e(a)(1); *see also Spires* v. *Met Life Grp., Inc.*, No. 18 Civ. 4464 (RA), 2019 WL 4464393, at *7 (S.D.N.Y. Sept. 18, 2019).  The Court thus dismisses Plaintiff's Title VII claim for age discrimination.

quotation marks omitted) (quoting *Gross* v. *FBL Fin. Servs.*, 557 U.S. 167, 176 (2009)).  To pass muster under Rule 12(b)(6), an ADEA "plaintiff must plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality." *Marcus* v. *Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 32 (2d Cir. 2016) (summary order) (quoting *Littlejohn*, 795 F.3d at 310-11).  Under the ADEA, stray remarks are insufficient to raise an inference of discriminatory motive unless they "[i] were made repeatedly, [ii] drew a direct link between discriminatory stereotypes and the adverse employment decision, and [iii] were made by supervisors who played a substantial role in the decision to terminate." *Lively*, 6 F.4th at 306 (alterations omitted) (quoting *Naumovski* v. *Norris*, 934 F.3d 200, 216 n.47 (2d Cir. 2019)).  The Second Circuit has previously assumed that the "but-for" standard applies equally to claims brought pursuant to the NYSHRL.  *See Gorzynski* v. *JetBlue Airways Corp.*, 596 F.3d 93, 105 n.6, 106 (2d Cir. 2010); *see also Colon* v. *Trump Int'l Hotel & Tower*, No. 10 Civ. 4794 (JGK), 2011 WL 6092299, at *5 (S.D.N.Y. Dec. 7, 2011).

The Court finds that Plaintiff has failed to allege sufficient facts to state a claim for age discrimination under the ADEA or the NYSHRL.  Plaintiff's primary contention is that he was replaced by a younger employee, but "[w]ithout more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive." *Marcus*, 661 F. App'x at 33.  Plaintiff seeks to buttress his age discrimination claim by relying on Kalyani's reference to his age on the day he was fired.  (Pl. APN

Opp. 7).  Even drawing all reasonable inferences in Plaintiff's favor, the Court does not find Kalyani's single comment, made more than two weeks following the hiring of Plaintiff's replacement (*see* Am. Compl. ¶ 61), to support a claim that age was the "but-for" cause of his termination — especially where Plaintiff has alleged that his termination was motivated by at least ten other protected categories besides age.

The Court concludes differently, however, with respect to Plaintiff's age discrimination claim under the NYCHRL.  As discussed above, courts must review NYCHRL claims "independently from and 'more liberally' than their federal and state counterparts."  *Loeffler* v. *Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (citing *Williams* v. *N.Y.C. Hous. Auth.*, 872 N.Y.S. 2d 27, 31 (1st Dep't 2009)).  In contrast to the ADEA and NYSHRL, "the NYCHRL requires only that a plaintiff prove that age was 'a motivating factor' for an adverse employment action."  *Weiss* v. *JPMorgan Chase & Co.*, No. 06 Civ. 4402 (DLC), 2010 WL 114248, at *1 (S.D.N.Y. Jan. 13, 2010); *accord Teasdale* v. *N.Y.C. Fire Dep't*, 574 F. App'x 50, 51 (2d Cir. 2014) (summary order).  Under this more liberal standard, the Court finds that Plaintiff has sufficiently alleged facts to satisfy the minimal burden of sustaining an inference that his age was a motivating factor in his termination.  Plaintiff ties his age discrimination claim to his younger replacement and to Kalyani's comment made on the day of his termination that Denner should "kick the black old Tamil guy out of here immediately."  (Pl. CVS Opp. 7; Pl. APN Opp. 7-8).  Given the latitude afforded to *pro se* pleadings, the Court finds these allegations sufficient to sustain

Plaintiff's NYCHRL claim of age discrimination. *See Carlton* v. *Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (finding that plaintiff established a *prima facie* case under the "motivating factor" standard where plaintiff pleaded a stray comment plus "replacement by a significantly younger person").

Accordingly, Defendants' motions to dismiss Count 6 of the Amended Complaint are granted with respect to Plaintiff's claims against all Defendants under the ADEA and the NYSHRL, and are denied only with respect to Plaintiff's claims against CVS, Aetna, AHM, and APN under the NYCHRL.

### d. Plaintiff Adequately Pleads Certain of His Failure to Accommodate Claims

In Count 2, Plaintiff asserts that CVS, Aetna, AHM, and APN failed to provide reasonable accommodations for his disabilities, in violation of the ADA, the NYSHRL, and the NYCHRL.[19]  Plaintiff does not bring Count 2 against any of the Individual Defendants.

---

[19]     Count 2 also alleges violations of Title VII and the GINA, neither of which is applicable to Plaintiff's claim for disability discrimination. *See Seck* v. *Info. Mgmt. Network*, 697 F. App'x 33, 34 (2d Cir. 2017) (summary order) (affirming dismissal of GINA claim where Plaintiff did not allege discrimination based on his genetic information); *Lee* v. *Colvin*, No. 15 Civ. 1472 (KPF), 2017 WL 486944, at *5 (S.D.N.Y. Feb. 6, 2017) (explaining that Title VII does not cover disability discrimination).

Relatedly, in Count 7, which Plaintiff brings under GINA, Plaintiff asserts that "[b]ecause … I have genetically defectiveness, because of Kalyani, APN managers knew it, they removed me from job." (Am. Compl. ¶ 148).  Reading Plaintiff's *pro se* submissions to "raise the strongest arguments they suggest," *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (internal quotation marks omitted), the Court recasts Plaintiff's Count 7 as a claim for disability discrimination via an adverse employment action under the ADA, the NYSHRL, and the NYCHRL.  Even so construed, Plaintiff fails to present any non-conclusory facts that tie an adverse employment action to his disability.  *See Williams* v. *N.Y.C. Hous. Auth.*, No. 07 Civ. 7587 (RJS), 2009 WL 804137, at 6 n.6 (S.D.N.Y. Mar. 26, 2009) (dismissing claim for disparate treatment based on disability where a plaintiff only made conclusory allegations of discriminatory motive); *see also Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions

Plaintiff alleges five distinct instances where Defendants failed to provide him reasonable accommodations: (i) Defendants did not permit him to eat "5 small meals" at his desk; (ii) Defendants refused his request to move his desk away from dust falling from the ceiling due to construction on the floor above; (iii) Defendants refused to provide him with access to a locker in which he could store his laptop, even though transporting it to and from work caused him pain; (iv) Defendants denied him the use of a larger computer screen, even though his laptop screen strained his eyes; and (v) Defendants did not permit him to work from home on days when he had doctor's appointments.  (Am. Compl. ¶¶ 126-130).  The CVS Defendants argue that Plaintiff has not stated a claim for failure to accommodate because his allegations fail to establish a connection between the desired workplace accommodations and a covered disability, such that Defendants lacked notice that Plaintiff was requesting an accommodation for a disability.  (CVS Br. 13; CVS Reply 4-5).  The Court finds that only Plaintiff's second request makes out a claim for failure to accommodate a disability under any of the applicable laws.

Discrimination claims under the ADA and the NYSHRL — just as under Title VII — are analyzed using the *McDonnell Douglas* burden-shifting scheme. *See McBride* v. *BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (ADA); *McDonnell* v. *Schindler Elevator Corp.*, No. 12 Civ. 4614 (VEC), 2014 WL 3512772, at *4 (S.D.N.Y. July 16, 2014) (ADA and NYSHRL), *aff'd*,

---

masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (quoting *Gebhardt* v. *Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000))).

618 F. App'x 697 (2d Cir. 2015) (summary order).  As with claims of discrimination based on other protected characteristics, a claim of disability discrimination under the NYCHRL is construed more liberally than claims brought under federal and state law.  *See Betances* v. *MetroPlus Health Plan, Inc.*, No. 20 Civ. 2967 (JGK), 2021 WL 2853363, at *6 (S.D.N.Y. July 7, 2021). Under all three of these statutes, "discrimination" includes an employer's failure to provide an employee with a reasonable accommodation for his disability.  *See Graves* v. *Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006); *see also* NYSHRL § 296(3)(a); NYCHRL § 8-107(15)(a).

A plaintiff states a *prima facie* failure to accommodate claim by alleging that: "[i] [he] is a person with a disability under the meaning of the [relevant statute]; [ii] an employer covered by the statute had notice of his disability; [iii] with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and [iv] the employer has refused to make such accommodations." *Rodal* v. *Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) (ADA); *Vangas* v. *Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 412 (S.D.N.Y. 2014) (NYSHRL and NYCHRL).  A qualifying disability is defined more broadly under the NYSHRL and the NYCHRL than it is under Title VII or the ADA.  *Compare* NYCHRL § 8-102 (defining "disability" as "any physical, medical, mental or psychological impairment, or a history or record of such impairment"), *with* 42 U.S.C. § 12102 (defining "disability" under the ADA, in relevant part, as "a physical or mental impairment that substantially limits one or more major life activities of such individual").  *See also Burton* v. *Metro.*

40

*Transp. Auth.*, 244 F. Supp. 2d 252, 258 (S.D.N.Y. 2003) ("[I]t is well-settled that the NYSHRL definition of disability is broader than the federal definition.").

The Court begins with Plaintiff's strongest claim for failure to accommodate his disability.  Plaintiff contends that it was a violation of the ADA, the NYSHRL, and the NYCHRL for Defendants to reject his request to move his desk away from dust that was falling from the ceiling (*see* Am. Compl. ¶¶ 88, 127), because Plaintiff has "a genetic defect that affects [his] lung capacity, and breathing in the dust made it difficult to breathe, and caused chest pain and frequent coughing" (*id.* at ¶ 88).[20]  The CVS Defendants argue that they lacked sufficient notice of the genetic condition affecting his lungs, because Plaintiff alleges only that his supervisor knew of "issues with his lungs." (CVS Br. 15).[21]  While hardly the clearest articulation of notice, the Court finds that Plaintiff has satisfied the minimal burden to plead a claim for

---

[20]   Plaintiff reiterates these allegations in Count 24, entitled "Violation of harmful/unsafe workspace," but there, he asserts that the dust was asbestos, without any explanation for this evolution in his allegations or elaboration anywhere else in the Complaint.  The laws cited in Count 24, which include Title VII, the GINA, and the FLSA, do not establish Defendants' liability for potential asbestos exposure in these circumstances.  Accordingly, the Court dismisses Count 24 as a standalone claim, and will proceed to assess Plaintiff's breathing issues purportedly exacerbated by the falling precipitate matter as a failure to accommodate claim under the ADA, the NYSHRL, and the NYCHRL.

