LbuWkarC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   PALANI KARUPAIYAN,

4              Plaintiff,

5         v.                          19 Civ. 8814 (KPF)

6   CVS HEALTH CORPORATION,
    *et al.*,
7
             Defendants.
8                                     Conference
    ------------------------------x
9                                     New York, N.Y.
                                      November 30, 2021
10                                    10:15 a.m.

11  Before:

12              HON. KATHERINE POLK FAILLA,

13                                    District Judge

14                        APPEARANCES

15  PALANI KARUPAIYAN, Plaintiff *Pro Se*

16
    LITTLER MENDELSON, P.C.
17       Attorneys for Defendants
         CVS, Aetna, ActiveHealth, Bellamkonda, and Denner
18  BY:  MARCY A. GILROY

19
    JACKSON LEWIS P.C.
20       Attorneys for Defendants
         APN, Vedant Pathak, Neela Pathak, and Jhala
21  BY:  JASON A. ZOLDESSY

22

23

24

25

LbuWkarC

1          (Case called; appearances noted)

2          THE COURT:  Good morning, everyone.  Thank you very

3    much.  Please be seated.

4          Mr. Zoldessy, can I ask you, please, to get a

5    transcript of this conference in the ordinary course and send

6    it to Mr. Karupaiyan by whatever means you've been using to

7    communicate with him just so he has a record of the conference.

8          MR. ZOLDESSY:  No problem, your Honor.

9          THE COURT:  Thank you very much.

10         All right.  This is a conference to talk about

11    discovery in this case.

12         Mr. Karupaiyan, let me begin by asking whether you

13    have reviewed my opinion in this case resolving the defendants'

14    motions to dismiss.

15         MR. KARUPAIYAN:  I read it, Judge, but I'm personally

16    not able to understand much.  I can read it one more time, but

17    understand I need to read many times to understand.  I'm not a

18    legal person.

19         THE COURT:  Of course.  The significant thing is that

20    certain of your claims remain and they go forward and certain

21    of your claims have been dismissed.

22         MR. KARUPAIYAN:  OK.

23         THE COURT:  My question to you today, sir, is the

24    following:  When I use the term "discovery," do you know what

25    I'm talking about?

LbuWkarC

1          MR. KARUPAIYAN:  I know discover, they --

2          THE COURT:  Let me tell you what I mean.  What I have

3     done so far is to decide which of your claims go forward to

4     discovery, and the idea of discovery is that you share the

5     documents and materials that you have in your possession that

6     support the claims that remain in this case, and I ask the

7     defendants to share the evidence that they have that relates to

8     the claims in the case.  And then in theory, sometimes that

9     will be sharing documents.  It may be asking each other

10    questions about certain events, and it may be depositions.  And

11    depositions -- I don't know if you're familiar with those, sir.

12         MR. KARUPAIYAN:  I ask cross-questions.

13         THE COURT:  I beg your pardon.

14         MR. KARUPAIYAN:  Ask the cross-questions.

15    Cross-questions.

16         THE COURT:  You ask questions, correct.  You ask

17    questions under oath.

18         Now, sir, at this time, you're proceeding *pro se*.

19         MR. KARUPAIYAN:  Yes.

20         THE COURT:  In some instances, I have been able to

21    obtain what's called limited-purpose counsel.  I have been able

22    to obtain attorneys to assist with discovery.  They don't take

23    on the whole case, but they take on a limited purpose, and

24    sometimes that limited purpose is discovery.  Sometimes that

25    limited purpose is depositions.

LbuWkarC

1          MR. KARUPAIYAN:  Depositions.

2          THE COURT:  Do you want me to ask the people in this

3     court complex who handle such things --

4          MR. KARUPAIYAN:  Yes.  Yes, I need attorney.

5          THE COURT:  OK.  Sir, you need to let me finish my

6     question, and then I'll let you answer.

7          If you want me to, I will ask the *pro se* litigation

8     unit if there is someone who could be made available for

9     discovery purposes.  Is that something that you want, sir?

10         MR. KARUPAIYAN:  Yes, ma'am, please, find a *pro se*

11    attorney.

12         THE COURT:  The reason to do that is because I want to

13    make sure that you know what you can and cannot receive in

14    discovery.

15         Now, let me ask a different question, sir.

16         Before this conference today, at any time before this

17    conference today, have you and the folks at the back table

18    discussed the possibility of settling this case?

19         MR. KARUPAIYAN:  I did not do it, but I can send a

20    letter to them.  I will send a letter today, so we can settle

21    it.

22         THE COURT:  You're saying you could send them a letter

23    to discuss it.

24         MR. KARUPAIYAN:  Yes.

25         THE COURT:  I won't make you do that.  I'm asking you.

LbuWkarC

1  Are you interested in trying to settle the case, or would you

2  rather to proceed to discovery?