[21]   In moving to dismiss Plaintiff's failure to accommodate claim, Defendants appear only to target the level of specificity with which Plaintiff communicated his genetic disability, rather than whether Plaintiff is, in fact, disabled.  Defendants do not appear to contest that Plaintiff's underlying genetic disorder, SIT, is a covered disability for purposes of the ADA.  *See* 42 U.S.C. § 12102(2)(A) (defining a disability under the ADA as "any physical or mental impairment that substantially limits one or more major life activities").  Assuming for purposes of this Opinion that Plaintiff qualifies for protection under the ADA, it follows that he also qualifies under the NYSHRL and the NYCHRL, which define a covered disability more broadly than the ADA.  *Jones* v. *N.Y.C. Transit Auth.*, 838 F. App'x 642, 644 (2d Cir. 2021) (summary order) ("We have indicated that the definition of a disability under the NYSHRL and NYCHRL is broader than the ADA definition[.]").

failure to accommodate because the Amended Complaint can fairly be read to suggest that Defendants had notice of Plaintiff's lung issues related to his genetic disorder when they denied his request to have his desk moved away from the falling debris.  Plaintiff asserts that he "made a request to Kalyani, [his] supervisor, to arrange a desk in another area to get away from the falling dust," and that his "request to move was denied by [his] supervisor, despite her knowing that [he] had issues with [his] lungs."  (Am. Compl. ¶ 88).  Elsewhere in the Amended Complaint, Plaintiff specifically avers that Kalyani and other APN managers knew of his underlying genetic disorder that caused his lung issues.  (*See* Am. Compl. ¶ 148 ("Because of I have genetically defectiveness, because of Kalyani, APN managers knew it, they removed me from job.")).  Drawing all inferences in Plaintiff's favor, the Court finds that he has plausibly alleged that he told his supervisor about his compromised lung condition.  He thus has sufficiently pleaded that the Corporate Defendants' refusal to move his desk under these circumstances constitutes a failure to provide a reasonable accommodation for a disability in violation of the ADA, the NYSHRL, and the NYCHRL.

Plaintiff's remaining bases fail to support valid failure to accommodate claims, principally because he has not alleged that any of these requests pertained to a covered disability or that Defendants had notice that such requests related to a disability.  *See Vega* v. *Dep't of Educ.*, No. 19 Civ. 6963 (ER), 2020 WL 6727803, at *5-6 (S.D.N.Y. Nov. 16, 2020) (dismissing failure to accommodate claim where a plaintiff "does not plead facts that lead to an

inference that [the requested accommodation] was required to accommodate [a] disability"); *see also Bresloff-Hernandez* v. *Horn*, No. 05 Civ. 0384 (JGK), 2007 WL 2789500, at *10-11 (S.D.N.Y. Sept. 25, 2007) (granting summary judgment where a plaintiff's failure to accommodate claim could not be construed as providing adequate notice to the employer of the request or as making a request causally connected to her alleged disability).  The Court will address Plaintiff's arguments in turn.

*First,* Plaintiff asserts that Defendants' refusal to permit him to eat five small meals at his desk constituted an actionable failure to accommodate his diabetes.[22]  The CVS Defendants argue that Plaintiff's failure to accommodate claim on this ground must fail because he has not pleaded that he actually requested this accommodation.  (CVS Br. 14-15).  The Court agrees.  In relevant part, Plaintiff alleges:

> On or around [the] first week of July 2019, I was eating at the communal desk in our office and Aetna employees told me that Aetna does not allow their employees [to] have food in desk area, I was told this twice.  I replied that due to my diabetes I am supposed to have five small meals.  They repeated that no one is allowed to eat in the work area regardless of any disability…. I needed to eat this way because of a medical condition that my employer is required to provide reasonable accommodation for, but they failed to try and find such an accommodation.

---

[22]    Defendants do not contest on this motion that Plaintiff's diabetes may qualify as a disability under the ADA.  (*See* CVS Reply 4-5).  *See Anyan* v. *N.Y. Life Ins. Co.*, 192 F. Supp. 2d 228, 243 (S.D.N.Y. 2002) ("In some cases, courts have held diabetes to be a substantial impairment[.]"), *aff'd sub nom. Anyan* v. *Nelson*, 68 F. App'x 260 (2d Cir. 2003) (summary order).  And because "the definition of a disability under the NYSHRL and NYCHRL is broader than the ADA definition," *Jones*, 838 F. App'x at 644, Plaintiff's Amended Complaint plausibly alleges diabetes as a qualifying disability under these statutes as well.

(Am. Compl. ¶ 87).  These allegations — that some unnamed employees informed Plaintiff of a policy against eating in a particular area — do not support an inference that Plaintiff actually requested or was refused a reasonable accommodation for his diabetes.  *See Daly* v. *Westchester Cnty. Bd. of Legislators*, No. 19 Civ. 4642 (PMH), 2021 WL 229672, at *8 n.11 (S.D.N.Y. Jan. 22, 2021) (finding request that did "not specify how [it] was made ... to whom it was made, or any facts regarding its denial" to be too conclusory to constitute request for reasonable accommodation).  Noticeably lacking from Plaintiff's account is any indication that one of the Defendants actually denied him the ability to eat on a schedule that accounted for his diabetes.  Nor does Plaintiff allege that he approached a supervisor — or anybody else, for that matter — about his disability-related need to eat his meals *at a specific location* in order to shoulder his essential job functions.  *Graves*, 457 F.3d at 184 ("[G]enerally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed."); *see also Nieblas-Love* v. *N.Y.C. Hous. Auth.,* 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016) ("[A]n employer need only provide an accommodation that is sufficient to meet the job-related needs of the individual being accommodated and is not require[d] to meet the personal preferences of disabled employees." (internal quotation marks omitted)).  Thus, Plaintiff's claims on this basis fail.

*Second,* Plaintiff rests a claim on Defendants' refusal to provide him a locker for his laptop after he expressed that bringing his laptop home every day

"caused him [pain], and was very difficult." (Am. Compl. ¶ 89). This request, generically formulated as related to pain and difficulty detached from any discernable source, does not adequately allege a request related to a disability. This conclusion holds even under the broader standards set forth by the NYSHRL and the NYCHRL, as vague references to pain and difficulty, untethered to any underlying condition or impairment, do not make out a claim under these statutes.

*Third,* Plaintiff alleges that Defendants denied his request to use a larger computer monitor. Fatal to Plaintiff's claim on this basis is that the Amended Complaint provides virtually no detail as to how he communicated this request to his employer. The Amended Complaint summarily alleges that Kalyani denied his request, despite there being available computers (*see* Am. Compl. ¶ 90), without any indication that Plaintiff's request was sourced to a qualifying disability. Defendants could not possibly have divined a qualifying disability from Plaintiff's mere request for a larger computer screen. Plaintiff claims that he needed a larger screen because his "smaller laptop [was] too small and strain[ed] [his] eyes, cause[d] blurry vision, and disrupt[ed] [his] sleep." (*Id.* at ¶ 90). But a rationale for this request revealed *ex post*, without any facts to suggest that Defendants were on notice of his disability at the time it was made, cannot serve as the basis for a failure to accommodate claim. *See Naik* v. *Modern Mktg. Concepts, Inc.*, No. 17 Civ. 613 (LEK) (DEP), 2018 WL 4078264, at *8 (N.D.N.Y. Aug. 27, 2018) ("[T]he Amended Complaint's mention of 'eyesight issues, tearing eyes, general discomfort in both eyes, his breathing

45

and … headaches,' does not plausibly allege the existence of a disability."
(internal citation omitted)).  Further weakening his claim on this ground,
Plaintiff avers that his request was not denied in perpetuity, as he was "told
that [he] would not be able to get a new computer … until the construction was
completed[.]"  (*Id.* at ¶ 90).  Thus, failing on the notice prong as well as the
refusal prong, Plaintiff has not plausibly stated a claim for failure to
accommodate on these grounds, including under the more liberal standard of
the NYCHRL.

*Finally*, Plaintiff claims that Kalyani refused to permit him to work from
home on a day that he had a doctor's appointment "because [of] an ongoing
medical issue."  (Am. Compl. ¶¶ 93, 95).  This claim also fails because
Plaintiff's request, as presented, is not predicated upon any disability.  The
need to go to a doctor for an unspecified medical issue does not constitute a
disability under any applicable standard.  Moreover, Plaintiff's vague assertion
of a need to attend an unquantified number of medical appointments, for an
unspecified purpose, and for an uncertain duration cannot be viewed as
putting Defendants on notice of a disability requiring accommodation under
any of the ADA, the NYSHRL, or the NYCHRL.

For all of these reasons, Plaintiff's claims for failure to accommodate his
disabilities under the ADA, the NYSHRL, and the NYCHRL survive only to the
extent they are predicated on the Corporate Defendants' failure to move
Plaintiff away from the dust that inflamed his lung condition.

### e.   Plaintiff Claims for Gender, Religion, and U.S. Citizenship Discrimination Fail

Plaintiff brings claims against all Defendants under Title VII, the NYSHRL, and the NYCHRL for discrimination based on religion (Count 4), U.S. citizenship (Counts 8, 12, and 27), and gender (Count 30).  As to these categories of discrimination, the CVS Defendants argue that Plaintiff has failed to allege sufficient facts to sustain any of these claims, and more specifically, that discrimination on the grounds of U.S. citizenship is not a protected category under Title VII, the NYSHRL, or the NYCHRL.  (*See* CVS Br. 6-7).  The APN Defendants similarly contend that Plaintiff has failed to plead a *prima facie* case for any of these claims.  (*See* APN Br. 8-11).  For the reasons discussed below, the Court grants Defendants' motions to dismiss as to Counts 4, 8, 12, 27, and 30.  The ensuing discussion also permits the Court to dispose of Count 14 (entitled "Unequal terms and conditions, Less well treatment"), which does not amount to an independent cause of action and rests on the same factual allegations as Plaintiff's other disparate treatment claims.

### i.   Religious Discrimination

Plaintiff asserts that because he is Hindu, he was terminated from his position and his responsibilities were transferred to an individual who was Muslim.  (Am. Compl. ¶ 136).  Plaintiff further contends that he was told that "he should not eat religious food at [his] desk," even though others were permitted to eat food at their desks.  (*Id.* at ¶ 137).  On the facts presented in the Amended Complaint, Plaintiff has failed to plead a claim for religious discrimination, under any statute he cites.

47

As discussed above, for employment discrimination claims under Title VII and the NYSHRL, a plaintiff must plausibly allege that "the employer took adverse action against him" and that some protected characteristic "was a motivating factor in the employment decision."  *Vega*, 801 F.3d at 86. Plaintiff's contention that he was not permitted to eat "religious food" at his desk, without more, fails on both of these prongs.  The Court is doubtful that a ban on eating at one specific location — his desk — constitutes a material adverse change in his employment conditions; even if it did, Plaintiff fails to specify who announced this prohibition, what "religious" food he sought to eat, or whether others who ate at their desks were permitted to do so on the basis of their religion.  His conclusory assertions, devoid of specifics, cannot sustain Plaintiff's claim of religious discrimination.

Plaintiff's termination, on the other hand, has already been established as constituting an adverse employment event.  Even so, the only fact Plaintiff includes to suggest that he was terminated on the basis of his religion is that his replacement was Muslim.  This fact, on its own, cannot suffice.  Nowhere in the Amended Complaint does Plaintiff provide any additional evidence, direct or circumstantial, to suggest that he was terminated because he was Hindu. *Yusuf* v. *Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994) ("[A] complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6).").  Accordingly, Defendants' motions to dismiss Plaintiff's Title VII and NYSHRL claims for religious discrimination are granted.