3          MR. KARUPAIYAN:  Sure, ma'am.

4          THE COURT:  Which is the "sure"?  Excuse me.

5          MR. KARUPAIYAN:  Settle the case if (inaudible).

6          THE COURT:  If it's possible.  OK.  Just one moment,

7  because in this courtroom, at least, I don't force people into

8  settlement conferences, so if other folks do not want to

9  settle, I'm not going to make them do that.

10          Mr. Zoldessy, does your client have a view?  May I ask

11  what your clients' view is if you're willing to share.

12          MR. ZOLDESSY:  Sure.  I mean, your Honor, my clients

13  would be amenable to either a court mediation or a settlement

14  conference with the court.

15          THE COURT:  And sir, have you in any of your dealings

16  with Mr. Karupaiyan broached the topic of settlement?

17          MR. ZOLDESSY:  We have not, your Honor, other than I

18  know that there was a -- I think there was a number of -- in

19  our initial premotion conference with your Honor --

20          THE COURT:  Yes.

21          MR. ZOLDESSY:  There might have been a brief

22  discussion about it.  Other than that, we have had no

23  communications with Mr. Karupaiyan about a demand or

24  settlement.

25          THE COURT:  OK.  Thank you very much.

LbuWkarC

1    Ms. Gilroy, may I have your opinion as well, please,
2  or your clients' opinion on settlement.
3    MS. GILROY:  Yes, your Honor.
4    I think my client would be more than amenable to a
5  settlement conference with the Court or some form of mediation.
6    THE COURT:  OK.
7    MS. GILROY:  But it hasn't been a topic I have
8  broached with Mr. Karupaiyan.
9    THE COURT:  Of course.
10    Mr. Karupaiyan, if you agree, let me do this.
11    MR. KARUPAIYAN:  Yes.
12    THE COURT:  I'd like to speak with our *pro se*
13  litigation unit about the possibility of appointing you a
14  limited-purpose attorney who could assist with a settlement
15  conference, if there were a settlement conference, and could
16  assist with discovery if the settlement conference doesn't work
17  out.
18    MR. KARUPAIYAN:  Sure, ma'am.
19    THE COURT:  OK.  And I think I'd like to do that --
20    Now, Mr. Karupaiyan, let me explain to you something.
21  There are often points in a litigation, yes, stages in a
22  litigation where it makes sense to talk about settlement.  When
23  a case is first filed, sometimes right then and there, it makes
24  sense to talk about settlement.  When a case has gone through a
25  round of motion practice, as this one just did, it can make

LbuWkarC

1    sense to talk about settlement, because the parties understand

2    what claims are going forward.  After another round of motion

3    practice, it can also make sense.  Maybe before trial, it can

4    make sense, and all of this is because the parties are looking

5    at what lies ahead, and it may be easier for you and for the

6    folks at the back table to talk about resolving the case rather

7    than engaging in discovery.  So I will talk to the *pro se* folks

8    about that, and if there is a person, they will let me know.

9            It may be that it takes a little bit of time because

10   of the holidays and the new year and the pandemic to find an

11   attorney, so I'm going to ask for everyone's patience in that

12   regard.  Please know that I am working towards a resolution of

13   that issue.  And if it turns out that there's no one available,

14   I will let you know and we'll move on from there.  But what you

15   should expect to see from me in the coming days is an order

16   that says something about all of this.  It will either be an

17   order requesting the appointment of limited-purpose counsel, or

18   it will be an order referring the case to either the court's

19   mediation program or to the magistrate judge assigned to the

20   case.  And please excuse me while I look that up.

21           Debra Freeman is listed as the magistrate judge.  I

22   know she's leaving in the coming months, so let me make sure

23   she's still around before we do anything.  And so just please

24   be attuned to the orders that I issue, because that will govern

25   where we go going forward.  I'm not going to set up a schedule

LbuWkarC

1  for discovery just yet.  If we are going to discovery, I do

2  think it's probably going to take a little bit longer than

3  other discovery in the ordinary cases that I have.  But I also

4  want to make sure that everybody's aware of what I am and not

5  allowing discovery into.

6          Mr. Karupaiyan, earlier in this case, when you, at

7  sort of the beginning of the case, did you receive from me a

8  pamphlet regarding discovery?

9          MR. KARUPAIYAN:  No, Judge, I didn't.  I would like to

10  get a copy.

11          THE COURT:  OK.  One moment, please.  Let me see if I

12  can't reprint that.

13          MR. KARUPAIYAN:  If you could --

14          THE COURT:  I am printing one, sir.

15          Also, Mr. Karupaiyan, in the past you've listed as an

16  address of record a post office box in Morrisville.

17          MR. KARUPAIYAN:  That's closed.  I need to open

18  another one, and I'll get it.