48

Nor does Plaintiff's religious discrimination claim survive under the more generous standard provided by the NYCHRL.  Under the NYCHRL, a plaintiff does not have to allege an adverse employment action, but instead "need only show differential treatment — that [he] is treated 'less well' — because of a discriminatory intent."  *Mihalik*, 715 F.3d at 110.  This standard still requires that a plaintiff allege some specific facts that discrimination on the basis of a protected characteristic played a role in the defendant's conduct.  *See Bhatnagar* v. *Parsons Sch. of Design at the New Sch.*, No. 20 Civ. 2321 (LGS), 2021 WL 2333243, at *4 (S.D.N.Y. June 8, 2021) (dismissing NYCHRL claim where the complaint did not plausibly allege a minimal inference of discrimination due to plaintiff's race or national origin); *cf. Ya-Chen Chen* v. *City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (affirming district court's grant of summary judgment on NYCHRL claim when plaintiff did not present evidence that discrimination played a role in defendants' actions).  The fatal flaw in Plaintiff's claims for religious discrimination is his failure to meet the minimum standard of "assert[ing] nonconclusory factual matter sufficient to nudge [his] claims across the line from conceivable to plausible."  *Port Auth. of N.Y. & N.J.*, 768 F.3d at 254 (internal alterations omitted).  Accordingly, Defendants' motions to dismiss Count 4 of the Complaint are granted in their entirety.

### ii.        Gender Discrimination

Plaintiff further claims in Count 30 that he suffered discrimination on the basis of his gender in violation of Title VII, the NYSHRL, and the NYCHRL

49

because he was not permitted to work from home, while two other female employees were afforded more liberal privileges to work from home.  (*See* Am. Compl. ¶¶ 95, 220).  Defendants argue that these gender discrimination claims cannot be sustained on the scant facts alleged in the Amended Complaint. (APN Br. 8; CVS Br. 7-9).  The Court agrees with Defendants and finds Plaintiff's conclusory allegations of gender-based mistreatment to be insufficient to state a claim for gender discrimination under federal, state, or city law.

Plaintiff alleges that sometime in mid-August 2019, he made a request to work from home to accommodate a doctor's appointment, and that his request was denied, even though other team members "always work from home for the whole day when they have appointments."  (Am. Compl. ¶¶ 93-94).  As support for his claim of gender discrimination, Plaintiff cites two female co-workers who "work[ed] from home two or three days a week often."  (*Id.* at ¶ 95).  Even construing Plaintiff's allegations liberally, he has failed to allege any factual circumstances — be they comments, actions, or anything else — that would raise an inference that any adverse employment event was based on his gender.  *See, e.g., Sank* v. *City Univ. of N.Y.,* No. 10 Civ. 4975 (RWS), 2011 WL 5120668, at *9 (S.D.N.Y. Oct. 28, 2011) (dismissing a *pro se* plaintiff's discrimination claim where the complaint alleged only "conclusory assertions" of gender discrimination and failed to "allege that any specific decision-maker … made comments to or about [plaintiff] from which discriminatory animus based on gender could reasonably be inferred").  Plaintiff's gender

discrimination claim relies entirely on the mere observation that two women in his office were sometimes allowed to work from home.  Plaintiff neglects to explain how these women were similarly situated to him, so as to suggest that their permission to work from home provided even minimal evidence of gender discrimination.  *See, e.g., Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 827780, at *10 (S.D.N.Y. Mar. 2, 2016) (dismissing a plaintiff's Title VII and NYSHRL claims for sex- or gender-based discrimination where she "failed to plead even 'minimal support' … to indicate that Plaintiff and the male Plan participants were 'similarly situated' so as to support Plaintiff's discrimination claim on the basis of disparate treatment"), *aff'd*, — F. App'x —, No. 20-1147, 2021 WL 3573753 (2d Cir. Aug. 13, 2021).  Further weakening his claim, Plaintiff effectively concedes that these two female colleagues were not the only ones who were permitted to work from home, observing that "most employees claim for a full day of work when they take off for appointments, or work from home." (Am. Compl. ¶ 94).  As such, the Amended Complaint fails to present circumstances that "nudge[] [his] claims across the line from conceivable to plausible," and his claims under Title VII and the NYSHRL are dismissed.  *Twombly*, 550 U.S. at 570.

The Court concludes the same with regard to Plaintiff's NYCHRL claim for gender discrimination.  As discussed, Plaintiff offers no facts that suggest that gender-based prejudice played any role in his workplace.  Accordingly, the Court grants Defendants' motions to dismiss the entirety of Count 30.

### iii.      Discrimination on the Basis of U.S. Citizenship

The Court next considers Plaintiff's Counts 8 (U.S. Citizenship Discrimination), 12 (Favoring Foreigner Against U.S. Citizen),[23] and 27 (Outsourcing Discrimination) together, as each asserts claims against all named Defendants for alleged discrimination based on his U.S. citizenship, in violation of Title VII, Section 1981, the NYSHRL, and the NYCHRL.[24]  Plaintiff's primary contention in support of his citizenship discrimination claims is that he was removed from his position so that Aetna could outsource the role to a "foreigner."  (Am. Compl. ¶¶ 107, 151, 164, 211).  The CVS Defendants counter that these claims fail as a matter of law because neither Title VII nor the

---

[23]     Count 12 also includes a claim for breach of contract predicated on Defendants' alleged hiring preference for foreigners.  Because the Contractor Agreement contains no provision that contemplates the rehiring of Plaintiff (*see* Contractor Agreement ¶ 13 ("It is understood and agreed that either party may terminate this agreement by giving the other 2 weeks' prior written notice."); *see also* Fee Schedule ("Once Client determines the Project is completed, the contractor Service Agreement will terminate unless otherwise agreed.")), and because Plaintiff has failed to specify any other legitimate basis for a contractual right to continued employment, the Court declines to entertain Plaintiff's breach of contract claim in Count 12 to the extent it is alleged as a claim distinct from Plaintiff's claim of employment discrimination on the basis of U.S. Citizenship.

[24]     Plaintiff additionally brings discrimination claims under the Immigration and Nationality Act of 1965 ("INA"), and the Immigration Reform and Control Act of 1986 ("IRCA"), which are codified as amended at scattered provisions of Title 8 of the United States Code), and which prohibit discrimination on the basis of an individual's citizenship status.  *See* 8 U.S.C. § 1324b(a)(1).  Fatal to these claims, however, is Plaintiff's failure to comply with the statutory requirement that a claim for an unlawful immigration-related practice under Section 1324b first be filed with the Office of Special Counsel for Immigration Related Unfair Employment Practices.  *See id.* § 1324b(d)(2).  This statutory scheme permits an individual to initiate a private action only if the Office of Special Counsel fails to file a complaint within 120 days of receiving a claim.  *Id.*; *see also Weiss* v. *City Univ. of N.Y.*, No. 17 Civ. 3557 (VSB), 2019 WL 1244508, at *12 (S.D.N.Y. Mar. 18, 2019) ("Plaintiff does not allege that she filed a claim with the OSC and that OSC failed to file a complaint within 120 days; therefore, Plaintiff cannot initiate a private action under the statutes.").  As there is no indication of any such filing in the record, the Court does not consider Plaintiff's claims under the INA and the IRCA.

NYSHRL prohibits discrimination on the basis of citizenship.  (CVS Br. 6-7, 7 n.6).  As to Plaintiff's NYCHRL claim, the CVS Defendants additionally contend that this claim fails because he was hired into a contractor position, an argument the Court has already resolved for purposes of this motion.  (*Id.* at 7 n.6).  *See* Discussion Sec. C(2)(a).

The Court agrees with the CVS Defendants that, as a matter of law, neither Title VII nor the NYSHRL protects against citizenship discrimination, as distinct from national origin discrimination.  *See Weber* v. *Tada,* 589 F. App'x 563, 568 (2d Cir. 2014) (summary order) ("Title VII forbids discrimination based on national origin, not based on citizenship." (citing *Espinoza* v. *Farah Mfg. Co., Inc.*, 414 U.S. 86, 89-91 (1973)); *Cheung* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 913 F. Supp. 248, 252 (S.D.N.Y. 1996) (holding that the NYSHRL does not prohibit citizenship discrimination because "[c]itizenship and national origin are not the same"); *see also Anderson* v. *Conboy*, 156 F.3d 167, 180 (2d Cir. 1998) ("[C]itizenship discrimination is not covered by Title VII"); *Backer* v. *USD 30 Billion MTN Programme*, No. 16 Civ. 6577 (PGG), 2017 WL 6387732, at *8 (S.D.N.Y. Sept. 30, 2017) ("[P]rohibitions on national origin discrimination do not prohibit discrimination on the basis of citizenship or nationality" (citing *Digrazia* v. *Local 338*, 189 F.3d 460 (2d Cir. 1999) (summary order)).

Plaintiff cites *Novak* v. *World Bank*, No. 79-0641, 1979 WL 225 (D.D.C. June 13, 1979), an out-of-circuit case, which considered a Title VII claim predicated on the World Bank's alleged policy of discriminating against U.S. citizens.  (*See* Pl. CVS Opp. 1-3).  The court in *Novak* labeled this type of Title

VII claim (*i.e.*, one involving discrimination *against* U.S. citizens) as a "reverse *Espinoza* situation," *Novak*, 1979 WL 225, at *1, with reference to the Supreme Court's decision in *Espinoza*, which assessed Title VII's protections against discrimination against non-U.S. citizens *in favor of* U.S. citizens, *Espinoza*, 414 U.S. at 87-88.  While Plaintiff is correct that the *Novak* court denoted claims such as his "reverse *Espinoza* situations," the affixing of this label did not imply an endorsement of such claims.  To the contrary, the *Novak* court dismissed the would-be reverse *Espinoza* claim, reasoning that "the Supreme Court's holding [in *Espinoza*] is clear: the term 'national origin' does not include mere citizenship."  *Novak*, 1979 WL 225, at *1; *see also Espinoza*, 414 U.S. at 95 ("[N]othing in [Title VII] makes it illegal to discriminate on the basis of citizenship or alienage.").  Thus, the applicable precedent, including that cited by Plaintiff, dictate dismissal of Plaintiff's Title VII claims for discrimination on the basis of his U.S. citizenship.  And courts have employed similar logic to restrict claims of citizenship discrimination under the NYSHRL.  *See, e.g., Gallo* v. *Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 547 (S.D.N.Y. 2008) ("There is no legally cognizable discrimination cause of action based on citizenship [under the NYSHRL]" (quoting *Sheikh* v. *Habib Bank Ltd.*, 704 N.Y.S. 2d 75, 76 (1st Dep't 2000))).

The Court declines to recast Plaintiff's claim of citizenship discrimination as one for national origin discrimination, as nothing in the Complaint supports the position that Plaintiff suffered any adverse employment event due to the location of his birth.  Plaintiff was born in India (Am. Compl. ¶ 25), and he

alleges that his job was outsourced to individuals of Indian descent (*id.* at ¶¶ 107, 151).  Accordingly, Plaintiff's claims in Counts 8, 12, and 27, alleging violations of Title VII and the NYSHRL on the grounds of U.S. citizenship discrimination are dismissed as against all Defendants.