19          THE COURT:  So that's not the right one.  OK.  So

20  Morrisville post office box is no longer valid.

21          MR. KARUPAIYAN:  I do not have apartment.  I don't

22  have a job.  I have no income.  I live here and there, at

23  friends' places.  So it's not permanent place.  If address is

24  needed, I can go back and open another postal box (inaudible).

25          THE COURT:  Well, how else can I get in touch with

1    you, sir?

2          MR. KARUPAIYAN:  That's (inaudible) eligible, and I

3    can call the old one and get the more information.

4          Email is another way now.

5          THE COURT:  Email's another way.  I think, for now, we

6    should use that.  Would you please give to my deputy, at the

7    end of this conference, your email address.

8          MR. KARUPAIYAN:  I will, and also I find an email on

9    some form, that they can use to notify through the Gmail.

10         THE COURT:  All right.  Yes, it's a Gmail address.

11         MR. KARUPAIYAN:  Yes.

12         THE COURT:  Right, sir?

13         MR. KARUPAIYAN:  Yes.

14         THE COURT:  All right.  So that is still valid.

15         OK.  And the phone number, (212) 470- --

16         MR. KARUPAIYAN:  That's correct.

17         THE COURT:  That's still good?

18         MR. KARUPAIYAN:  That's correct.

19         THE COURT:  OK.  It's just the P.O. Box that is no

20   longer valid.

21         MR. KARUPAIYAN:  No.

22         THE COURT:  OK.  So we know, for now at least, we

23   should be sending you things by email, but please let us know

24   when you do have another mailing address, because we would like

25   to get that to you.  OK.

LbuWkarC

1          All right.  Mr. Karupaiyan, while we're together, is

2     there anything else you'd like to bring to my attention in this

3     conference?

4          MR. KARUPAIYAN:  (inaudible) that I can take the code,

5     release the code, if they are going to -- laptop, previous

6     computer that I use, I can -- if they provided me, I can take

7     the release code, I'm pretty sure that I can use the code.

8          THE COURT:  I'm sorry.  I apologize.  I'm not

9     understanding everything that you're saying.

10          MR. KARUPAIYAN:  I use the computer.  After computer

11     come back to the CVS --

12          THE COURT:  Yes.

13          MR. KARUPAIYAN:  -- that have the code, the programs,

14     I wrote it.  Those are very generic, and they're releasable.

15          THE COURT:  I see.  And is it that CVS has now the

16     computer on which you wrote those programs?

17          MR. KARUPAIYAN:  Yes, they took it from me, and then

18     also they said they would (inaudible).  I do not know what they

19     did, but --

20          THE COURT:  I see.  OK.  All right.

21          Ms. Gilroy, do you wish to speak to the issue?  Do you

22     know anything about a laptop computer that was given to

23     Mr. Karupaiyan and then taken from him?

24          MS. GILROY:  Certainly, your Honor.

25          During the scope of Mr. Karupaiyan's assignment to

LbuWkarC

1  CVS, he was obviously given a laptop computer to use for his

2  work.  That computer was, of course, returned to CVS when his

3  assignment ended.

4          THE COURT:  Was it wiped?

5          MS. GILROY:  It was not Mr. Karupaiyan's computer.

6          THE COURT:  I did not think that it was.

7          MS. GILROY:  Yes.

8          THE COURT:  But I guess my question was in some cases

9  I have, the computer has remained intact as of the date it was

10 retrieved by the company because it is the subject of

11 litigation.  In other cases, it ends up being wiped or

12 overwritten in the ordinary course.

13         MS. GILROY:  My understanding is it was overwritten in

14 the ordinary course, your Honor.

15         THE COURT:  I see.  OK.  Are you able to identify work

16 that Mr. Karupaiyan has done as distinguished from work that

17 other people have done because it's somehow saved under his

18 name or in any way identified as his?

19         MS. GILROY:  In terms of code that he would have

20 written during the scope of his assignment?

21         THE COURT:  Exactly.

22         MS. GILROY:  I have not posed that question to my

23 client.  Therefore, I don't have a definitive answer for that.

24 My best guess would be no.

25         THE COURT:  OK.

LbuWkarC

1          MS. GILROY:  But that's purely a guess, your Honor.

2          THE COURT:  Of course I understand that.  Thank you.

3          All right.  Mr. Zoldessy, anything else we should be

4     addressing today, your Honor?

5          MR. ZOLDESSY:  Nothing, your Honor.  Thank you.

6          THE COURT:  OK.  Thank you.

7          And Ms. Gilroy, anything else?

8          MS. GILROY:  Not at this time, your Honor.

9          THE COURT:  All right.  Thank you all very much for

10    coming in, and please stay safe.  I'll be working with the *pro*

11    *se* office to see about limited-purpose counsel.

12          Thank you very much.

13          (Adjourned)