Plaintiff separately brings citizenship discrimination claims under Section 1981, which does "provide[] a claim against private discrimination on the basis of alienage." *Anderson*, 156 F.3d at 180.  Courts in this Circuit have found that Section 1981's citizenship protections are limited to alienage, however, meaning the statute only prohibits discrimination against naturalized U.S. citizens on the basis of their U.S. citizenship.  *See Meyenhofer*, 503 F. Supp. 3d at 49-50 ("[T]here is no authority in this Circuit to support that Section 1981 prohibits discrimination against natural born U.S. Citizens."); *Maack* v. *Wyckoff Heights Med. Ctr.*, No. 15 Civ. 3951 (ER), 2016 WL 3509338, at *15 (S.D.N.Y. June 21, 2016) (determining that plaintiff's claim was not cognizable because "the Court has not identified, and Plaintiff has not submitted, any precedent in this Circuit establishing that Section 1981's prohibition of alienage discrimination extends to naturalized U.S. citizens"). *But see Jimenez* v. *Servicios Agricolas Mex., Inc.*, 742 F. Supp. 2d 1078, 1086 (D. Ariz. 2010) ("[T]he plain text of Section 1981 applies to '[a]ll persons,' which necessarily includes both citizens and non-citizens.").  The Court need not expressly determine the scope of Section 1981's citizenship protections to resolve this claim, because even assuming it does afford protection in this

context, Plaintiff has failed to set forth any facts permitting an inference that

he was discriminated against on the basis of his U.S. citizenship.

With particular respect to Plaintiff's claim that he was fired so that his

job could be outsourced to India, Plaintiff points to a single remark made by

either Denner or Jhala following his termination.  (*See* Am. Compl. ¶ 107

("When [Jhala] and [Denner] told [me] that they are removing me from project, I

asked them if it was because of any performance issues, they replied NO but

they said *the project is outsourced to India*." (emphasis in original)).  Even if

assumed to be true, this statement is a non-probative stray remark by a non-

decisionmaker, and is thus insufficient to support an inference that Plaintiff's

termination was motivated by any discriminatory animus against U.S. citizens.

Importantly, neither Denner nor Jhala is alleged to have input in hiring

decisions for their respective employers, and neither is alleged to have played a

role in the ultimate decision to terminate Plaintiff.  (*See id.* at ¶ 10 (explaining

Denner's responsibilities at Aetna); *id.* at ¶ 17 (explaining Jhala's role at APN)).

Further, the Court does not perceive a comment relaying a plan to outsource a

particular project to a foreign country as constituting, in and of itself, evidence

of discrimination on the basis of U.S. citizenship.  Plaintiff's citizenship

discrimination under Section 1981 thus fails.

By its express terms, the NYCHRL prohibits employers from

discriminating on the basis of "immigration or citizenship status."  NYCHRL

§ 8-107(1)(a).  Nevertheless, Plaintiff's claims for citizenship discrimination

under the NYCHRL fail for the same reason just discussed in the Section 1981

context, *i.e.*, a failure to plead any indicia of a discriminatory motive. *See Smith* v. *Johnson*, No. 14 Civ. 3975 (KBF), 2014 WL 5410054, at *4 (S.D.N.Y. Oct. 24, 2014) ("[D]espite the liberal construction accorded claims under the NYCHRL, Plaintiff must still allege enough facts to state a claim to relief under the NYCHRL that is plausible on its face.").

In sum, because Plaintiff has failed to present facts sufficient to support an inference of discrimination on the basis of his U.S. citizenship under any applicable standard, Defendants' motions to dismiss Counts 8, 12, and 27 are granted.

### 3.  Plaintiff's Hostile Work Environment Claims Fail Under Federal and State Law, But Survive Under City Law

Plaintiff also brings claims against all Defendants for hostile work environment (Count 9) and harassment (Count 28) under Title VII, Section 1981, the ADA, the ADEA, the NYSHRL, and the NYCHRL.[25]  For the reasons discussed below, the Court grants Defendants' motions to dismiss Plaintiff's hostile work environment claims under federal and state law as against all Defendants.

---

[25]   Plaintiff's Count 28, entitled "Harassment," cannot survive as a standalone claim, as "New York does not recognize a common-law cause of action alleging harassment." *Powell* v. *Lab Corp.*, 789 F. App'x 237, 240 n.4 (2d Cir. 2019) (summary order) (quoting *Mago, LLC* v. *Singh*, 851 N.Y.S.2d 593, 594 (2d Dep't 2008)).

Because Plaintiff cites all of the same federal, state, and city antidiscrimination laws in both Counts, the Court construes Counts 9 and 28 as a single hostile work environment claim, due to the factual and analytic overlap between the allegations underpinning both counts.  (*Compare* Am. Compl. ¶¶ 155-156 (Count 9), *with id.* at ¶¶ 213-214 (Count 28)).  *See, e.g., Feingold* v. *New York*, 366 F.3d 138, 149 (2d Cir. 2004) ("In order to prevail on a hostile work environment claim, a plaintiff must first show that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" (internal quotation marks omitted) (quoting *Alfano* v. *Costello*, 294 F.3d 365, 373 (2d Cir. 2002))).

Plaintiff's hostile work environment claims are premised primarily upon the health consequences purportedly resulting from Defendants' alleged failure to pay him for the services he provided to Aetna-AHM.  (*See* Am. Compl. ¶ 155). In his briefing, Plaintiff also cites the comments referring to him as a "black apple" and "black old Madrasi" by two different supervisors on separate occasions as contributing to the hostile work environment.  (Pl. CVS Opp. 9; Pl. APN Opp. 12).  Both the CVS and APN Defendants argue that Plaintiff has alleged mere isolated instances of alleged discriminatory conduct that, even taken as true, fail to meet the threshold of severity or pervasiveness required to establish a hostile work environment under the federal and state standards. (CVS Br. 9-10; APN Br. 12-13).  In large measure, Defendants are correct: Plaintiff has failed to state a hostile work environment claim under federal or state law, but he succeeds, at least for now, in stating such a claim under local law.

### a.   Plaintiff's Federal and State Hostile Work Environment Claims

To establish a hostile work environment claim under federal or New York state law, a plaintiff must adequately plead that: (i) "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (ii) "a specific basis exists for imputing the conduct that created the hostile environment to the employer."  *Howley* v. *Town of Stratford*, 217 F.3d 141, 153-54 (2d Cir. 2000) (internal quotation marks and citations omitted).  In addition, Plaintiff

must demonstrate that he "was subjected to the hostility because of [his] membership in a protected class." *Brennan* v. *Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999). This legal framework applies to hostile work environment claims brought under Title VII, Section 1981, the ADEA, the ADA, and the NYSHRL. *See Littlejohn*, 795 F.3d at 320-21 (Title VII and Section 1981); *Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240-41 (2d Cir. 2007) (ADEA); *Fox* v. *Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (ADA); *Pucino* v. *Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 & n.2 (2d Cir. 2010) (NYSHRL).

To plead a valid hostile work environment claim under these statutes, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn*, 795 F.3d at 321. "Although a continuing pattern of hostile or abusive behavior is ordinarily required to establish a hostile environment, a single instance can suffice when it is sufficiently egregious." *Ferris* v. *Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001). In evaluating "whether a plaintiff suffered a hostile work environment," a court "consider[s] the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Littlejohn*, 795 F.3d at 321 (internal quotation marks omitted). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person

would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.*

"An employer's liability for a hostile work environment claim depends on whether the underlying harassment is perpetrated by the plaintiff's supervisor or a non-supervisory coworkers." *Wiercinski* v. *Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015). When the offending employee is a non-supervisory coworker, "an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Petrosino* v. *Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004).

All of Plaintiff's hostile work environment claims under federal and state law fail. Even construed liberally, Plaintiff's allegations cannot be read as creating a workplace "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment." *Whidbee*, 223 F.3d at 69. In describing the hostile work environment, Plaintiff points to the harsh ramifications he faced for not being paid for a period of two months. (Am. Compl. ¶¶ 114-115, 155). Even conceding the difficulty that a protracted lack of income poses, this alleged failure to pay Plaintiff does not support a claim for a hostile work environment in these circumstances. Plaintiff's ensuing medical issues, which appeared to have worsened following his termination in August 2019 (*see id.* at ¶¶ 110, 114-115) cannot be linked to many of the factors that ostensibly created the hostile environment, such as his delayed receipt of database credentials or

inability to eat his meals at the communal worktable.  Even Plaintiff's allegations about racialized remarks from his supervisors do not suggest the existence of an environment so infused with hostility to make out a viable claim for a hostile work environment.  *See Schwapp* v. *Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("[I]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments"); *Lopez* v. *S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987) ("Because the claimed incidents in the instant case were few in number and occurred over a short period of time, they fail to allege a racially hostile working environment.").  The severity of Plaintiff's medical complications cannot support a claim for hostile work environment where the underlying allegations of discriminatory conduct do not satisfy the applicable legal standard.

The only allegation sufficiently egregious to plausibly support Plaintiff's hostile work environment claim is his assertion that "someone grabbed [him] and kicked [him] repeatedly" while he was in a room with Denner and Jhala, after which Denner told him "you black guy, go back to India."  (Am. Compl. ¶ 108).  *See Lewis* v. *State of Conn. Dep't of Corr.*, 355 F. Supp. 2d 607, 622 (D. Conn. 2005) ("The prototypical 'single incident' that creates a hostile work environment usually involves a clear, expressed, overt, and truly egregious act of discrimination.").  Notwithstanding the gravity of Plaintiff's allegations of violence against Jhala and Denner, the Court does not find that they support his claim for hostile work environment, as the incident occurred *after* Plaintiff had already been fired.  The allegation of violence thus cannot be characterized

as "work[ing] a transformation of the plaintiff's workplace," as he had already
been extricated from the workplace when the event occurred. *Alfano* v.
*Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *see also Cruz* v. *Coach Stores, Inc.*,
202 F.3d 560, 570 (2d Cir. 2000) ("[T]he plaintiff must demonstrate either that
a single incident was extraordinarily severe, or that a series of incidents were
'sufficiently continuous and concerted' to have *altered the conditions of [his]
working environment*." (emphasis added)).  Put differently, this violent incident
cannot be said to have impacted Plaintiff's work performance, altered any
"term, condition, or privilege" of his employment, or forced him to endure a
hostile work environment, because by this time Plaintiff had already been
terminated from the job, without any expectation of return. *See Harris* v.
*Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (noting that one of the factors to
consider when analyzing a hostile work environment claim is "whether [the
discriminatory conduct] unreasonably interferes with an employee's work
performance").

Nor has Plaintiff established that Denner's and Jhala's alleged violent
acts can be imputed to any of the Corporate Defendants.  Neither Denner nor
Jhala is alleged to have held a supervisory role, and nothing in the Complaint
can be construed as providing a "specific basis … for imputing the conduct that
created the hostile environment to the employer." *Howley*, 217 F.3d at 153-54.
Plaintiff describes the incident as occurring in a "dark compact room," with
only himself, Denner, and Jhala present.  (Am. Compl. ¶ 108).  No further
details are provided, and the Court does not read Plaintiff's Amended

Complaint to imply that Kalyani or any other supervisor invited, sanctioned, or was otherwise aware of the violence. *Perry* v. *Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) ("When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" (quoting *Karibian* v. *Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994)). In declining to find the allegations against Denner and Jhala supportive of Plaintiff's claim of hostile work environment, the Court should not be misinterpreted as giving short shrift to these allegations of post-termination violence. Indeed, the Court re-assesses this conduct in the context of Plaintiff's claims for intentional torts against these Defendants.

Accordingly, the Court dismisses all claims of hostile work environment brought under federal and state law against the named Defendants. The Court will next turn to Plaintiff's claim of hostile work environment under the NYCHRL.

### b.   Plaintiff's NYCHRL Hostile Work Environment Claim

Like other claims of discrimination, hostile work environment claims under the NYCHRL require independent analysis, as "plaintiff need only demonstrate ... that [he] has been treated less well than other employees because of [a protected characteristic]." *Leung* v. *N.Y. Univ.*, 580 F. App'x 38, 40 (2d Cir. 2014) (summary order). "The NYCHRL does not differentiate between discrimination and hostile work environment claims; rather, both are

governed by [NYCHRL] § 8-107(1)(a)." *Fenner* v. *News Corp.*, No. 09 Civ. 9832 (LGS), 2013 WL 6244156, at *13 n.2 (S.D.N.Y. Dec. 2, 2013); *accord Canosa* v. *Ziff*, No. 18 Civ. 4115 (PAE), 2019 WL 498865, at *17 (S.D.N.Y. Jan. 28, 2019). As such, "[c]ourts have applied largely the same standard to hostile work environment claims under NYCHRL as they have to disparate impact claims under NYCHRL." *Gordon* v. *City of New York*, No. 14 Civ. 6115 (JPO), 2018 WL 4681615, at *20 (S.D.N.Y. Sept. 28, 2018) (quoting *Mikolaenko* v. *N.Y. Univ.*, No. 16 Civ. 413 (DAB), 2017 WL 4174928, at *11 (S.D.N.Y. Sept. 7, 2017)). Under this standard, "even 'a single comment' may be actionable in appropriate circumstances." *Mihalik*, 715 F.3d at 114 (quoting *Williams*, 872 N.Y.S.2d at 40-41 & n.30). "[D]efendants can still avoid liability," however, "if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and inconveniences." *Wilson* v. *N.Y.P. Holdings, Inc.*, No. 05 Civ. 10355 (LTS) (DFE), 2009 WL 873206, at *29 (S.D.N.Y. Mar. 31, 2009) (quoting *Williams*, 872 N.Y.S.2d at 41). Though "a jury is often best suited to make this determination," "courts may still dismiss 'truly insubstantial cases,' where the defense is clear as a matter of law." *Mihalik*, 715 F.3d at 111 (quoting *Williams*, 872 N.Y.S.2d at 41).

Plaintiff offers largely the same evidence to support both his disparate treatment claim and his hostile work environment claim under the NYCHRL. The Court cannot conclude on this motion that this is a "truly insubstantial case[ ]," or that the racially charged statements made by Kalyani, Neela, and

Vedant (*see* Am. Compl. ¶¶ 98, 107, 117) constitute "petty or trivial" slights as a matter of law.  Therefore, for essentially the same reasons stated in the context of his surviving NYCHRL disparate treatment claim, Plaintiff's NYCHRL hostile work environment claim also survives as against CVS, Aetna, AHM, APN, Kalyani, Neela, and Vedant.

### 4. Plaintiff's Claims for Retaliation, Constructive Discharge, and Failure to Hire or Promote Fail

Plaintiff also brings claims against all Defendants for retaliation (Count 5), constructive termination (Count 10), and failure to hire or promote (Count 11), in violation of Title VII, Section 1981, the NYSHRL, and the NYCHRL.  In support of these claims, Plaintiff attributes his termination to Defendants' purported "retaliatory animus."  But, as discussed below, Plaintiff's vague allegations are insufficient to sustain any of these claims.

### a. Retaliation

Plaintiff asserts claims for retaliation under Title VII, Section 1981, the NYSHRL, and the NYCHRL.[26]  In support of these claims, Plaintiff alleges that

---

[26]     Plaintiff also asserts retaliation claims pursuant to the GINA, the INA, the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. §§ 201-219, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797.  As previously discussed, the former two statutes are not applicable to any of Plaintiff's claims in this case.

Plaintiff's claims pursuant to the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), also fail.  The Second Circuit has held that "[t]he plain language of [the FLSA antiretaliation provision] limits the cause of action to retaliation for filing formal complaints … but does not encompass complaints made to a supervisor."  *Lambert* v. *Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993), *abrogated on other grounds by Kasten* v. *Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).  Because the Amended Complaint contains no evidence that Plaintiff lodged a complaint, oral or written, to a proper government authority prior to his termination, Defendants' motion to dismiss Plaintiff's retaliation claim under the FLSA is dismissed.

Furthermore, the Rehabilitation Act prohibits disability discrimination in federal programs or "any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a); *see also Sedor* v. *Frank*, 42 F.3d 741, 745 (2d Cir. 1994).  Because the

Defendants fired him because he worked more efficiently than the outsourced Indian team and because he refused to set aside a portion of his hourly rate to go toward a "commission to managers." (Am. Compl. ¶¶ 101, 104, 140). Defendants contend that Plaintiff has not alleged that he engaged in any protected activity within the meaning of the relevant statutes or that he opposed any employment practice reasonably believed to be unlawful under any of the applicable laws. (*See* APN Br. 13-15; CVS Br. 15-16). The Court agrees with Defendants and dismisses Plaintiff's claims of retaliation under all statutes cited.

Plaintiff's retaliation claims under Title VII, Section 1981, and the NYSHRL are governed by the *McDonnell Douglas* burden-shifting framework. *See CBOCS West, Inc.* v. *Humphries*, 553 U.S. 442, 446 (2008) (Section 1981); *Summa* v. *Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (Title VII and NYSHRL). The NYCHRL is analyzed similarly, although with some differences that are discussed below. For a retaliation claim under Title VII, Section 1981, the NYSHRL, or the NYCHRL to survive a motion to dismiss, the plaintiff must plausibly allege "[i] that [he] participated in a protected activity, [ii] that [he] suffered an adverse employment action, and [iii] that there was a causal connection between [his] engaging in the protected activity and the adverse employment action." *Gorzynski*, 596 F.3d at 110; *accord Duplan* v. *City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).

---

Amended Complaint lacks any indication that any of the Defendants is a covered employer under the Rehabilitation Act, the Court dismisses Plaintiff's claims under this law.

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Wright* v. *Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012) (summary order). For a plaintiff's complaint or request to constitute protected activity, he is required "to have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." *McMenemy* v. *City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001); *see also Wu* v. *Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 581 (2d Cir. 2020) (summary order) (same, under NYSHRL). Under the NYCHRL, a plaintiff need not show that any employment action was taken against him, but must instead show that, as a result of his engaging in a protected activity, some action was taken that would be reasonably likely to deter him from engaging in the activity again. *See Mayers* v. *Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011).

Plaintiff has failed to allege that he engaged in any protected activity for purposes of the retaliation analysis. In his briefing, Plaintiff identifies the conduct as his completion of "task[s] ahead of [the] outsourced Indian team (when the CVS manager wanted to outsource the task, delay the work for more money[,] move out of [the] country [to] avoid paying payroll tax for US[,] and easy to cook the book in India to keep the money in Indian [manager's] pocket)." (Pl. CVS Opp. 18). The Court does not perceive either this argument, or any of Plaintiff's pleadings, to allege that he actually lodged a complaint with his employer about what he perceived to be illegal discrimination on the basis of a protected category (as opposed to possibly inefficient workstreams or

questionable accounting practices).  *See Tepperwien* v. *Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011) ("[Title VII's antiretaliation] provision seeks to further Title VII's goal of a workplace free from discrimination on the basis of race, ethnicity, religion, or gender 'by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII]'s basic guarantees.'" (quoting *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 63 (2006))).

Because the Court has found that Plaintiff has not engaged in any protected activity, Plaintiff's retaliation claims under all statutes, including the NYCHRL, necessarily fail.  As a result, the Court grants Defendants' motions to dismiss Count 5 of the Complaint in its entirety as against all Defendants.

### b.      Constructive Discharge and Failure to Hire or Promote

In Counts 10 and 11, Plaintiff asserts claims of constructive and wrongful termination (Count 10) and failure to hire or promote (Count 11).  The Court need not belabor its analysis of these claims.

*First,* "an employee is constructively discharged when his employer, *rather than discharging him directly*, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily."  *Petrosino*, 385 F.3d at 229 (emphasis added).  Under this standard, Plaintiff's claim for constructive termination must fail, as he has pleaded that he was affirmatively fired.  (Am. Compl. ¶ 106 ("I was fired on Monday August 26th")).

*Second*, the Court dismisses Plaintiff's claim of wrongful termination as duplicative of his discrimination claims.  Plaintiff's alleged wrongful

termination forms the basis of many of his discrimination claims, and he brings this freestanding wrongful termination claim under these same antidiscrimination laws, which the Court has discussed at length above.  (*See* Am. Compl. ¶ 159 (citing Title VII, Section 1981, the ADA, the ADEA, the NYSHRL, and the NYCHRL as the basis for Count 10)).  This claim fails even if Plaintiff seeks to distinguish it from his discrimination claims on the grounds that he was terminated in violation of a contract that he entered into with any of the Defendants.  The only contract available to the Court on this motion contains a provision giving the Defendants a right to terminate Plaintiff with two weeks' notice, and Plaintiff has alleged that he learned of his replacement in "early August 2019," a date which, although vague, the Court understands to be more than two weeks in advance of his August 26, 2019 termination. (*See* Contractor Agreement ¶ 13; Am. Compl. ¶¶ 100, 106).  This claim also fails if fashioned as a standalone tort because, as the APN Defendants note, "New York does not recognize a cause of action for the tort of abusive or wrongful discharge of an at-will employee."  (APN Br. 18 (quoting *Geldzahler* v. *N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 388 (S.D.N.Y. 2009))).

    *Lastly*, Plaintiff has failed to plead a cause of action for failure to hire or failure to promote.  Such claims are also analyzed under the *McDonnell Douglas* framework, and require a plaintiff to allege that "[i] he was a member of a protected class; [ii] he applied, and was qualified, for an open position; [iii] his application was rejected; and [iv] the circumstances of the rejection gave rise to an inference of discrimination."  *Jones* v. *Onondaga Cnty. Res. Recovery*

*Agency*, 639 F. App'x 45, 46 (2d Cir. 2016) (summary order).  To establish a failure to promote claim, the Second Circuit has held that a plaintiff is required to show that he actually applied for a position or "attempted to apply for it through informal procedures endorsed by the employer." *Petrosino*, 385 F.3d at 226-27.  Fatally for Plaintiff's claims, the Amended Complaint is devoid of any facts suggesting that he actually applied for any open position, whether formally or informally.  Plaintiff does not even allege whether such a position was in fact available.  Accordingly, the entirety of Plaintiff's Counts 10 and 11 are dismissed as against all Defendants.

## D.   The Court Grants in Part and Denies in Part Defendants' Motions to Dismiss Plaintiff's Wage and Hour Claims

Additional to his many discrimination claims, Plaintiff brings claims against all Defendants for unpaid expenses (Count 15), loss of income (Count 25), and unpaid overtime (Count 32).  In these counts, Plaintiff asserts causes of action under a suite of federal, state, and city anti-discrimination laws, all of which the Court has already discussed above.[27]  While Plaintiff does not clearly

---

[27]   Plaintiff includes in these counts the Sarbanes-Oxley Act of 2002 ("SOX"), which is codified as amended at scattered sections of Titles 15, 18, 28, and 29 of the United States Code, and the Worker Adjustment and Retraining Notification Act of 1988 ("WARN"), 29 U.S.C. §§ 2101-2109.  These laws are facially inapplicable to any of Plaintiff's claims.

Presumably, Plaintiff is seeking to invoke SOX's retaliation provision, 18 U.S.C. § 1514A.  But protected activity under this statute requires a plaintiff to have communicated information reasonably believed to constitute wire fraud, mail fraud, securities fraud, or other infractions of federal law against shareholders of a public company.  *Id.* § 1514A(a)(1).  Nothing in the Amended Complaint approaches such protected activity.

Nor does the WARN Act apply to Plaintiff's claims, inasmuch as it mandates that "an employer with 100 or more employees must, sixty days in advance of a plant closing or mass layoff, provide written notice to each affected employee or their representative, as well as the state."  *Garner* v. *Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 375 (S.D.N.Y.

identify a valid legal basis for any of his wage and hour claims, they appear to logically fall under the FLSA and the New York Labor Law ("NYLL"), NYLL §§ 190 to 199-A. Interpreting Plaintiff's pleadings "to raise the strongest arguments that they suggest," *Cruz*, 202 F.3d at 597, the Court finds that certain of Plaintiff's allegations warrant consideration under these laws.

### 1.   Untimely Payment of Wages

To begin, Plaintiff alleges that Defendants failed to pay Plaintiff any of the wages he was owed for the duration of his employment engagement with Aetna-AHM. (*See* Am. Compl. ¶¶ 98, 103, 229). This allegation, if true, adequately supports claims for violations of the FLSA and the NYLL. Although Defendants have not had an opportunity to specifically address this issue, the Court expects that they would contest the very applicability of the statutes, given their arguments that Plaintiff was an independent contractor. (CVS Br. 7 n.6; APN Br. 1-2, 15).[28] As it did in the Title VII context, the Court finds that,

---

2017). As Plaintiff alleges no facts implicating WARN, the Court will not consider his claims under this statute.

[28] The Court notes that the Second Circuit applies different tests to determine whether an individual is an employee for the purposes of the FLSA and Title VII. Under the FLSA, the terms "employee" and "employer" are construed expansively, and courts look to whether the "alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman* v. *RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (internal citation omitted). Under the FLSA's broad standard, an employee may "stand in the relation of an employee to two or more employers at the same time." *New York* v. *Scalia*, 464 F. Supp. 3d 528, 534 (S.D.N.Y. 2020). Because the NYLL uses the same definition of an employer as the FLSA, this Court's analysis of the Defendants' employer status under the FLSA is equally applicable to Plaintiff's NYLL claims. *Flores* v. *201 West 103 Corp.*, 256 F. Supp. 3d 433, 439 n.2 (S.D.N.Y. 2017); *accord Hart* v. *Rick's Cabaret Int'l Inc.*, No. 09 Civ. 3043 (JGK), 2010 WL 5297221, at *2 (S.D.N.Y. Dec. 20, 2010).

At this stage of the proceedings, and drawing all inferences in Plaintiff's favor, the Court determines that Plaintiff has sufficiently alleged a joint employment relationship with CVS, Aetna, AHM, and APN for purposes of the FLSA and the NYLL. The Court arrives at this conclusion with reference to substantially the same facts that undergird

despite the label of "independent contractor" employed in the Contractor Agreement, Plaintiff has sufficiently alleged an employment relationship with Defendants CVS, Aetna, AHM, and APN to bring his claims within the ambit of the FLSA and the NYLL.  *See Brock* v. *Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988) ("[A]n employer's self-serving label of workers as independent contractors is not controlling [for purposes of the FLSA.]").  Although Defendants may ultimately refute the existence of an employment relationship at a later stage in the proceeding, the Court refrains from concluding as such on this motion.

"The FLSA and the NYLL both guarantee compensation for all work engaged in by covered employees."  *Chichinadze* v. *BG Bar Inc.*, 517 F. Supp. 3d 240, 253 (S.D.N.Y. 2021) (internal quotation marks omitted).  While the FLSA does not statutorily "prescribe a particular payment schedule, courts have consistently interpreted Section 206(a) [of the FLSA] to include a prompt payment requirement."  *See Belizaire* v. *RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 353 (S.D.N.Y. 2014); *Rogers* v. *City of Troy*, 148 F.3d 52, 57 (2d Cir. 1998) ("[I]t is clear that the FLSA requires wages to be paid in a timely fashion.").  And under the NYLL, employers must pay the wages for clerical and other workers "in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer."  NYLL § 191(1)(d).  Following an employee's termination, the

---

Plaintiff's alleged employment relationship with these same Defendants for purposes of Title VII.  *See* Discussion Sec. C.2(a).

72

employer must pay the employee's owed wages "not later than the regular pay day for the pay period during which the termination occurred." *Id.* § 191(3).

Plaintiff has sufficiently alleged a violation of the FLSA's prompt payment requirement, *see* 29 U.S.C. § 206(a), as well as the NYLL's minimum wage and timely payment requirements, *see* NYLL §§ 191(1)(d), 652(1).  In the Amended Complaint, Plaintiff outlines certain "agreed terms of employment," *id.* § 191(1)(d), including a pay rate of $68 per hour (*see* Fee Schedule), and the requirements that he "provide client approved weekly timesheets" and "submit invoice with approved timesheet and payable in 30 days" (Am. Compl. ¶ 40(d)-(e)); *see also* Contractor Agreement ¶¶ 4-5.  Plaintiff avers that he had to complete Aetna's weekly timesheets through a "web-based timesheet application, which [was] allow[ed] from [a] designated laptop only." (Am. Compl. ¶ 109).[29]

Accordingly, Plaintiff's allegations that he never received a paycheck are sufficient to establish a claim against CVS, Aetna, AHM, and APN under the FLSA and the NYLL, both for unpaid wages and for late payment.[30]  Because of

---

[29]    The Court does not consider on this motion the timesheet that Plaintiff appended to his opposition to the APN Defendants' motion to dismiss, as it is neither integral to the Amended Complaint nor susceptible to judicial notice.  (*See* Pl. APN Opp., Ex. D). However, the Court finds that the Amended Complaint plausibly supports an inference that Plaintiff complied with these procedures and completed at least one timesheet. (*See* Am. Compl. ¶¶ 62, 106, 109).

[30]    These same allegations of unpaid wages could also be construed to state a claim for breach of contract under New York law, which requires: (i) the existence of a contract; (ii) the performance of that contract by one party; (iii) the breach of that contract by the other party; and (iv) damages.  *Terwilliger* v. *Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000).  As Plaintiff, however, cannot recover for the same harm twice, and as any injury suffered by Plaintiff as the result of any breach of an agreement by Defendants to make timely payments of his earned wages would be the same injury as Plaintiff would have suffered for non-payment of wage in violation of either the federal or state labor laws, this Court does not engage in a separate analysis of Plaintiff's potential claim for breach

the Court's disposition of these FLSA and NYLL claims, the Court dismisses Plaintiff's loss of income claim in Count 25 as a standalone claim that is duplicative of Plaintiff's surviving claims for unpaid wages.

### 2. Unpaid Overtime

In Count 32, Plaintiff brings a separate claim under the FLSA (and other, less applicable laws) for unpaid overtime. Plaintiff claims that he is entitled to overtime pay for "baby sitting [his work] laptop." (Am. Compl. ¶ 226; *see also* Pl. APN Opp. 17; Pl. CVS Opp. 35). Defendants argue that Plaintiff has failed to state a viable claim for overtime under the FLSA, as he has neither provided any details regarding the uncompensated time he worked beyond forty hours in any given week (*see* APN Br. 15-16), nor alleged any work-related conduct for which he was entitled to overtime pay (*see* CVS Br. 22-23). The Court agrees with Defendants and finds that the activities that Plaintiff alleges as deserving overtime are exempt from the FLSA. Therefore, the Court dismisses the entirety of Plaintiff's Count 32.

The FLSA requires covered employers to pay their employees at least time-and-a-half their ordinary pay rate for any workweek longer than forty hours. 29 U.S.C. § 207(a)(1). While the FLSA "guarantee[s] compensation for all work or employment engaged in by employees covered by the Act … not all work-related activities constitute 'work or employment' that must be compensated." *Gorman* v. *Consol. Edison Corp.*, 488 F.3d 586, 589-90 (2d Cir.

---

of contract, which is not asserted in the Amended Complaint. *See Belizaire* v. *RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 354 n.15 (S.D.N.Y. 2014) (concluding similarly).

2007) (internal citation omitted).  The Portal-to-Portal Act of 1947, 29 U.S.C.

§§ 251-262, amended the FLSA to "delineate certain activities which did not

constitute work" so as to "relieve employers from liability for preliminaries,

most of them relatively effortless, that were thought to fall outside the

conventional expectations and customs of compensation."  *Reich* v. *N.Y.C.*

*Transit Auth.*, 45 F.3d 646, 649 (2d Cir. 1995).  In relevant part, "[t]he Portal-

to-Portal Act exempts employers from compensating employees under the FLSA

'for or on account of' time spent 'traveling to and from the actual place of

performance of the principal activity or activities' of employment and any

activities which are 'preliminary to or postliminary to said principal activity or

activities.'"  *Singh* v. *City of New York*, 524 F.3d 361, 367 (2d Cir. 2008)

(quoting 29 U.S.C. § 254(a)).  Interpreting this language, the Second Circuit has

held that the "Portal-to-Portal exemptions properly protect employers from

responsibility for commuting time and for relatively trivial, non-onerous

aspects of preliminary preparation, maintenance and clean-up."  *Reich*, 45 F.3d

at 651.

Plaintiff's claim that he is owed overtime compensation for "baby sitting"

his work laptop (Am. Compl. ¶ 226) falls squarely within the Portal-to-Portal

Act's exceptions for noncompensable work-related activity.  By "baby sitting,"

the Court understands Plaintiff to reference the transportation of his laptop to

and from work, which is the kind of incidental, non-onerous activity that is not

compensable under the FLSA.  *See Singh*, 524 F.3d at 367 ("[T]he mere

carrying of a briefcase without any other active employment-related

responsibilities does not transform the plaintiffs' entire commute into work [compensable under the FLSA]."); *Colella* v. *City of New York*, 986 F. Supp. 2d 320, 342-43 (S.D.N.Y. 2013) (finding that time carpenters and electricians spent transporting heavy duty tools, materials, and equipment from home to work did not constitute compensable work under the FLSA).  Accordingly, Plaintiff's Count 32 is dismissed in its entirety.

### 3.    Unpaid Expenses and Reimbursement

Plaintiff also asserts a claim for unpaid expenses that he contends should be reimbursed by Defendants.  (Count 15).  With this claim, Plaintiff seemingly seeks to recover expenditures he made for parking his car, taking the train, getting his laundry and dry cleaning done, and purchasing a protective case for his work laptop.  (Am. Compl. ¶¶ 37, 81).  The CVS Defendants argue that Plaintiff has failed to assert a cognizable basis that obligates any Defendant to reimburse his expenses.  (CVS Br. 17).  The Court agrees with Defendants that Plaintiff has not pleaded any facts suggesting he is entitled to recover from Defendants the cost of any of these expenses.

According to regulations promulgated under the FLSA, "if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of [the FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under [the FLSA]."  29 C.F.R. § 531.35; *see also Hernandez* v. *Spring Rest. Grp., LLC*, No. 17 Civ. 6084

(AJN), 2018 WL 3962832, at *1 (S.D.N.Y. Aug. 17, 2018).  Similarly, under the NYLL, "[i]f an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage."  N.Y. Comp. Codes R. & Reg. tit. 12 § 146-2.7(c); *see also Feng Chen* v. *Patel*, No. 16 Civ. 1130 (AT) (SDA), 2019 WL 2763836, at *11 (S.D.N.Y. July 2, 2019).

Plaintiff's allegations are inadequate to state a claim under either statute, as none of Plaintiff's claimed expenses appears to bear on his job responsibilities as a software engineer.  Accordingly, Defendants' motions to dismiss Count 15 of the Amended Complaint are granted.

**E.    The Court Grants in Part and Denies in Part Defendants' Motions to Dismiss Plaintiff's Common Law Intentional Tort Claims**

The Court reads several of Plaintiff's causes of action to assert common law tort claims under New York law.  These include Plaintiff's counts styled as "Intentional Infliction of Emotional Distress" (Count 13), "Fraud" (Count 16), "Assaulting" (Count 18), and "Destruction of Evidence" (Count 31).  As explained further below, the Complaint, at most, states a claim for battery against Denner and Jhala related to the violent incident that allegedly occurred following Plaintiff's termination.  All of Plaintiff's other tort claims fail, either because of a dearth of sufficient supporting facts or because they are not cognizable under New York law.

**1.    Assault and Battery**

In Count 18, Plaintiff asserts an assault claim against all Defendants related to his allegation that Denner and Jhala kicked him while seeking the

return of Plaintiff's work equipment.  (Am. Compl. ¶¶ 108, 182).  Under New York tort law, "[a]n assault is 'an intentional placing of another person in fear of imminent harmful or offensive contact; a battery is 'intentional wrongful physical contact with another person without consent.'"  *Sulkowska* v. *City of New York*, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001) (quoting *Lederman* v. *Adams*, 45 F. Supp. 2d 259, 268 (S.D.N.Y. 1999)).  Because Plaintiff has alleged actual physical contact, the Court finds that his allegations state a claim for battery against Denner and Jhala.  Plaintiff has not, however, set forth facts supporting that he was placed in imminent fear of offensive contact, which is fatal to his claim of assault.

As in the context of Plaintiff's hostile work environment claim, the Court does not see any basis to impute Denner's and Jhala's alleged conduct to their employers.  *See Rivera* v. *State*, 34 N.Y.3d 383, 389 (2019) ("Under the common-law doctrine of *respondeat superior*, an employer ... may be held vicariously liable for torts, including intentional torts, committed by employees *acting within the scope of their employment*" (emphasis added)).  Neither Denner nor Jhala is alleged to have held any supervisory role with the Corporate Defendants, and no factual allegations in the Amended Complaint permit the Court to infer even tacit approval for this alleged battery against Plaintiff.

Plaintiff's claim for battery survives only as to Denner and Jhala.  And for the reason set forth above, Plaintiff's assault claim is dismissed.[31]

---

[31]   The circumstances of Plaintiff's alleged altercation with Denner and Jhala also form the basis of Count 19 ("Injury/elevated injury") in the Amended Complaint.  The Court dismisses this count to the extent it is brought as a standalone claim.  Any injuries that

### 2.   Intentional Infliction of Emotional Distress

Plaintiff brings a claim for intentional infliction of emotional distress ("IIED") (Count 13), which the Court assesses together with the seemingly related claim of "extreme cruelty" (Count 20).  Plaintiff's primary theory underpinning his claim for IIED — propounded multiple times throughout the Amended Complaint — is that Defendants' failure to pay him forestalled his ability to purchase necessary medication, which in turn resulted in painful medical complications with his kidneys and bladder and caused him sleepless nights.  (*See* Am. Compl. ¶¶ 110, 114-115, 155, 167, 190).  Plaintiff also claims that his physical altercation with Denner and Jhala contributed to his injuries, although the extent of Plaintiff's harm attributable to this incident is unspecified.  The APN Defendants argue that Plaintiff's attempt to impute his health issues to the cessation of his services to Defendants cannot sustain an IIED claim under New York law, especially in the employment context where IIED is disfavored.  (APN Br. 18-19).  The Court agrees with Defendants and dismisses Plaintiff's IIED claims.

Under New York law, a claim for IIED has four elements: "[i] extreme and outrageous conduct; [ii] intent to cause, or disregard of a substantial probability of causing, severe emotional distress; [iii] a causal connection between the conduct and injury; and [iv] severe emotional distress."  *Howell* v.

---

Plaintiff sustained in connection with the battery are more appropriately considered as part of a damages assessment if liability for battery is ultimately established.

*N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993).  Plaintiff's claim fails on both the outrageousness prong and the intent prong of this test.

A plaintiff asserting IIED under New York law must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[.]" *Dillon* v. *City of New York*, 704 N.Y.S.2d 1, 7 (1st Dep't 1999).  "In New York, '[IIED] is a theory of recovery that is to be invoked only as a last resort,' when traditional tort remedies are unavailable." *Naccarato* v. *Scarselli*, 124 F. Supp. 2d 36, 44 (N.D.N.Y. 2000) (quoting *EEOC* v. *Die Fliedermaus*, 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999)).  And "some New York courts have determined that plaintiffs may not bring claims for IIED when the conduct and injuries alleged give rise to a statutory claim for workplace discrimination." *Cowan* v. *City of Mount Vernon*, 95 F. Supp. 3d 624, 657 (S.D.N.Y. 2015) (quoting *Turley* v. *ISG Lackawanna, Inc.*, 774 F.3d 140, 159-60 (2d Cir. 2014)).

None of Plaintiff's allegations meets the requisite level of outrageous behavior to make out an IEED claim, and Plaintiff's repeated conclusory assertions to the contrary do not make it so.  (*See* Am. Compl. ¶¶ 113, 115, 167).  Defendants' alleged failure to pay Plaintiff, while not condoned by the Court, is not the type of extreme conduct sufficient to give rise to the "highly disfavored tort" of IIED.  *Turley*, 774 F.3d at 158 (alterations omitted).  In addition, Plaintiff's allegation that he was never paid by his employer stands as one of the bases for his employment discrimination claims, further sapping the

rationale for upholding his IIED claim.  *See McIntyre* v. *Manhattan Ford, Lincoln-Mercury, Inc.*, 682 N.Y.S.2d 167, 169 (1st Dep't 1998) (finding "no reason to apply" IIED where damages for emotional distress were available under the NYCHRL).

The Court reaches a similar conclusion as to Plaintiff's IIED claims stemming from Denner's and Jhala's alleged violent interaction with Plaintiff. As previously mentioned, "IIED may be invoked only as a last resort." *Llerando-Phipps* v. *City of New York*, 390 F. Supp. 2d 372, 381 (S.D.N.Y. 2005) (internal quotation marks omitted).  And where "the conduct for the underlying claim may be redressed by way of traditional tort remedies such as battery, an IIED claim is duplicative and must be dismissed on that basis."  *J.H.* v. *City of Mount Vernon*, No. 18 Civ. 4399 (CS), 2019 WL 1639944, at *5 (S.D.N.Y. Apr. 15, 2019) (internal quotation marks omitted) (quoting *Druschke* v. *Banana Republic, Inc.*, 359 F. Supp. 2d 308, 315-16 (S.D.N.Y. 2005)).  Accordingly, Plaintiff's Counts 13 and 20, both of which assert IIED, are dismissed.

### 3.    Common Law Fraud

Plaintiff also brings a claim for fraud in Count 16, based on Defendants' alleged demand that he allocate a portion of his regular pay rate for a "manager's commission."  (Am. Compl. ¶¶ 104, 176).  The Court need not inquire into the details of this commission to dispose of Plaintiff's claim of fraud, because the Amended Complaint does not come close to meeting the heightened pleading standard necessary to state a fraud claim in federal court.

To state a claim for common law fraud under New York law, a plaintiff must allege facts showing: "[i] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [ii] made for the purpose of inducing the other party to rely upon it, [iii] justifiable reliance of the other party on the misrepresentation or material omission, and [iv] injury." *Premium Mortg. Corp.* v. *Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co.* v. *Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).  "In a federal ... action, such a claim must be pleaded with particularity" pursuant to Federal Rule of Civil Procedure 9(b).  *Premium Mortg. Corp.*, 583 F.3d at 108. Specifically, "the [claim] must: [i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent."  *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks and citations omitted).

Here, Plaintiff has pleaded none of these specifics, and therefore fails to satisfy the Rule 9(b) pleading standard for fraud.  Besides lacking specifics, such as who made this demand of Plaintiff or when it was made, Plaintiff has failed to plead facts setting forth the basic elements of a fraud claim.  Plaintiff's only allegation in support of his fraud claim is the summary assertion that Defendants' demand that he pay a manager's commission was somehow fraudulent.  Plaintiff fails to explain how this demand was materially misleading — as opposed to merely unwelcome, which is not a basis for fraud liability.  Furthermore, Plaintiff does not explain how he could have justifiably

relied on this purportedly fraudulent statement when he represents that he continually refused to pay the commission.  (*See* Am. Compl. ¶ 101).  For these failures, Plaintiff's Count 16 is dismissed in its entirety.

### 4.    Spoliation of Evidence

Count 31 of the Complaint asserts a freestanding cause of action for destruction of evidence, arising out of Defendants' threatened erasure of the contents of Plaintiff's work laptop.  (*See* Am. Compl. ¶ 223).  Plaintiff's only allegation in support of this claim is that Denner and Jhala "said that they should erase the evidences from the Macbook."  (*Id.*).  Plaintiff does not provide any specifics as to what pertinent materials may have been destroyed. Furthermore, as the CVS Defendants point out, New York does not recognize spoliation of evidence as an independent tort.  (CVS Br. 21-22 (citing *Ortega* v. *City of New York,* 9 N.Y.3d 69, 83 (2007))).  As such, Defendants' motions to dismiss Count 31 are granted.

### F.    The Court Grants Defendants' Motions to Dismiss Plaintiff's Criminal Law and Civil RICO Claims

Plaintiff attempts to plead claims for bribery and corruption (Count 17), attempted murder (Counts 21-22), torture (Count 23), and robbery (Count 26), all allegedly in violation of the same civil rights laws that the Court has previously discussed.  In particular, Plaintiff alleges that Defendants' demand for a manager's commission constitutes bribery (Am. Compl. ¶ 179); that his failure to receive pay amounted to an attempt by the Defendants to "slowly kill" him (*id.* at ¶¶ 193, 196); that the meeting room where he interacted with Denner and Jhala was a "torture room" (*id.* at ¶ 199); and that Denner and

Jhala robbed him of his iPhone, monitor cables, and USB hub (*id.* at ¶ 208). Plaintiff also invokes — without any explanation — the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, in 22 counts in the Complaint (*see* Counts 5, 8-9, 11, 13, 15-23, 25-29, 31-33).  None of these criminal or quasi-criminal claims survives Defendants' motions to dismiss.

### 1.    Plaintiff Lacks Standing to Bring Criminal Charges

Plaintiff's standalone claims of criminal misconduct are dismissed, as none of the laws cited by Plaintiff, including Title VII, the NYSHRL, or the NYCHRL, permits a private right of action for bribery, robbery, or attempted murder.  And even though Plaintiff does not cite any provision of the New York Penal Law, the New York State criminal laws that may appertain to these claims do not contain a private cause of action allowing for civil enforcement. *See* N.Y. Penal Law §§ 125.25 (murder); 160.05-160.15 (robbery); 180.03 (commercial bribery); *see also Cent. Bank of Denver* v. *First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994) (noting that private rights of action are not to be inferred from a "bare criminal statute"); *Smith* v. *N.Y.C. Police Dep't*, No. 06 Civ. 15436 (JSR), 2010 WL 2008839, at *1 (S.D.N.Y. May 17, 2010) (dismissing claims for reckless endangerment and attempted murder, "as these are criminal offenses for which an individual lacks a private right of action"); *Philip Morris, Inc.* v. *Grinnell Lithographic Co., Inc.*, 67 F. Supp. 2d 126, 140 (E.D.N.Y. 1999) ("[E]very federal court considering the issue has concluded that the commercial bribery sections of the [New York] Penal Law do not create a private

right of action").  Accordingly, the Court dismisses Counts 17, 21, 22, 23, and 26.

### 2. Plaintiff's Civil RICO Claims Fail

In Count 29, Plaintiff asserts a freestanding claim of civil conspiracy, which the Court construes as brought under RICO.[32]  As Plaintiff cites RICO in 22 counts, the Court consolidates all of Plaintiff's references to this statute and treats them as a single assertion of RICO's private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the RICO statute.  18 U.S.C. § 1964(c).

At the outset, the Court emphasizes that because the "mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation."  *Figueroa Ruiz* v. *Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).  Taking this directive, the Court dismisses Plaintiff's RICO claim for, among other reasons, failure to sufficiently plead a "pattern of racketeering activity."  The only provision of RICO even plausibly relevant to Plaintiff's case is Section 1962(c), which requires a plaintiff to plead "[i] conduct [ii] of an enterprise [iii] through a pattern [iv] of racketeering activity."  *Kim* v. *Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *DeFalco* v. *Bernas*, 244 F.3d 286, 305 (2d

---

[32]  Plaintiff also asserts several other inapplicable statutes in Count 29, including "NY-RICO."  The Court interprets this as denoting New York Penal Law § 460.20, which establishes the felony of enterprise corruption in New York.  However, as discussed above, Plaintiff lacks standing to seek liability under New York's enterprise liability law because "private individuals ... cannot bring a claim under state criminal law."  *Wilson* v. *Neighborhood Restore Dev.*, No. 18 Civ. 1172 (MKB), 2020 WL 9816020, at *5 (E.D.N.Y. Sept. 28, 2020).

Cir. 2001)).  For purposes of this analysis only, the Court assumes that Plaintiff has pleaded the existence of an "enterprise," which is broadly defined as including any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.  18 U.S.C. § 1961(4).

"To adequately plead a pattern of racketeering activity under [Section] 1962(c), a plaintiff must allege that a defendant committed two or more acts of racketeering activity."  *Calabrese* v. *CSC Holdings, Inc.*, 283 F. Supp. 2d 797, 807 (E.D.N.Y. 2003).  Racketeering activity is defined as any of the predicate acts specifically listed in 18 U.S.C. § 1961(1).[33]  Plaintiff's claims of bribery, attempted murder, and robbery allege potentially qualifying RICO predicates; the Court hastens to add, however, that certain of Plaintiff's theories, including his claims of bribery and attempted murder, seem so facially implausible as to run afoul of *Iqbal* and *Twombly*.

Even assuming that Plaintiff has plausibly alleged the commission of any RICO predicate, he has failed to allege a pattern of racketeering activity.  As the Supreme Court has explained, "[t]o establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity."  *H.J., Inc.* v. *Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).  This continuity requirement may be

---

[33]     The offenses that may serve as predicate acts for a RICO claim are listed exclusively in Section 1961.  18 U.S.C. § 1961(1).  Thus, insofar as Plaintiff seeks to frame as racketeering acts violations of Title VII or any other offense not enumerated in Section 1961, Plaintiff's claim necessarily fails the RICO predicate requirement.

satisfied by either an open-ended or closed-ended pattern of racketeering activities. *Id.* at 241. Plaintiff has alleged neither.

Closed-ended continuity describes a finite, pre-litigation period of repeated conduct over a time period of substantial duration. *H.J., Inc.*, 492 U.S. at 242. Predicate acts extending over only a few weeks or months do not satisfy the substantial duration element. *Id.* As it happens, Plaintiff's entire engagement with Defendants lasted only about two months, which is presumptively too short a timeframe to establish closed-ended continuity. *See GICC Cap. Corp.* v. *Tech. Fin. Grp.*, 67 F.3d 463, 467-68 (2d Cir. 1995) (collecting cases). More pointedly, Plaintiff's allegations that predicate acts were committed against him on one or more occasions over a span of at most two months is not sufficient to plead "that [the] defendants' activities were neither isolated nor sporadic." *GICC*, 67 F.3d at 467 (internal quotation marks omitted).

Plaintiff has also failed to plead open-ended continuity. "To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A.* v. *Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). Here, the nature of Plaintiff's allegations do not in any way suggest a threat of continued criminal activity. The thrust of Plaintiff's allegations is that he was singled out because of various protected characteristics, and to this point, Plaintiff includes a smattering of

antidiscrimination statutes in support of every alleged RICO predicate in the Amended Complaint.  (*See, e.g.*, Am. Compl. ¶¶ 180, 194, 209).  Plaintiff offers nothing to suggest that any Defendant intended to "slowly kill" someone else by failing to provide them with a paycheck, that any of the Defendants sought to kick or rob anyone else, or that any Defendant planned to solicit bribes from others in the future.  Setting to one side the substantive difficulties with his alleged RICO predicates, the Court concludes that Plaintiff's alleged predicate acts do not "amount to or pose a threat of continued criminal activity."  *H.J. Inc.*, 492 U.S. at 239.  And as a result of Plaintiff's failure to plead a pattern of racketeering activity, an essential element of his civil RICO claim, Count 29 and the portions of all other claims making reference to RICO are dismissed.

## G.   The Court Grants Defendants' Motions to Dismiss Plaintiff's Intellectual Property and Copyright Claims

Plaintiff's final count, Count 33, alleges a copyright violation, based on his failure to receive pay from any of the Defendants.  The Court dismisses this claim in short order, as Plaintiff has failed to set forth any facts suggesting that his work for Defendants is entitled to copyright protection.

As the CVS Defendants explain, Plaintiff has not rebutted the presumption that his work for Defendants was within the scope of his employment, and that as such, the copyright for such work belonged to Defendants.  (CVS Br. 23).  *See Martha Graham Sch. & Dance Found., Inc.* v. *Martha Graham Ctr. of Contemp. Dance, Inc.*, 380 F.3d 624, 636 (2d Cir. 2004) ("[A] person's status as an employee renders a work created within the scope of employment as a work for hire, as to which the copyright belongs to the

employer[.]").  Indeed, Plaintiff has not actually specified which, if any, of his work is allegedly entitled to copyright protection.  Furthermore, Plaintiff's references to violations of his intellectual property rights are all made in the context of work for which he claims to have been uncompensated (*see* Am. Compl. ¶¶ 38, 112, 229), which strikes the Court as a reiteration of his wage and hour claims.  Because Plaintiff has failed to allege a plausible violation of any of his intellectual property rights, the Court grants Defendants' motions to dismiss Count 33 of the Complaint.

## H.   The Court Will Not Grant Plaintiff Leave to Replead

Federal Rule of Civil Procedure 15(a)(2) instructs that a court "should freely grant leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The decision to grant or deny leave to amend is soundly within the discretion of the district court.  And "it remains 'proper to deny leave to replead where … amendment would be futile.'"  *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014).

The Court declines to grant Plaintiff leave to amend.  Plaintiff has already been afforded an opportunity to amend his pleadings, after initially submitting a fifty-eight-page complaint that contained forty-two additional pages of exhibits.  Plaintiff has had the additional benefit of multiple rounds of pre-motion letters from Defendants, as well as a conference with the Court to discuss the theory of his case.  Despite these opportunities, and despite the leeway the Court has given him in construing his claims in the most generous light possible, there remain fundamental deficiencies in most of Plaintiffs'

claims.  The Court is confident that further amendment would not permit Plaintiff to remedy those deficiencies.  Accordingly, the Court denies Plaintiff leave to amend.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART.  Plaintiff has asserted numerous claims against the six Defendants named in this suit.  Given Plaintiff's disjointed approach to his pleading, the Court wishes to clarify which of Plaintiff's claims survive and against which Defendants.  For the benefit of the parties, the Court provides the below summary of its disposition of Plaintiff's claims on the motions to dismiss.[34]

Plaintiff has adequately stated the following claims:

- Race Discrimination (Title VII): against CVS, Aetna, AHM, and APN, related to the circumstances of Plaintiff's termination and failure to receive pay;

- Race Discrimination (Section 1981): against CVS, Aetna, AHM, APN, Kalyani, Neela, and Vedant, related to the circumstances of Plaintiff's termination and failure to receive pay;

- Race Discrimination (NYSHRL and NYCHRL): against CVS, Aetna, AHM, APN, Kalyani, Neela, and Vedant, related to the circumstances of Plaintiff's termination and failure to receive pay;

- Age Discrimination (NYCHRL): against CVS, Aetna, AHM, and APN, related to the circumstances of Plaintiff's termination;

---

[34]    The APN Defendants request leave to file supplemental briefing on Plaintiff's claims that survive their motion to dismiss.  (APN Br. 5 n.3).  While the Court recognizes the difficulty posed by Plaintiff's approach to his pleading, the Court does not think that it or the parties would benefit from additional motion practice on Plaintiff's surviving claims.  The Court has carefully scrutinized Plaintiff's claims and has endeavored to pinpoint those that pass legal muster under applicable law.  The APN Defendants' request for leave to file supplemental briefing is denied.

- Failure to Accommodate Disability (ADA, NYSHRL, and NYCHRL): against CVS, Aetna, AHM, and APN, related to Plaintiff's request to move his desk away from falling dust;

- Hostile Work Environment (NYCHRL): against CVS, Aetna, AHM, APN, Kalyani, Neela, and Vedant, related to Plaintiff's claim of inferior workplace treatment due to his race;

- Minimum Wage and Timely Payment (FLSA and NYLL): against CVS, Aetna, AHM, and APN, related to the circumstances of Plaintiff's failure to receive pay; and

- Common law battery: against Denner and Jhala for the alleged physical altercation on August 26, 2019.

All of Plaintiff's remaining claims are hereby dismissed. These include: (i) all claims asserting discrimination on the basis of religion, gender, and U.S. citizenship; (ii) claims for hostile work environment brought under federal and state law; (iii) claims for retaliation brought under federal, state, and city law; (iv) claims for unpaid overtime and unpaid expenses; (v) common-law tort claims of IIED, fraud, and spoliation of evidence; (vi) claims for a violation of any copyright or intellectual property rights; and (vii) Plaintiff's RICO claim and criminal law claims, including his claims for bribery, attempted murder, and robbery.

The parties are hereby ordered to appear for a conference on **November 30, 2021**, **at 10:00 a.m.**, in Courtroom 618 of the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, New York 10007, to discuss a case management plan, the scope of discovery on Plaintiff's surviving claims, and the possibility of appointing for Plaintiff limited purpose counsel for discovery.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is ordered to terminate the pending motions at docket entries 37 and 42.  The Clerk of Court is further directed to amend the caption of this case to conform with the caption of this Opinion.

SO ORDERED.

Dated:      September 23, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge