UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PALANI KARUPAIYAN,

Plaintiff,

-v-

CVS HEALTH CORPORATION; AETNA; ACTIVEHEALTH MANAGAMENT; KALYANI LAKSHMI BELLAMKONDA; ROBERT DENNER; APN CONSULTING INC.; VEDANT PATHAK; NEELA PATHAK; PURVI JHALA,

Defendant.

---

19-CV-08814 (JAV)

ORDER

JEANNETTE A. VARGAS, United States District Judge:

Attached to this Order are Court Exhibits 1, 1 (Final), 2, 3, 3A, and 4; the Court's proposed verdict form, sent to counsel and discussed at the charging conference; and the note sent by the jury to the Court during deliberations (Court Exhibit 5).

SO ORDERED.

Dated: July 6, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PALANI KARUPAIYAN,

Plaintiff,

-v-

CVS HEALTH CORPORATION; AETNA; ACTIVEHEALTH MANAGAMENT; KALYANI LAKSHMI BELLAMKONDA; ROBERT DENNER; APN CONSULTING INC.; VEDANT PATHAK; NEELA PATHAK; PURVI JHAL,

Defendants.

19-CV-08814 (JAV)

VOIR DIRE QUESTIONNAIRE

## I. QUESTIONS FOR ALL PROSPECTIVE JURORS

1. This trial is expected to last until approximately Wednesday, May 20, 2026. Do you have any commitments that would interfere with your serving as a juror at a trial that is expected to end on or before May 20?

2. Do you have difficulty speaking, reading, or understanding English?

3. Do you have a disability or physical issue that would make it difficult for you to sit as a juror in this case, such as hearing loss or a vision problem?

4. Are you taking any medication, or do you have any medical condition, that would prevent you from giving full attention to all of the evidence at this trial?

5. Is there any other reason why serving on this jury would pose an extreme hardship for you?

6. A few minutes ago, I read you a description of this case. Do you have personal knowledge of the allegations in this case as I have described them to you?

7. Have you read or heard anything about this case through the media, the Internet, or any other source?

8. Is there anything about the nature of this case that would cause you to be unable to render a fair and impartial verdict?

9. As I mentioned earlier, the plaintiff in this case is Palani Karupaiyan. Do you personally know Mr. Karupaiyan?

10. Have you ever heard of Palani Karupaiyan before today?

11. The plaintiff is represented at trial by attorneys Olga Fuentes-Skinner, Samuel Bieler, Colleen Piasentin of the law firm, Glenn Agre Bergman & Fuentes LLP. Do you personally know any of them, or have you had any dealings with that law firm?

12. Two of the defendants in this case are corporations, Aetna, Inc., Active Health Management, Inc. Have you, or anyone close to you, ever been employed by, or ever had personal dealings with, Aetna, Inc. or Active Health Management, Inc.?

13. There are also three individual defendants: Lakshmi Kalyani Bellamkonda, Robert Denner or Purvi Jhala. Do you personally know

Lakshmi Kalyani Bellamkonda, Robert Denner or Purvi Jhala? Have you heard of any of the defendants before today?

14. Defendants Aetna, Inc., Active Health Management, Inc., Lakshmi Kalyani Bellamkonda, and Robert Denner are represented at trial by attorneys Peter Prynkiewicz and Marcy A. Gilroy of the law firm, Littler Mendelson P.C. Defendant Purvi Jhala is represented at trial by attorney Jason A. Zoldessy of the law firm Jackson Lewis P.C. Do you personally know any of these attorneys, or have you had any dealings with either of those law firms?

15. Do you, or anyone close to you, know me, my deputy, Nicole Molinelli, or my law clerk, Rachel Talamo?

16. Do you know any of the other jurors here today?

17. I am now going to read a list of other names of people that may be mentioned during the trial. Please listen carefully to the list of names.

    Kannaky Radha Krishna

    Fred Sinyak

    John Sutter

    Sandeep Ardhapurkar

    Anthony George

    Ken Hein

Shiv Bedasie

Rajesh Kandlikar

Tanu Vats

Vanisree Pamganamamula

Dimitry Nemchynovich

Deinde Dawodu

Juan Rodriguez

Lawrence Freeman

Umar Mohamad

Vedant Pathak

Neela Pathak

Purvi Jhala

Dhruv Dayal

Megha Narula

18. Have you had any dealings—personal or business—with any of these people?

19. I am now going to read a list of entities that may be mentioned during the trial. Please listen carefully to the list of names.

CVS Health Corporation

APN Consulting, Inc.

Karupaiyan Consulting, Inc.

20. Have you or a close family member ever been employed at any of these companies? Have you had any business dealings with these companies?

21. Do you have any bias against Aetna, Inc. because it is an insurance company?

22. Are you predisposed to feel sympathetic to or allied with persons who bring claims against large corporations and/or insurance companies?

23. Do you believe that Mr. Karupaiyan should be compensated in some way simply because he filed a lawsuit and made claims against Defendants?

24. Would you be less likely to believe an employee because he chose to file a lawsuit or chose to sue his employer instead of resolving the dispute with his employer?

25. Do you believe that an important function of juries in America is to send messages to corporations to improve or correct their behavior?

26. This case involves allegations of employment discrimination on the basis of race. Is there anything about such allegations that would prevent you from evaluating the evidence fairly and impartially?

27. Would you have any difficulty believing that an individual can discriminate against someone of the same race?

28. Has anything happened in your background that predisposes you to believe or accept that an allegation of racism is more likely true than not true?

29. Have you or anyone close to you had an experience with respect to race discrimination or employment discrimination that would make it difficult to be fair and impartial to both sides in this case and to decide this case based solely on the evidence you see and hear in this Courtroom?

30. Have you or someone close to you ever been accused of discrimination, harassment, or retaliation in the workplace?

31. Have you ever filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), or a similar state agency, related to your employment?

32. This is a civil case. Civil cases are decided by a standard of proof known as "preponderance of the evidence." The burden of proof is on the plaintiff. This is different from a criminal case, where the standard of proof is "beyond a reasonable doubt." The burden of proof is on the plaintiff. Is there any reason why you would be unwilling to accept or follow this rule of law?

33. During trial, you will hear testimony from witnesses with all sorts of backgrounds. You must judge the credibility of each one based on his or

her own testimony, not on any assumptions about them based on who they are or what they do. Is there any reason why you would be unwilling to accept or follow this rule of law?

34. The role of the jury is to decide the facts. I, as the Judge, do not play any role in your determination of the facts. What I will do is instruct you on the law. You will apply the facts as you find them to the law that I instruct you on, and your conclusion will be your verdict. You must apply the law as I instructed, regardless of your personal opinion as to what the law is or should be. Do you have any doubt that you will be able to apply the law as I explain it, even if you disagree with the law or believe it should be different?

35. In reaching a verdict, you are to wait until all the evidence has been presented and I have instructed you as to the law to be applied, before you make up your mind about any fact or issue in the case. Is there any reason why you would be unwilling to accept or follow this rule of law?

36. You must decide this case without being influenced by your personal feelings about the parties. You must return a verdict on the facts and the law, putting sympathy aside. Is there any reason why you would be unwilling to accept or follow this rule of law?

37. Do you have any religious or ethical beliefs that would prevent you from passing judgment on another person or entity?

38. Have you, or has anyone close to you, ever studied or practiced law or worked in any capacity for a law office?

39. Have you, or has anyone close to you, ever participated in a lawsuit, whether as a plaintiff, a defendant, or a witness?

40. Have you ever served as a juror in any court?

41. I don't know if this case will generate any publicity, but if it does, would you have any trouble accepting the proposition that you should absolutely avoid reading about this case in the newspapers, or reading or listening to any online reports or other media reporting concerning this case, until after it is over?

42. Would you be able and willing to follow the Court's instruction that you are not to research anything related to this case online using a search engine or artificial intelligence?

43. Would you be unable or unwilling to follow the Court's instruction that you are not permitted to discuss the case in any manner whatsoever, including by posting something online or on social media (such as Facebook, Instagram, TikTok, Reddit, YouTube, X, blogs, etc.)?

44. As you can tell from my prior questions, the fundamental issue here is whether there is anything in your personal history or life experience that would prevent you from acting as a fair and impartial juror. So, let me ask you one final time, is there anything—whether I have asked specifically about it or not—that would affect your ability to render a fair and impartial verdict in this case?

## II. QUESTIONS FOR INDIVIDUAL PROSPECTIVE JURORS

1. How long have you lived in this country? Have you lived in any other country?
2. Where in New York do you live?
3. How do you commute?
4. What is the highest level of school that you completed?
5. Over the last five years, what has been your occupation? What is the name and general location of your present employer and the period of time during which you have worked for this employer? What is the nature of your work for this employer? If you are retired, what is your former occupation?
6. Do you now, or have you ever supervised people?
7. Have you had to discipline an employee?
8. Have you ever been demoted, laid off, or terminated from a job?

9. Who are the members of your household? What do they do for a living?

10. Do you have adult children living outside your home? What do they do for a living?

11. Have you ever served in the military? If so, which branch, and when?

12. What do you do in your spare time?

13. What music do you listen to?

14. Are you a member of any organizations or clubs?

15. Please name a famous person you admire and briefly say why.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

PALANI KARUPAIYAN,

Plaintiff,

-v-

CVS HEALTH CORPORATION; AETNA; ACTIVEHEALTH MANAGAMENT; KALYANI LAKSHMI BELLAMKONDA; ROBERT DENNER; APN CONSULTING INC.; VEDANT PATHAK; NEELA PATHAK; PURVI JHAL,

Defendants.

---------------------------------------------------------------------X

19-CV-08814 (JAV)

VOIR DIRE QUESTIONNAIRE

## I. QUESTIONS FOR ALL PROSPECTIVE JURORS

1. This trial is expected to last until approximately Wednesday, May 20, 2026. Do you have any commitments that would interfere with your serving as a juror at a trial that is expected to end on or before May 20?

2. Do you have difficulty speaking, reading, or understanding English?

3. Do you have a disability or physical issue that would make it difficult for you to sit as a juror in this case, such as hearing loss or a vision problem?

4. Are you taking any medication, or do you have any medical condition, that would prevent you from giving full attention to all of the evidence at this trial?

5. Is there any other reason why serving on this jury would pose an extreme hardship for you?

6. A few minutes ago, I read you a description of this case. Do you have personal knowledge of the allegations in this case as I have described them to you?

7. Have you read or heard anything about this case through the media, the Internet, or any other source?

8. Is there anything about the nature of this case that would cause you to be unable to render a fair and impartial verdict?

9. As I mentioned earlier, the plaintiff in this case is Palani Karupaiyan. Do you personally know Mr. Karupaiyan?

10. Have you ever heard of Palani Karupaiyan before today?

11. The plaintiff is represented at trial by attorneys Olga Fuentes-Skinner, Samuel Bieler, Colleen Piasentin of the law firm, Glenn Agre Bergman & Fuentes LLP. Do you personally know any of them, or have you had any dealings with that law firm?

12. Two of the defendants in this case are corporations, Aetna, Inc., Active Health Management, Inc. Have you, or anyone close to you, ever been employed by, or ever had personal dealings with, Aetna, Inc. or Active Health Management, Inc.?

13. There are also three individual defendants: Lakshmi Kalyani Bellamkonda, Robert Denner or Purvi Jhala. Do you personally know

Lakshmi Kalyani Bellamkonda, Robert Denner or Purvi Jhala? Have you heard of any of the defendants before today?

14. Defendants Aetna, Inc., Active Health Management, Inc., Lakshmi Kalyani Bellamkonda, and Robert Denner are represented at trial by attorneys Peter Prynkiewicz and Marcy A. Gilroy of the law firm, Littler Mendelson P.C. Defendant Purvi Jhala is represented at trial by attorney Jason A. Zoldessy of the law firm Jackson Lewis P.C. Do you personally know any of these attorneys, or have you had any dealings with either of those law firms?

15. Do you, or anyone close to you, know me, my deputy, Nicole Molinelli, or my law clerk, Rachel Talamo?

16. Do you know any of the other jurors here today?

17. I am now going to read a list of other names of people that may be mentioned during the trial. Please listen carefully to the list of names.

Kannaky Radha Krishna

Fred Sinyak

John Sutter

Sandeep Ardhapurkar

Anthony George

Ken Hein

Shiv Bedasie

Rajesh Kandlikar

Tanu Vats

Vanisree Pamganamamula

Dimitry Nemchynovich

Deinde Dawodu

Juan Rodriguez

Lawrence Freeman

Umar Mohamad

Vedant Pathak

Neela Pathak

Purvi Jhala

Dhruv Dayal

Megha Narula

18. Have you had any dealings—personal or business—with any of these people?

19. I am now going to read a list of entities that may be mentioned during the trial. Please listen carefully to the list of names.

CVS Health Corporation

APN Consulting, Inc.

Karupaiyan Consulting, Inc.

20. Have you or a close family member ever been employed at any of these companies? Have you had any business dealings with these companies?

21. Have you ever worked as an independent contractor?

22. Have you ever hired an independent contractor?

23. Do you have any bias against Aetna, Inc. because it is an insurance company?

24. Are you predisposed to feel sympathetic to or allied with persons who bring claims against large corporations and/or insurance companies?

25. Do you believe that Mr. Karupaiyan should be compensated in some way simply because he filed a lawsuit and made claims against Defendants?

26. Would you be less likely to believe an employee because he chose to file a lawsuit or chose to sue his employer instead of resolving the dispute with his employer?

27. Do you believe that an important function of juries in America is to send messages to corporations to improve or correct their behavior?

28. This case involves allegations of employment discrimination on the basis of race. Is there anything about such allegations that would prevent you from evaluating the evidence fairly and impartially?

29. Would you have any difficulty believing that an individual can discriminate against someone of the same race?

30. Has anything happened in your background that predisposes you to believe or accept that an allegation of racism is more likely true than not true?

31. Have you or anyone close to you had an experience with respect to race discrimination or employment discrimination that would make it difficult to be fair and impartial to both sides in this case and to decide this case based solely on the evidence you see and hear in this Courtroom?

32. Have you or someone close to you ever been accused of discrimination, harassment, or retaliation in the workplace?

33. Have you ever filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), or a similar state agency, related to your employment?

34. This is a civil case. Civil cases are decided by a standard of proof known as "preponderance of the evidence." The burden of proof is on the plaintiff. This is different from a criminal case, where the standard of proof is "beyond a reasonable doubt." The burden of proof is on the plaintiff. Is there any reason why you would be unwilling to accept or follow this rule of law?

35. During trial, you will hear testimony from witnesses with all sorts of backgrounds. You must judge the credibility of each one based on his or her own testimony, not on any assumptions about them based on who they are or what they do. Is there any reason why you would be unwilling to accept or follow this rule of law?

36. The role of the jury is to decide the facts. I, as the Judge, do not play any role in your determination of the facts. What I will do is instruct you on the law. You will apply the facts as you find them to the law that I instruct you on, and your conclusion will be your verdict. You must apply the law as I instructed, regardless of your personal opinion as to what the law is or should be. Do you have any doubt that you will be able to apply the law as I explain it, even if you disagree with the law or believe it should be different?

37. In reaching a verdict, you are to wait until all the evidence has been presented and I have instructed you as to the law to be applied, before you make up your mind about any fact or issue in the case. Is there any reason why you would be unwilling to accept or follow this rule of law?

38. You must decide this case without being influenced by your personal feelings about the parties. You must return a verdict on the facts and the

law, putting sympathy aside. Is there any reason why you would be unwilling to accept or follow this rule of law?

39. Do you have any religious or ethical beliefs that would prevent you from passing judgment on another person or entity?

40. Have you, or has anyone close to you, ever studied or practiced law or worked in any capacity for a law office?

41. Have you, or has anyone close to you, ever participated in a lawsuit, whether as a plaintiff, a defendant, or a witness?

42. Have you ever served as a juror in any court?

43. I don't know if this case will generate any publicity, but if it does, would you have any trouble accepting the proposition that you should absolutely avoid reading about this case in the newspapers, or reading or listening to any online reports or other media reporting concerning this case, until after it is over?

44. Would you be able and willing to follow the Court's instruction that you are not to research anything related to this case online using a search engine or artificial intelligence?

45. Would you be unable or unwilling to follow the Court's instruction that you are not permitted to discuss the case in any manner whatsoever,

including by posting something online or on social media (such as Facebook, Instagram, TikTok, Reddit, YouTube, X, blogs, etc.)?

46. As you can tell from my prior questions, the fundamental issue here is whether there is anything in your personal history or life experience that would prevent you from acting as a fair and impartial juror. So, let me ask you one final time, is there anything—whether I have asked specifically about it or not—that would affect your ability to render a fair and impartial verdict in this case?

## II. QUESTIONS FOR INDIVIDUAL PROSPECTIVE JURORS

1. How long have you lived in this country? Have you lived in any other country?

2. Where in New York do you live?

3. How do you commute?

4. What is the highest level of school that you completed?

5. Over the last five years, what has been your occupation? What is the name and general location of your present employer and the period of time during which you have worked for this employer? What is the nature of your work for this employer? If you are retired, what is your former occupation?

6. Do you now, or have you ever supervised people?

7. Have you had to discipline an employee?

8. Have you ever been demoted, laid off, or terminated from a job?

9. Who are the members of your household? What do they do for a living?

10. Do you have adult children living outside your home? What do they do for a living?

11. Have you ever served in the military? If so, which branch, and when?

12. What do you do in your spare time?

13. What music do you listen to?

14. Are you a member of any organizations or clubs?

15. Please name a famous person you admire and briefly say why.

Court Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PALANI KARUPAIYAN,<br><br>Plaintiffs,<br><br>-against-<br><br>CVS HEALTH CORPORATION; AETNA; ACTIVEHEALTH MANAGAMENT; KALYANI LAKSHMI BELLAMKONDA; ROBERT DENNER; APN CONSULTING INC.; VEDANT PATHAK; NEELA PATHAK; PURVI JHAL,<br><br>Defendants. | 19-CV-08814 (JAV) |

JEANNETTE A. VARGAS, United States District Judge:

## **Preliminary Instructions**

Now that you have been sworn in, let me explain to you what the next few days will look like, as well as give you information about your role as jurors and the instructions that you, as jurors, must follow.

### I. OUTLINE OF TRIAL

Let me start by explaining the different stages of the trial for you.

First, each side may, but doesn't have to, make an opening statement. An opening statement is neither evidence nor argument; it is an outline of what that party intends to prove, and it is offered to help you follow the evidence.

Next, the parties will have the opportunity to introduce evidence. I will talk a bit more in a moment about what is or isn't evidence. But for now, let me say that evidence comes in a few different forms: exhibits which I have received into evidence, sworn testimony from a witness, and any facts stipulated to by the parties.

I want to talk for a moment about the witnesses, not because witness testimony is any more or less important than any other type of evidence that you will consider. It is not. But a large part of the trial will be spent hearing witnesses testify here in the courtroom. Both parties are allowed to question each witness. Many of the witnesses are being called by both parties, so you should not attach any significance to the order in which they are called. You may consider the relevant testimony of all witnesses, regardless of who may have called them.

After all the witnesses have testified and both parties have put in their evidence, I will give you instructions on the law. The parties will then make their closing arguments to summarize and give you their interpretation of the evidence. Like opening statements, the closing arguments are not evidence. After the closing arguments, you will retire to deliberate on your verdict.

Please do not make up your mind about what the verdict should be until the very end of the trial – after I have instructed you on the law at the end of the case and you have gone to the jury room and you and your fellow jurors have discussed the evidence. Keep an open mind until then. The parties deserve, and the law requires, that you give them an opportunity to be fully heard.

## II. ROLE OF THE JURY

At the end of the presentation of the evidence and after my final charge to you, it will be your duty to decide from the evidence what the facts are. You, the members of the Jury, are the sole and exclusive judges of the facts. You will hear the evidence, determine the credibility of witnesses, decide what the facts are, and draw whatever reasonable inferences you decide to draw from the facts as you determine them. In doing so, please remember that you took an oath

to render judgment impartially and fairly, without prejudice or sympathy or fear, based solely on the evidence and the applicable law.

My duty is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them. On these legal issues, you must take the law as I give it to you, whether you agree with it or not. If any attorney states a legal principle different from any that I state to you in my instructions, it is my instruction that you must follow.

You must not take anything I may say or do during the trial as indicating what your verdict should be. I will not express or imply any opinions about which witnesses you should believe, what facts are established or what inferences should be drawn from the evidence.

You are the sole judges of all the questions of fact submitted to you. As the sole judges of the facts, you must determine which of the witnesses you believe, what portion of their testimony you accept and what weight you attach to it.

## III. EVIDENCE IN THIS CASE

You will decide what the facts are from the evidence that will be presented in court. As I mentioned earlier, that evidence will consist of the testimony of witnesses; documents and other things received into evidence as exhibits; and any facts that that the lawyers agree to or admit, or that I may instruct you to find.

There are two kinds of evidence: direct and circumstantial. Direct evidence is testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence; that is, it is proof of one or more facts from which you can find another fact. You may consider both direct and circumstantial evidence in deciding this case. The law permits you to give equal weight to both or to none; it is up to you to decide how much weight, if any, to give to any evidence.

There is no formula by which you should evaluate testimony or exhibits. I will, however, give you some guidelines for determining the credibility of witnesses at the end of the case. Right now, I will just say that you bring with you to this courtroom all of the experience and background of your lives. You do not have to leave your common sense outside the courtroom. The same types of tests that you use in your everyday dealings are the tests that you will apply in your deliberations.

It is essential, however, that you keep an open mind until you have heard all of the evidence in the case. A case can be presented only step by step, witness by witness. As you know from experience, you can hear one person give his or her version of an event and think it sounds very impressive or even compelling, and yet, upon hearing another person's version of the same event – or even the same person cross-examined with respect to the event – things may seem very different. In other words, there may be another side to any witness's story. You should use your common sense and good judgment to evaluate each witness's testimony based on all of the circumstances. Again, I cannot emphasize too strongly that you must keep an open mind until the trial is over. You should not reach any conclusions until you have all the evidence before you.

During the trial, you may hear one side object when the other side offers testimony or other evidence which they believe is not admissible. They have the right and duty to make those objections, and to ask the Court to make rulings of law. All those questions of law must be decided by me. You should not show any prejudice against an attorney, or his or her client, because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury, or asked the Court for a ruling on the law.

My rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

If, however, I sustain an objection to a question asked of the witness, that means I will not permit the witness to answer or, if the witness has already answered, I will instruct that the answer be stricken from the record and that you disregard it and dismiss it from your minds. In reaching your decision, you may not draw any inference from an unanswered question. Nor may you consider testimony that I have ordered stricken from the record.

## IV. WHAT IS NOT EVIDENCE

You should also understand what is not evidence. What the attorneys say in their opening statements, closing arguments, objections or questions is not evidence. Neither is the testimony that I instruct you to disregard. Moreover, anything that I say is not evidence.

The attorneys' arguments are commentary to help you understand the evidence. For example, in opening statements, the lawyers will tell you what they expect the evidence to show, but what they say is not evidence, and it is only what is actually introduced into evidence that you may consider in reaching your verdict. If, in the course of your deliberations, your recollection of the facts differs from the lawyers' arguments, it is your recollection that controls.

## V. TIME LIMIT

I have imposed time limits on the parties to try their case. Each side has a fixed amount of time for argument and for witness testimony.

## VI. BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE

Please remember, this is a civil case. Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case,

and you should put it entirely out of your mind. In civil cases, the burden is different, and it is called proof by a preponderance of the evidence. A preponderance of the evidence means the greater weight of the evidence. To prove something by a preponderance of the evidence means to prove that a fact is more likely true than not true. I will instruct you fully on the burden of proof at the conclusion of the trial.

## VII. MULTIPLE CLAIMS AND MULTIPLE PARTIES

Several claims are against more than one Defendant. Keep in mind that each claim is to be considered separately. You must also consider the evidence against each Defendant separately. Each Defendant is entitled to a fair consideration of the evidence relating to that Defendant, and is not to be prejudiced by any finding you make for or against any other Defendant.

## VIII. SUMMARY OF THE PARTIES' CLAIMS

The person suing in a lawsuit is called the plaintiff. The Plaintiff here is Palani Karupaiyan. Those being sued are called defendants. There are five defendants in this case: two corporations, Aetna, Inc. and Active Health Management, Inc., which I will sometimes refer to as AHM, and three people named Lakshmi Kalyani Bellamkonda, Robert Denner, and Purvi Jhala.

Here, Mr. Karupaiyan was hired through APN Consulting, Inc. and Karupaiyan Consulting, Inc. to provide services to the corporate defendants, Aetna and AHM. He alleges that Aetna and AHM and Ms. Bellamkonda treated him worse than others who worked at Aetna and AHM at the same time he worked there because of his race, and that Aetna and AHM ended their professional relationship with him because of his race and had racial comments made to him at the time Aetna and AHM ended their professional relationship with him.

Mr. Karupaiyan alleges that he was an employee, which is required for some of his claims. Aetna, AHM and Ms. Bellamkonda claim that Plaintiff was an independent contractor employed by Karupaiyan Consulting, Inc. and not an employee of Aetna or AHM. They maintain that they ended his services as an independent contractor as they were able to do under the agreement governing Plaintiff's professional relationship by providing him with two weeks' notice that his professional relationship would end. Aetna, AHM, and Ms. Bellamkonda further contend that Plaintiff was unable to perform the tasks he was required to perform and that he displayed unprofessional behavior in the workplace. Aetna, AHM and Ms. Bellamkonda deny that Mr. Karupaiyan was treated worse because of his race or that race played a role in their decision to end their professional relationship with him, and that any racial comments were made to Mr. Karupaiyan.

Mr. Karupaiyan also claims that, when he was notified of Aetna and AHM's decision to end their professional relationship with him, Mr. Denner and Ms. Jhala physically dragged him by the hand into a dark room. There, he alleges they pulled his hair and kicked him before escorting him off the premises. Mr. Denner and Ms. Jhala deny any intentional physical contact with Mr. Karupaiyan.

## IX. SUBSTANTIVE LEGAL INSTRUCTION

Now, ladies and gentlemen, I'm not going to give you my instructions on the law until the end of trial. But I think it will be useful to give you a little context for the evidence you are about to hear, so I am going to briefly describe the different claims brought by the Plaintiff in this case. I do so with the further instruction that to whatever extent my final instructions at the end of the trial are different than anything I say now, it is those final instructions you must follow.

Under federal, state and New York City law, an employer may not discriminate against any employee because of the employee's race, either in their treatment of the employee during their employment or in the termination of that employment. Mr. Karupaiyan brings racial discrimination claims against Aetna, AHM and Ms. Bellamkonda. To succeed on this claim, Plaintiff must meet his burden of showing he was an employee of Aetna or AHM, rather than an independent contractor, and Aetna, AHM, or Defendant Bellamkonda treated him worse than others who worked there at the same time he did, at least in part because of his race, and/or terminated his employment, at least in part because of his race.

Mr. Karupaiyan also brings hostile work environment claims against Aetna, AHM and Defendant Bellamkonda. A racially hostile work environment is one in which an employee is

treated less well than other people because of his race, in a way that amounts to more than petty slights or trivial inconveniences.

Mr. Karupaiyan also brings a battery claim against Robert Denner and Purvi Jhala. Battery means that they touched him intentionally, and a reasonable person would find the manner of that touch offensive.

**Conduct of the Jury and Outline of the Trial**

This concludes our preliminary discussion of the law. I will now tell you about the conduct of the jury and the outline of the trial.

## X. INSTRUCTIONS ON NOTETAKING

Each of you has been provided a notebook and pen. You do not have to take notes, but you may if you wish. Please be sure though that any notetaking does not interfere with your listening to and considering all of the evidence. Also, if you do take notes, you must not show them to, or discuss them with, any other juror or anyone else at any time, either before or during your deliberations. Any notes you take are to be used solely to assist you, and your notes are not to substitute for your recollection of the evidence. The fact that a particular juror takes notes entitles that juror's views to no greater weight than those of any other juror. If, during your deliberations, you have any doubt as to any of the testimony, you will be permitted to request that the official transcript that is being made of these proceedings be read to you.

Ms. Molinelli, my Courtroom Deputy, will safeguard your notebooks during breaks at the end of each day and secure them. No one is permitted to review your notes. After the trial has concluded, the notebooks and your notes will be collected and destroyed. If you do plan to take notes, please write your juror number and name and initials on the cover so you will know the notebook is yours.

## XI. General Instructions

I should also caution you about certain rules governing your conduct as jurors.

First, do not talk to each other about this case or about anyone who has anything to do with it until the end of the case when you go to the jury room to decide on your verdict.

Second, do not talk or communicate with anyone else about this case or about anyone who has anything to do with it until the trial has ended and you have been discharged as jurors. No communicating about the case means absolutely no communicating about the case on social media or through any electronic means. This includes Facebook, X, Instagram, Tiktok, Discord, Slack, any other messaging platform. Do not communicate about it on a blog or a comment section or anywhere online. Don't talk about it via texts, instant messages, or direct messages. I am sure I am missing some, since new apps and messaging services are cropping up all the time, but to be clear, my instructions on this are meant to cover any type of communication about your involvement in this case in any format, through any means. This prohibition on communication extends to members of your family and your friends. You may tell them that you are a juror in a case but don't tell them anything else about it until after you have been discharged by me.

Third, do not let anyone talk to you about the case or about anyone who has anything to do with it. If someone should try to talk to you, please report it to me immediately through Ms. Molinelli, my Courtroom Deputy. You should not, however, discuss with your fellow jurors either that fact or any other fact that you feel is necessary to bring to the attention of the Court.

Fourth, do not converse, whether in or out of the courtroom, with any of the parties or the attorneys or any witness. By this I mean, not only do not converse about the case, but do not converse at all, even to ask the time of day. In no other way can all parties be assured of the absolute impartiality they are entitled to expect from you as jurors. I have instructed the lawyers

and the parties that they are not to speak to you or even acknowledge you with a “hello” or “good morning” outside the courtroom. So, do not hold it against them if they ignore you or leave an area that you are in. They are simply following my instructions. The reason for this rule is simple. Someone watching from a distance might not hear what is said between an attorney and a juror, and even a pleasantry could create a misimpression.

To minimize the probability of any such improper communication, it is important that you go straight to the jury room when you come in in the morning and that you remain in the courtroom or the jury room for the duration of the trial day. You should use the bathrooms in the jury room rather than the bathrooms on this or any other floor; as you were probably told already, you may not use the cafeteria. Given that our morning and afternoon breaks will be short, it is best that you remain in the jury room if you can.

Fifth,it is possible that this case may attract media attention. Do not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it. Until a verdict is released and you are discharged, you must insulate yourself from all information about this case, except what has come to you in this courtroom. That means no reading, watching, or listening to media coverage or commentary about the case or comments from your friends or loved ones. You are sealed from other information. And if anything happens that results in some exposure to some outside source, you are obligated to report it to the Court.

Sixth, do not do any research or any investigation about the case on your own. You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom. This means that during the trial you must not conduct any independent research about this case, the matters in this case and the parties involved in the case. Do not visit any

place you may hear described during the trial. Don't look up any of the witnesses or persons mentioned in this case online. This includes the attorneys, don't look up the attorneys' profiles or try to find information about the attorneys online. For some of you, looking up people online may be something you routinely do in your ordinary lives, but you should not do it while serving as a juror.

In other words, you should not search the Internet, websites or blogs, use AI, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information about this case from any source outside the confines of this courtroom.

Until you retire to deliberate, you may not discuss this case with anyone, even your fellow jurors. After you retire to deliberate, you may begin discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case has ended.

I understand that I just laid out a long list of rules about what you can and cannot do during your jury service. But these rules are very important. The parties are entitled to have you personally render a verdict in this case on the basis of your independent evaluation of the evidence presented here in the courtroom. Obviously, speaking to others about this case, including your family, before you deliberate or exposing yourself to evidence outside the courtroom would compromise your service and fairness to the parties. The Court relies on you, our jurors, to follow these instructions so that we can ensure that every litigant receives due process of law.

Finally, I expect you to inform me immediately, through my Deputy, if you become aware of another juror's violation of these instructions.

## XII. CONDUCT OF THE TRIAL

In general, you should be in the jury room by 9:15. Please allow time to get through security. We will sit from 9:30 a.m. – 5:00 p.m. on Mondays through Thursdays until we are finished. I expect the trial will end by ___.

There will be a one-hour lunch break around 12:30 p.m. and a 15-minute break mid-morning and mid-afternoon. No other breaks. Please plan accordingly. Please be here early if possible, and always be on time.

**COURT EXHIBIT 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PALANI KARUPAIYAN,

Plaintiffs,

-against-

CVS HEALTH CORPORATION; AETNA; ACTIVEHEALTH MANAGAMENT; KALYANI LAKSHMI BELLAMKONDA; ROBERT DENNER; APN CONSULTING INC.; VEDANT PATHAK; NEELA PATHAK; PURVI JHALA,

Defendants.

19-CV-08814 (JAV)

JEANNETTE A. VARGAS, United States District Judge:

**FINAL JURY INSTRUCTIONS**

**COURT EXHIBIT 3**

## Table of Contents

**General Instructions ........ 3**
A. Introduction to Instructions ........ 3
B. Roles of the Judge and Jury ........ 4
C. Role of Counsel ........ 5
D. Impartiality ........ 6
E. What Is and Is Not Evidence ........ 7
F. Direct and Circumstantial Evidence ........ 9
G. Credibility of Witnesses ........ 11
H. Stipulations ........ 13
I. Burden of Proof ........ 14
J. Available Evidence ........ 16
K. Multiple Claims and Multiple Parties ........ 17
**Substantive Instructions ........ 18**
L. Overview ........ 18
M. Summary of the Claims ........ 19
N. Substantive Law – Employment Relationship ........ 21
O. Substantive Law – Title VII and the NYSHRL: Elements of Race Discrimination Claim (Aetna and AHM) ........ 25
P. Substantive Law –Title VII and the NYSHRL: "Motivating Factor" Defined (Aetna and AHM) ........ 26
Q. Substantive Law – NYSHRL: Individual Liability for Bellamkonda ........ 27
R. Substantive Law – Section 1981: Elements of Race Discrimination Claim (Aetna, AHM and Bellamkonda) ........ 28
S. Substantive Law – Section 1981: "Because of" Defined (Aetna, AHM and Bellamkonda) ........ 29
T. Substantive Law – Section 1981: Individual Liability for Bellamkonda ........ 30
U. Substantive Law – New York City Human Rights Law: Overview (Aetna, AHM and Bellamkonda) ........ 31
V. Substantive Law – New York City Human Rights Law: Termination Claim (Aetna, AHM and Bellamkonda) ........ 32
W. Substantive Law – New York City Human Rights Law: Hostile Work Environment (Aetna, AHM and Bellamkonda) ........ 33
X. Substantive Law – Aiding and Abetting Liability Against Defendant Bellamkonda Under NYSHRL & NYCHRL ........ 35
Y. Substantive Law – Business Judgment ........ 36

Z. Substantive Law – Battery (Denner and Jhala) .... 37
AA. Damages (Generally) .... 38
BB. Damages – Compensatory Damages .... 39
CC. Closing Arguments .... 40
**Deliberations of the Jury .... 41**
DD. Right To See Exhibits and Hear Testimony; Communications with Court .... 41
EE. Notes .... 42
FF. Duty to Deliberate/Unanimous Verdict .... 43
GG. Selection of Foreperson .... 44
HH. Return of Verdict .... 45
II. Verdict Form .... 46
JJ. Closing Comment .... 47

## General Instructions

### A. Introduction to Instructions

Members of the jury, you have now heard all of the evidence in the case. You are about to hear the final arguments of the parties and then you will undertake your final and most important function as jurors. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in this case.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and to apply them to the facts as you determine them, just as it has been my duty to preside over the trial and to decide what testimony and evidence was proper under the law for your consideration.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.

### B. Roles of the Judge and Jury

In our legal system, parties involved in legal disputes have the right to have a jury, chosen from the members of their community, render a verdict. Your role, as the jury, is to decide the factual issues in the case. I, as the judge, will instruct you on the law, and you must accept the law as I state it to you. Then, you will apply that law to the facts as you find them. The result of your work will be the verdict that you return.

You, as jurors, are the sole and exclusive arbiters of the facts. What does this mean? It means you, the jurors, determine the weight to be given to the evidence. You appraise the credibility of the witnesses. You draw the reasonable inferences from the evidence or lack of evidence. And you resolve such conflicts as there may be in the testimony.

Because you are the sole and exclusive arbiters of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views on what your decision should be. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

My role, as the judge, is to instruct you on the law that you are to apply to the facts as you find them. You, as jurors, are bound to accept my instructions on the law even if you feel that the law should be different from what I say it is. Also, if anyone has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any one instruction or any one word or phrase in an instruction as alone stating the law, but you should consider the instructions as a whole.

**COURT EXHIBIT 3**

### C. Role of Counsel

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. It is my job to rule on those objections. Therefore, why an objection was made or why I ruled on it the way I did is not your concern. You should draw no inference from the fact that an attorney objects to any evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection. If I sustained the objection, you may not consider the testimony or exhibit at issue; if I overruled the objection, you may consider the testimony or exhibit just as you would any other evidence in the case.

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed opinions or had reactions of any kind to the lawyers here, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those opinions or reactions should not enter into your deliberations.

During the course of the trial, I may have had to correct the presentation of an attorney, for example, to ask them to rephrase a question. You should draw no inference against the attorney or the client. It is the duty of the attorneys to advocate on behalf of their clients.

From time to time, the lawyers and I had conferences out of your hearing called sidebars. These conferences involved procedural and other legal matters, and should not enter into your deliberations at all.

**D. Impartiality**

You are to perform your duty of finding the facts without bias or prejudice or sympathy as to any party, for all parties are equal under the law. You are to perform your final duty in an attitude of complete fairness and impartially. You are not to be swayed by rhetoric or emotional appeals.

It must be clear to you that if you were to let prejudice or bias or sympathy interfere with your thinking, there would be a risk that you would not arrive at a just verdict. So do not be guided by anything except clear thinking and calm analysis of the evidence. Your verdict will be determined by the conclusions you reach, no matter whom the verdict helps or hurts.

**E. What Is and Is Not Evidence**

Let me now explain what is and what is not evidence in this case. Evidence consists of the testimony of the witnesses, the exhibits that have been received into evidence, stipulations, and judicially noticed facts. The stipulation contains facts that the parties have agreed on, and you are to take these facts as true. By contrast, what counsel have said in their opening statements, questions and objections, as well as what they may say in their closing arguments, is not evidence. Also, anything that I have said or may say about the facts, as well as anything you have heard outside the courtroom is not evidence.

You should bear in mind that a question put to a witness is never evidence; it is only the answer that is evidence. At times, a questioner may have incorporated into a question a statement that assumed certain facts to be true and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it simply because it was contained in a question. You also may not consider any answer that I directed you to disregard or that I directed be stricken from the record.

Exhibits that have been marked for identification or have been identified as demonstrative aids are not evidence, unless they have been admitted into evidence by the Court. If a demonstrative aid misstates the underlying evidence, it is the underlying evidence that you must consider. Materials used only to refresh a witness's recollection also are not evidence.

Arguments made by the attorneys are not evidence. If your recollection of the facts differs from the statements made by attorneys in their arguments, then it is your recollection that controls.

**COURT EXHIBIT 3**

During the trial, I have been called upon to make various rulings. There may have been objections, or motions may have been made to strike answers. You are to disregard these procedural matters; they are matters of law, and although you may have been curious about them, you should not consider them.

Also, the fact that I may have commented during the course of the trial does not indicate any feeling of mine about the facts or the credibility of any witness. I have no such feelings, and my comments were intended only to clarify the issue at hand. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party because of any comment, question, or instruction of mine. It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Lastly, anything that you may have seen or heard when the Court was not in session is not evidence. You are to decide the case solely on the evidence that is presented to you in this courtroom.

### F. Direct and Circumstantial Evidence

There are two types of evidence that you may use in reaching your verdict – direct evidence and circumstantial evidence. Direct evidence is when a witness testifies about something the witness knows by virtue of his or her own senses – something the witness has seen, felt, touched or heard. Direct evidence may also be in the form of an exhibit admitted into evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

There is a simple example of circumstantial evidence that is often used in this courthouse. Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom windows were covered and you could not look outside. Then, as you were sitting here, someone walked in with an umbrella that was dripping wet. A few minutes later, another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, so you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer from one or more established facts, on the basis of reason, experience and common sense, the existence or non-existence of some other fact. An inference is not a speculation, suspicion or guess. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence.

**COURT EXHIBIT 3**

There are times when different inferences may be drawn from the same proven facts. Here, the one side asks you to draw one set of inferences, while the other side asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

**COURT EXHIBIT 3**

**G. Credibility of Witnesses**

You have had the opportunity to listen to and observe all of the witnesses. It is now your job to decide how believable you find each witness's testimony to be. How do you determine where the truth lies? You should use all of the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.

One thing you should consider is any bias, hostility or affection that a witness may have shown for or against a party. It is your duty to consider whether the witness has permitted any such bias to color his or her testimony. If you find that a witness is biased, then you should view the witness's testimony with caution, weigh it with care and subject it to close and searching scrutiny.

You should also consider any other interest or motive that the witness may have in cooperating with a particular party, as well as any interest the witness may have in the outcome of the case. Interest in the outcome of the case creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests. Therefore, you should accept the testimony of an interested witness with great care. Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter how strong their interest in the outcome of the case, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

Additional factors you should consider are: the opportunity the witness had to see, hear and know the things about which he or she testified; the accuracy of the witness's memory; the witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's testimony; and the testimony's consistency or lack of consistency with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of the witness's demeanor, the explanations given and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment and your own life experience.

If you find that any witness has willfully testified falsely to any material fact (that is, to an important matter), then the law permits you to disregard the entire testimony of that witness based upon the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.

While it is quite legitimate for an attorney to try to attack the credibility of a witness, as the sole arbiters of the facts, you must decide for yourselves which witnesses you will believe, what portion of their testimony you will accept and what weight you will give to that testimony.

### H. Stipulations

At the beginning of this trial, I read to you the stipulations between the parties. I will remind you now that a stipulation of facts is an agreement among the parties that certain facts are true. You must regard such agreed facts in the stipulation as true.

## I. Burden of Proof

I am now going to explain the concept of "burden of proof." This is a civil case, so the burden of proof is proof by a "preponderance of the evidence."

The party with the burden of proof on any given issue has the burden of proving to you every disputed element of that party's claim by a preponderance of the evidence. If you conclude that the party bearing the burden of proof has failed to establish that party's claim by a preponderance of the evidence, you must decide against that party on the issue you are considering.

What does a "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence, which refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you should consider the relevant testimony of all witnesses, regardless of who may have called them, and all of the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties, meaning it is as equally probable that one side is right as it is that the other side is right, then you must decide that issue against the party having the burden of proof. That is because the party with the burden of proof must prove more than simple equality of evidence. On the other hand, the party with the burden of proof does not need to prove any more than a preponderance of the evidence. This means that as long as you find on a given issue that the scales tip, however slightly, in favor of the party with the burden of proof, then you must find for that party on that issue, as that issue will have been proved by a preponderance of the evidence.

**COURT EXHIBIT 3**

Once more I remind you, as I did at the beginning of the trial, that proof beyond a reasonable doubt is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this, and you should put it completely out of your mind.

### J. Available Evidence

Although plaintiff bears the burden of proof on his claims, the law does not require plaintiff to call as witnesses all persons who may appear to have some knowledge of the matters at issue in this trial. Nor does the law require that all things mentioned during the course of the trial be produced as exhibits.

You are not to rest your decision on what some absent witness who was not brought in might have testified to, or what he or she might not have testified to. No party has an obligation to present cumulative testimony.

**COURT EXHIBIT 3**

### K. Multiple Claims and Multiple Parties

This case has more than one Defendant, as well as multiple claims. In reaching a verdict, you must bear in mind that each of Plaintiff's claims are to be considered separately. In the same vein, you must consider the evidence against each Defendant separately. Each Defendant is entitled to a fair consideration of the evidence relating to that Defendant, and is not to be prejudiced by any finding you make for or against any other Defendant.

**COURT EXHIBIT 3**

**Substantive Instructions**

**L. Overview**

I'm now going to tell you about the law that you will have to apply to the facts as you find them. My instructions are to help you evaluate the evidence, in light of what you are asked to do, now that you have heard all the evidence. To the extent that there are any differences between the preliminary instructions that I gave you at the beginning of trial and these final instructions, the final instructions are the ones you must follow in your deliberations.

You have also been provided with a verdict form that you will fill out during your deliberations. On the form, there are spaces to indicate your verdict on each of Plaintiff's claims against each Defendant. You should proceed through the questions in the order in which they are listed. [The verdict form contains __ questions.] You may not have to answer all of them. The instructions I am about to give you will guide you on when and how to answer each question.

**COURT EXHIBIT 3**

**M. Summary of the Claims**

The person suing in a lawsuit is called the plaintiff. The Plaintiff here is Palani Karupaiyan. Those being sued are called defendants. There are five defendants in this case: two corporations, Aetna, Inc. and Active Health Management, Inc., and three people named Lakshmi Kalyani Bellamkonda, Robert Denner, and Purvi Jhala.

Under federal, state and New York City law, an employer may not discriminate against any employee because of the employee's race, either in their treatment of the employee during their employment or in the termination of that employment. I will say more about these laws before you go to deliberate.

Here, Mr. Karupaiyan was hired through APN Consulting, Inc. and Karupaiyan Consulting, Inc. to provide services to the corporate defendants, Aetna and AHM. He alleges that Aetna and AHM and Ms. Bellamkonda treated him worse than others who worked at Aetna and AHM at the same time he worked there because of his race, that Aetna-AHM ended their professional relationship unlawfully because of his race, and that racial comments were made to him at the time Aetna-AHM ended their professional relationship with him. Mr. Karupaiyan alleges that he was an employee, which is required for some of his claims. He further asserts that Aetna, AHM, and Bellamkonda created a hostile work environment for him because of his race.

Aetna, AHM and Ms. Bellamkonda claim that Plaintiff was an independent contractor employed by Karupaiyan Consulting, Inc. and not an employee of Aetna or AHM. They maintain that they ended his services as an independent contractor as they were able to do under the agreement governing Plaintiff's professional relationship by providing him with two weeks' notice that his professional relationship would end. Aetna, AHM, and Ms. Bellamkonda further contend that Plaintiff was unable to perform the tasks he was required to perform and that he displayed

**COURT EXHIBIT 3**

unprofessional behavior in the workplace. Aetna, AHM and Ms. Bellamkonda deny that Mr. Karupaiyan was treated worse because of his race, that race played a role in their decision to end their professional relationship with him, and that any racial comments were made to him.

Mr. Karupaiyan also claims that, when he was notified of Aetna-AHM's decision to end their professional relationship with him, Mr. Denner and Ms. Jhala physically dragged him by the hand into a dark room, pulled his hair, and kicked him before escorting him off the premises. Mr. Denner and Ms. Jhala deny any intentional physical contact with Mr. Karupaiyan.

Your role after trial is to assess the facts based on the evidence you hear and apply the law on which I will instruct you. Based on the facts that you "find," you will conclude whether Plaintiff has proven any of his claims by a preponderance of the evidence. You will then give your verdict for each claim.

Plaintiffs bring several different claims in this action, each of which I will now briefly summarize for you. Later I will explain the law as to each claim in more detail.

Mr. Karupaiyan asserts claims of race discrimination against Defendants Aetna and AHM under four laws. These laws are: (i) 42 U.S.C. § 1981, known as "Section 1981," (ii) Title VII of the Civil Rights Act of 1964, known as "Title VII," (iii) N.Y. Exec. Law. § 296, known as the "New York State Human Rights Law", and which is often abbreviated as NYSHRL and (iv) N.Y.C. Admin Code 8-107, known as the "New York City Human Rights Law," or the NYCHRL for short.

Mr. Karupaiyan also asserts claims of race discrimination against Defendant Bellamkonda under each of these laws, except Title VII.

Finally, Mr. Karupaiyan asserts a claim of battery against Mr. Denner and Ms. Jhala.

I will now instruct you on the law of the claims.

**COURT EXHIBIT 3**

**N. Substantive Law – Employment Relationship**

To establish his claims under Title VII, the New York State Human Rights Law, and the New York City Human Rights Law, Mr. Karupaiyan must show by a preponderance of the evidence that he was an Aetna-AHM employee.

It is not always clear whether the law considers someone an "employee," and it is not always clear who the law considers someone's "employer." Some people, for example, perform services for others while remaining self-employed as independent contractors.

In this case, you must decide: Was Mr. Karupaiyan an employee of Aetna-AHN, or was he an independent contractor? You should answer this question in light of the economic realities of the entire relationship between the parties. There are a number of factors you must consider, based on all the evidence in the case:

- (a) Who controls Mr. Karupaiyan's work? In an employer/employee relationship, the employer has the right to control the employee's work, to set the means and manner in which the work is done, and set the hours of work. In contrast, an independent contractor generally must accomplish a certain work assignment within a desired time, but the details, means, and manner by which the contractor completes that assignment are determined by the independent contractor, normally using special skills necessary to perform that kind of work.
- (b) How is Mr. Karupaiyan paid? An employer usually pays an employee on a time worked, piecework, or commission basis, and an employer usually provides vacation or sick time, insurance, retirement, and other fringe benefits to the employee. An independent contractor is ordinarily paid an agreed or set amount, or according to an agreed formula, for a given task or job, and no benefits are provided.

- (c) What tax treatment did Mr. Karupaiyan receive?
- (e) Who provides Mr. Karupaiyan's tools, equipment, and supplies? An independent contractor usually provides the tools, equipment, and supplies necessary to do the job—but an employee usually does not.
- (f) How does Mr. Karupaiyan offer services? Independent contractors generally offer their services to the public or others in a particular industry, have procured the necessary licenses for performing their services, and may have a business name or listing in the phone book. Employees ordinarily work for only one or just a few employers, and do not have business names or listings.
- (g) How much skill did Mr. Karupaiyan's job require? A highly skilled or specialized job is more likely to be considered that of an independent contractor. In contrast, Mr. Karupaiyan is more likely to be an employee if the work he did was less skilled or if he was doing the kind of work that Aetna-AHM usually does.
- (g) Where was the work performed? If the work is performed at defendant's building, this could weigh in favor of a finding that an individual is an employee. If, however, work needed to occur in a particular place due to the nature of the work or in order to have access to necessary equipment, then this factor may be given less weight in the analysis.
- (h) What was the nature of the work performed? If the work performed was part of the regular business of the defendant, the individual is more likely to be an employee. If the work was more specialized, the individual is more likely to be an independent contractor.
- (i) To what extent did the plaintiff have discretion over when and how long to work? The more discretion he had, the more likely it is that he is an independent contractor.
- (j) What was the duration of the relationship between the parties?

**COURT EXHIBIT 3**

- (k) Did the defendant have a right to assign additional projects to the plaintiff? A traditional employee will typically be hired to work not just on a single project, but will instead be subject to the employers right to assign additional and distinct projects during the term of their employment. By contrast, an independent contractor is more likely to have been hired to complete a particular project with the relationship terminating upon completion of the contractually assigned project.

You should consider all the circumstances surrounding the work relationship—no single factor determines the outcome. This list is not exhaustive. You may consider any evidence you believe impacts your determination regarding if Aetna-AHM employed Mr. Karupaiyan. Nevertheless, the extent of the right to control the means and manner of the worker's performance is the most important factor.

And you may consider the parties' intent, but the description the parties themselves give to their relationship is not controlling—substance governs over form.

If, after you consider the evidence, you find that Mr. Karupaiyan did *not* prove that he had an employment relationship with Aetna-AHM, you will find for Defendants Aetna-AHM and Ms. Bellamkonda on this issue and, further, find for Defendants Aetna, AHM and Ms. Bellamkonda on Mr. Karupaiyan's Title VII and the New York State Human Rights Law claims, as those claims require him to establish such a relationship.

In other words, if you find that Mr. Karupaiyan did *not* prove that he had an employment relationship with Aetna-AHM, you will consider *only* Plaintiff's Section 1981 and NYCHRL discrimination claim against Aetna-AHM and Ms. Bellamkonda, as a plaintiff can establish those claims without first establishing an employment relationship.

**COURT EXHIBIT 3**

If, however, you decide that Mr. Karupaiyan proved that he did have an employment relationship with Aetna-AHM, you will proceed to consider each of Mr. Karupaiyan's race discrimination claims under Title VII, New York State Human Rights Law, New York City Human Rights Law and Section 1981.

### O. Substantive Law – Title VII and the NYSHRL: Elements of Race Discrimination Claim (Aetna and AHM)

If you find that Plaintiff was an employee of Aetna-AHN, you will then need to determine if Aetna and AHM discriminated against Plaintiff because of his race in violation of Title VII and the New York State Human Rights Law. To succeed on this claim, Plaintiff has the burden of proving the following by a preponderance of the evidence:

First, that Plaintiff was terminated by the defendants;

Second, Plaintiff's race was a motivating factor in the Defendants' decision to terminate Plaintiff.

### P. Substantive Law –Title VII and the NYSHRL: "Motivating Factor" Defined (Aetna and AHM)

What does "motivating factor" mean? A plaintiff is not required to prove that his race was the sole or exclusive motivating factor for the defendant's decision to terminate him or that all of the defendant's stated reasons for the decision to fire him were false. A plaintiff must prove only that his race was a motivating factor. That is, the plaintiff's race was a factor that made a difference in the defendant's decision to terminate him.

If you find Mr. Karupaiyan has proven by a preponderance of the evidence that Mr. Karupaiyan's race was a motivating factor in the decision to terminate his employment, then you will find in favor of Mr. Karupaiyan on his claims against Aetna-AHM under Title VII and the NYSHRL.

Conversely, if you find that Mr. Karupaiyan has *not* proven that Plaintiff's race was a motivating factor in the decision to terminate his employment, then you must find in favor of Aetna-AHM on his claims under Title VII and the NYSHRL

### Q. Substantive Law – NYSHRL: Individual Liability for Bellamkonda

In addition to naming Aetna and AHM as defendants in this case, Mr. Karupaiyan has also named Ms. Bellamkonda as an individual defendant in his claim of race discrimination under the New York State Human Rights Law.

Ms. Bellamkonda is liable under the NYSHRL if Plaintiff has proved by a preponderance of the evidence that she personally participated in the decision to terminate Mr. Karupaiyan's employment, and Mr. Karupaiyan's race was the motivating factor in her decision. Ms. Bellamkonda may not be held liable under the NYSHRL simply because she holds a position of seniority.

**COURT EXHIBIT 3**

**R. Substantive Law – Section 1981: Elements of Race Discrimination Claim (Aetna, AHM and Bellamkonda)**

I'm now going to turn to Plaintiff's claim under Section 1981. To establish a defendant is liable under Section 1981, a plaintiff has the burden of proving the following elements by a preponderance of the evidence:

First, the plaintiff was terminated by the defendants;

Second, defendants terminated plaintiff because of his race.

## S. Substantive Law – Section 1981: "Because of" Defined (Aetna, AHM and Bellamkonda)

"Because of" means "by reason of" or "on account of." This is sometimes referred to as "but-for causation." This form of causation is shown whenever a particular outcome would not have happened "but for" the purported cause. It is a reason without which the termination would not have occurred.

A but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a "but-for cause." Often, events have multiple but-for causes. For example, if a car accident occurred both because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a "but-for cause" of the collision.

In the context of this claim, a defendant cannot avoid liability just by citing some other factor that contributed to the challenged employment decision. A plaintiff is not required to prove that his race was the sole or even the principal factor in the decision to terminate him, or that the reasons stated by the employer played no role in the employment decision. A "but-for cause" does not mean the sole cause or even a primary cause.

So long as the plaintiff's race was one but-for cause of that decision, that is enough to trigger the law.

If you find Mr. Karupaiyan has proven by a preponderance of the evidence that Aetna-AHM would not have terminated Mr. Karupaiyan but-for his race, then you will find in favor of Mr. Karupaiyan on his claims against Aetna-AHM under Section 1981.

Conversely, if you find that Mr. Karupaiyan has *not* proven that Aetna-AHM terminated Plaintiff *because of* his race, or that he would have been terminated otherwise, then you must find in favor of Aetna-AHM on this Section 1981 claim.

### T. Substantive Law – Section 1981: Individual Liability for Bellamkonda

In addition to bringing a claim against Aetna and AHM under Section 1981, Mr. Karupaiyan has also brought a claim against Ms. Bellamkonda. Mr. Karupaiyan alleges that Ms. Bellamkonda violated Section 1981 by participating in the decision to terminate his employment.

If you find that Mr. Karupaiyan has established by a preponderance of the evidence that Aetna-AHM would not have terminated him "but-for" his race under Section 1981, then you must also decide whether Ms. Bellamkonda *herself* did something because of Mr. Karupaiyan's race in making the decision to terminate plaintiff. It must be shown that the defendant had personal involvement in the decision to terminate him, and that she would not have done so "but for" his race. Under Section 1981, an individual defendant may not be held liable just because they hold a position of seniority.

If you find Mr. Karupaiyan has proven by a preponderance of the evidence that Ms. Bellamkonda would not have terminated Mr. Karupaiyan but-for his race, then you will also find in favor of Mr. Karupaiyan against Ms. Bellamkonda on his *individual* liability claim under Section 1981.

Conversely, if you find that Mr. Karupaiyan has *not* proven that Ms. Bellamkonda terminated his professional relationship with Aetna-AHM *because of* his race, or that she would have terminated him otherwise, then you must find in favor of Ms. Bellamkonda on this Section 1981 claim.

**COURT EXHIBIT 3**

## U. Substantive Law – New York City Human Rights Law: Overview (Aetna, AHM and Bellamkonda)

Mr. Karupaiyan is also bringing claims under the New York City Human Rights Law. The NYCHRL is broader than some of the other anti-discrimination laws we've discussed so far in two respects: *first*, its protections encompass independent contractors as well as employees, and *second*, it presents a lower bar to a plaintiff seeking to bring a case, requiring only that the plaintiff show differential treatment — that he was treated less well — because of his race. Mr. Karupaiyan alleges that he was treated less well than other employees in two ways. First, he claims he was treated less well when Aetna-AHM ended their professional relationship with him. Second, he alleges that he was subjected to a hostile work environment. I will discuss each of these in turn.

**COURT EXHIBIT 3**

## V. Substantive Law – New York City Human Rights Law: Termination Claim (Aetna, AHM and Bellamkonda)

To succeed on his claim under the NYCHRL for the ending of his professional relationship, Mr. Karupaiyan must prove by a preponderance of the evidence that Aetna-AHM and/or Ms. Bellamkonda intentionally treated him worse than others who worked at Aetna and AHM because of his race. In other words, he must show that, when these Defendants ended their professional relationship with him, they were motivated *at least in part* by his race. Plaintiff must prove that his race was a motivating factor, even if it was not the sole motivating factor for the decision.

### W. Substantive Law – New York City Human Rights Law: Hostile Work Environment (Aetna, AHM and Bellamkonda)

Mr. Karupaiyan also alleges that he was subjected to a hostile work environment because of his race. A hostile work environment exists when the conduct at the workplace, including intimidation, ridicule, or insults, would cause a reasonable person in Mr. Karupaiyan's circumstances to consider the work environment to be hostile.

In deciding whether Plaintiff's work environment was hostile, you must consider all of the circumstances, including: (1) the effect on Mr. Karupaiyan's psychological well-being; (2) whether the conduct was humiliating or physically threatening; and (3) whether the conduct unreasonably interfered with Mr. Karupaiyan's work performance. Because the New York City Human Rights Law is not a workplace civility code, the discriminatory treatment must be more than what a reasonable person would view as a petty insult or slight, but even a single comment made with discriminatory intent may establish liability.

In order to recover for employment discrimination arising out of a hostile work environment, Mr. Karupaiyan must prove that (1) he was subjected to a hostile work environment because of his race; (2) a reasonable person in Mr. Karupaiyan's circumstances would consider the work environment to be hostile and (3) that Mr. Karupaiyan considered the work environment to be hostile.

If you find Mr. Karupaiyan has proved by a preponderance of the evidence that Defendants Aetna-AHM and/or Ms. Bellamkonda treated him worse than others because of his race by creating a hostile work environment, you will find for Mr. Karupaiyan on his hostile work environment claim under the NYCHRL. Alternatively, if you find that Mr. Karupaiyan has not proven by a

preponderance of the evidence that Defendants Aetna-ARM and/or Ms. Bellamkonda treated him worse than others, you will find instead for Aetna-ARM and Ms. Bellamkonda on Mr. Karupaiyan's NYCHRL hostile work environment claim.

**COURT EXHIBIT 3**

**X. Substantive Law – Aiding and Abetting Liability Against Defendant Bellamkonda Under NYSHRL & NYCHRL**

Mr. Karupaiyan also brings claim against Ms. Bellamkonda for aiding and abetting Aetna-AHM's discrimination under the NYSHRL and NYCHRL. You may only consider Ms. Bellamkonda's liability as an aider and abettor under the NYSHRL and NYCHRL if you found in Mr. Karupaiyan's favor on the NYSHRL and NYCHRL claims against Aetna-AHM. Ms. Bellamkonda and Aetna-AHM may both be liable. However, if Aetna-AHM is not liable under these statutes, then Ms. Bellamkonda cannot be liable as an aider and abettor.

To establish that Ms. Bellamkonda aided and abetted discrimination, Mr. Karupaiyan must prove by a preponderance of the evidence that she actually participated in the discriminatory conduct. An individual defendant can be held liable for aiding and abetting discriminatory conduct even if the defendant does not have supervisory authority or the power to hire and fire.

If you find that Mr. Karupaiyan has proven by a preponderance of the evidence that Aetna-AHM discriminated against him because of his race under the NYSHRL or the NY CHRL, and that Ms. Bellamkonda participated in that discriminatory conduct, you will find that Ms. Bellamkonda is liable for aiding and abetting discrimination. However, if you find that Mr. Karupaiyan has not proven by a preponderance of the evidence that Ms. Bellamkonda participated in the discriminatory conduct, then you must find Ms. Bellamkonda is not liable for aiding and abetting discrimination.

**COURT EXHIBIT 3**

**Y. Substantive Law – Business Judgment**

Defendants may make an employment decision for any reason that is not unlawful. This can be a good reason, a bad reason, or no reason at all. The fact that a decision may be based on Defendants' subjective assessment of Mr. Karupaiyan's performance while he was working at Aetna-AHM or his conduct in the workplace does not by itself make the decision discriminatory. Defendants can use their business judgment and make decisions for any lawful reason. You cannot find Defendants liable merely because you personally disapprove of Defendants' actions or because you would have acted differently. But Defendants cannot discriminate on the basis of race.

**COURT EXHIBIT 3**

**Z. Substantive Law – Battery (Denner and Jhala)**

Mr. Karupaiyan also asserts battery claims against Robert Denner and Purvi Jhala. To prove this claim, Plaintiff must establish by a preponderance of the evidence that Mr. Denner or Ms. Jhala or both touched him intentionally, and that a reasonable person would find the manner of that touch offensive.

Intent involves the state of mind with which an act is done. If a person acts voluntarily to cause a result, then he or she is said to have intended the result. A person also acts intentionally if they have good reason to think a result will happen, even if they do not intend it. The intent required for battery is to cause a bodily contact that a reasonable person would find offensive.

An offensive bodily contact is one that is done to harm another, or one that offends a reasonable sense of personal dignity, or one that is otherwise wrongful.

If you find that a defendant intentionally made offensive bodily contact with Mr. Karupaiyan, you will find that such defendant committed a battery.

If, on the other hand, you find that a defendant did not intentionally cause such bodily contact with Mr. Karupaiyan, you will find that that defendant did not commit a battery.

## AA. Damages

I am now going to instruct you on damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether Defendants should be held liable.

### BB. Damages – Compensatory Damages

If you find by a preponderance of the evidence that any Defendant is liable with respect to any of the claims brought by Mr. Karupaiyan, then you must also consider whether Mr. Karupaiyan is owed compensatory damages. To receive compensatory damages, Mr. Karupaiyan must prove not only that Defendants are liable for discrimination and/or battery, but also that he was injured as a result of their conduct.

Mr. Karupaiyan alleges that Defendants caused him injuries such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Mr. Karupaiyan must show by a preponderance of the evidence that these injuries would not have occurred if Aetna-AHM or Ms. Bellamkonda had not discriminated against him, or if Mr. Denner or Ms. Jhala had not physically touched him without his consent.

If you find Mr. Karupaiyan is owed compensatory damages, you must award him an amount that will fairly compensate him for any injury that he actually sustained *because* of Defendants' conduct. Any damages amount should be guided by common sense. If you find any of his emotional distress was caused by something other than Defendants' conduct, such as personal problems or pre-existing conditions, then you must determine what part Defendants caused. The law does not require that Mr. Karupaiyan prove the amount of his losses with mathematical precision, but you may not award based on sympathy, speculation, or guesswork.

This amount should not include any wages that Mr. Karupaiyan would have earned if he had continued to work with Aetna-AHM, which is known as "back pay." Any back pay issues will be decided separately by the Court. Similarly, attorneys' fees and costs, if relevant at all, are for the court and not the jury to determine.

## CC. Closing Arguments

With these instructions in mind, you will now hear from the lawyers, who will give their closing arguments. I remind you that arguments by lawyers are not evidence, because the lawyers are not witnesses. However, what they say to you in their closing arguments is intended to help you understand the evidence and to reach your verdict. Please pay careful attention to their arguments.

**COURT EXHIBIT 3**

## Deliberations of the Jury

### DD. Right To See Exhibits and Hear Testimony; Communications with Court

You are about to go into the jury room and begin your deliberations. You will have all of the exhibits on a flash drive provided to you. If you want any of the testimony read back to you, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting portions of the testimony.

Your requests for testimony – in fact any communication with the court – should be made to me in writing, signed by your foreperson and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

**EE. Notes**

Some of you have taken notes periodically throughout this trial. I want to emphasize to you, as you are about to begin your deliberations, that notes are solely to assist you as an aid to your memory. Do not share your notes with other jurors during deliberations. Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. All jurors' recollections are equal. If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

**FF.Duty to Deliberate/Unanimous Verdict**

You will now return to decide the case. In order to prevail, Plaintiff must sustain its burden of proof as I have explained to you with respect to each element of the Complaint. If you find that Plaintiff has succeeded, you should return a verdict in his favor on that claim. If you find that Plaintiff failed to sustain the burden on any element of the claim, you should return a verdict against Plaintiff.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

## GG. Selection of Foreperson

When you retire, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

## HH. Return of Verdict

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you should be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

**COURT EXHIBIT 3**

## II. Verdict Form

I have prepared a verdict form for you to use in recording your decision. On the form, there are spaces to indicate your determinations regarding each Plaintiff's claim against each Defendant. You should proceed through the questions in the order in which they are listed. After you have reached a verdict, the foreperson should fill in the verdict sheet, sign and date it and then give a note to the deputy stating that you have reached a verdict. Do not specify what the verdict is in your note. Remember, the verdict must be unanimous and must reflect the conscientious judgment of each juror.

**JJ. Closing Comment**

Finally, I say this not because I think it is necessary but because it is the custom in this courthouse: You should treat each other with courtesy and respect during your deliberation.

All litigants stand equal in this room. All litigants stand equal before the bar of justice. Your duty is to decide between these parties fairly and impartially, to see that justice is done, all in accordance with your oath as jurors.

Thank you for your time and attentiveness.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PALANI KARUPAIYAN,

Plaintiff,

-v-

CVS HEALTH CORPORATION; AETNA; ACTIVEHEALTH MANAGAMENT; KALYANI LAKSHMI BELLAMKONDA; ROBERT DENNER; APN CONSULTING INC.; VEDANT PATHAK; NEELA PATHAK; PURVI JHALA,

Defendants.

19-CV-08814 (JAV)

JEANNETTE A. VARGAS, United States District Judge:

**FINAL JURY INSTRUCTIONS**

COURT EXHIBIT 3A

## Table of Contents

**General Instructions ........ 3**
A. Introduction to Instructions ........ 3
B. Roles of the Judge and Jury ........ 4
C. Role of Counsel ........ 5
D. Impartiality ........ 6
E. What Is and Is Not Evidence ........ 7
F. Direct and Circumstantial Evidence ........ 9
G. Credibility of Witnesses ........ 11
H. Stipulations ........ 13
I. Burden of Proof ........ 14
J. Available Evidence ........ 16
K. Multiple Claims and Multiple Parties ........ 17
**Substantive Instructions ........ 18**
L. Overview ........ 18
M. Summary of the Claims ........ 19
N. Substantive Law – Employment Relationship ........ 21
O. Substantive Law – Title VII and the NYSHRL: Elements of Race Discrimination Claim (Aetna-AHM) ........ 25
P. Substantive Law – Title VII and the NYSHRL: “Motivating Factor” Defined (Aetna-AHM) ........ 26
Q. Substantive Law – NYSHRL: Individual Liability for Bellamkonda ........ 27
R. Substantive Law – NYCHRL: Overview (Aetna-AHM and Bellamkonda) ........ 28
S. Substantive Law – NYCHRL: Termination Claim (Aetna-AHM and Bellamkonda) ........ 29
T. Substantive Law – NYCHRL: Hostile Work Environment (Aetna-AHM and Bellamkonda) ........ 30
U. Substantive Law – Section 1981: Elements of Race Discrimination Claim (Aetna-AHM and Bellamkonda) ........ 31
V. Substantive Law – Section 1981: “Because of” Defined (Aetna-AHM and Bellamkonda) ........ 32
W. Substantive Law – Section 1981: Individual Liability for Bellamkonda ........ 33
X. Substantive Law – Business Judgment ........ 34
Y. Substantive Law – Battery (Denner and Jhala) ........ 35
Z. Damages ........ 36
AA. Damages – Compensatory Damages ........ 37

BB. Closing Arguments ........ 38
**Deliberations of the Jury ........ 39**
CC. Right To See Exhibits and Hear Testimony; Communications with Court ........ 39
DD. Notes ........ 40
EE. Duty to Deliberate/Unanimous Verdict ........ 41
FF. Selection of Foreperson ........ 42
GG. Return of Verdict ........ 43
HH. Verdict Form ........ 44
II. Closing Comment ........ 45

## General Instructions

### A. Introduction to Instructions

Members of the jury, you have now heard all of the evidence in this case. You are about to hear the final arguments of the parties. Then, you will undertake your final and most important function as jurors. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in this case.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and to apply them to the facts as you determine them, just as it has been my duty to preside over the trial and to decide what testimony and evidence was proper under the law for your consideration.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.

**B. Roles of the Judge and Jury**

In our legal system, parties involved in legal disputes have the right to have a jury, chosen from the members of their community, render a verdict. Your role, as the jury, is to decide the factual issues in the case. I, as the judge, will instruct you on the law, and you must accept the law as I state it to you. Then, you will apply that law to the facts as you find them. The result of your work will be the verdict that you return.

You, as jurors, are the sole and exclusive arbiters of the facts. What does this mean? It means you, the jurors, determine the weight to be given to the evidence. You appraise the credibility of the witnesses. You draw the reasonable inferences from the evidence or lack of evidence. And you resolve such conflicts as there may be in the testimony.

Because you are the sole and exclusive arbiters of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views on what your decision should be. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

My role, as the judge, is to instruct you on the law that you are to apply to the facts as you find them. You, as jurors, are bound to accept my instructions on the law even if you feel that the law should be different from what I say it is. Also, if anyone has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any one instruction or any one word or phrase in an instruction as alone stating the law, but you should consider the instructions as a whole.

**C. Role of Counsel**

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. It is my job to rule on those objections. Therefore, why an objection was made or why I ruled on it the way I did is not your concern. You should draw no inference from the fact that an attorney objects to any evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection. If I sustained the objection, you may not consider the testimony or exhibit at issue; if I overruled the objection, you may consider the testimony or exhibit just as you would any other evidence in the case.

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed opinions or had reactions of any kind to the lawyers here, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those opinions or reactions should not enter into your deliberations.

During the course of the trial, I may have had to correct the presentation of an attorney, for example, to ask them to rephrase a question. You should draw no inference against the attorney or the client. It is the duty of the attorneys to advocate on behalf of their clients.

From time to time, the lawyers and I had conferences out of your hearing called sidebars. These conferences involved procedural and other legal matters, and they should not enter into your deliberations at all.

**D. Impartiality**

You are to perform your duty of finding the facts without bias or prejudice or sympathy as to any party, for all parties are equal under the law. You are to perform your final duty in an attitude of complete fairness and impartially. You are not to be swayed by rhetoric or emotional appeals.

It must be clear to you that if you were to let prejudice or bias or sympathy interfere with your thinking, there would be a risk that you would not arrive at a just verdict. So do not be guided by anything except clear thinking and calm analysis of the evidence. Your verdict will be determined by the conclusions you reach, no matter whom the verdict helps or hurts.

## E. What Is and Is Not Evidence

Let me now explain what is and what is not evidence in this case. Evidence consists of the testimony of the witnesses, the exhibits that have been received into evidence, stipulations, and judicially noticed facts. The stipulations contain facts that the parties have agreed on, and you are to take these facts as true. By contrast, what counsel have said in their opening statements, their questions, and their objections, as well as what they may say in their closing arguments, is not evidence. Also, anything that I have said or may say about the facts, as well as anything you have heard outside the courtroom, is not evidence.

You should bear in mind that a question put to a witness is never evidence; it is only the answer that is evidence. At times, a questioner may have incorporated into a question a statement that assumed certain facts to be true and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it simply because it was contained in a question. You also may not consider any answer that I directed you to disregard or that I directed be stricken from the record.

Exhibits that have been marked for identification or have been identified as demonstrative aids are not evidence, unless they have been admitted into evidence by the Court. If a demonstrative aid misstates the underlying evidence, it is the underlying evidence that you must consider. Materials used only to refresh a witness's recollection also are not evidence.

Arguments made by the attorneys are not evidence. If your recollection of the facts differs from the statements made by attorneys in their arguments, then it is your recollection that controls.

During the trial, I have been called upon to make various rulings. There may have been objections, or motions may have been made to strike answers. You are to disregard these procedural matters; they are matters of law, and although you may have been curious about them, you should not consider them.

Also, the fact that I may have commented during the course of the trial does not indicate any feeling of mine about the facts or the credibility of any witness. I have no such feelings, and my comments were intended only to clarify the issue at hand. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party because of any comment, question, or instruction of mine. It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Lastly, anything that you may have seen or heard when the Court was not in session is not evidence. You are to decide the case solely on the evidence that is presented to you in this courtroom.

**F. Direct and Circumstantial Evidence**

There are two types of evidence that you may use in reaching your verdict – direct evidence and circumstantial evidence. Direct evidence is when a witness testifies about something the witness knows by virtue of his or her own senses – something the witness has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit admitted into evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

There is a simple example of circumstantial evidence that is often used in this courthouse. Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom windows were covered and you could not look outside. Then, as you were sitting here, someone walked in with an umbrella that was dripping wet. A few minutes later, another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, so you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer from one or more established facts, on the basis of reason, experience, and common sense, the existence or non-existence of some other fact. An inference is not a speculation, suspicion, or guess. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence.

There are times when different inferences may be drawn from the same proven facts. One side asks you to draw one set of inferences, while the other side asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

## G. Credibility of Witnesses

You have had the opportunity to listen to and observe all of the witnesses. It is now your job to decide how believable you find each witness's testimony to be. How do you determine where the truth lies? You should use all of the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.

One thing you should consider is any bias, hostility, or affection that a witness may have shown for or against a party. It is your duty to consider whether the witness has permitted any such bias to color his or her testimony. If you find that a witness is biased, then you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

You should also consider any other interest or motive that the witness may have in cooperating with a particular party, as well as any interest the witness may have in the outcome of the case. Interest in the outcome of the case creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests. Therefore, you should accept the testimony of an interested witness with great care. Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter how strong their interest in the outcome of the case, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

Additional factors you should consider are: the opportunity the witness had to see, hear, and know the things about which he or she testified; the accuracy of the witness's memory; the witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's testimony; and the testimony's consistency or lack of consistency with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

If you find that any witness has willfully testified falsely to any material fact (that is, to an important matter), then the law permits you to disregard the entire testimony of that witness based upon the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.

While it is quite legitimate for an attorney to try to attack the credibility of a witness, as the sole arbiters of the facts, you must decide for yourselves which witnesses you will believe, what portion of their testimony you will accept, and what weight you will give to that testimony.

**H. Stipulations**

At the beginning of this trial, I read to you the stipulations between the parties. I will remind you now that a stipulation of facts is an agreement among the parties that certain facts are true. You must regard such agreed facts in the stipulation as true.

## I. Burden of Proof

I am now going to explain the concept of "burden of proof." This is a civil case, so the burden of proof is proof by a "preponderance of the evidence."

The party with the burden of proof on any given issue has the burden of proving to you every disputed element of that party's claim by a preponderance of the evidence. If you conclude that the party bearing the burden of proof has failed to establish that party's claim by a preponderance of the evidence, you must decide against that party on the issue you are considering.

What does a "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence, which refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you should consider the relevant testimony of all witnesses, regardless of who may have called them, and all of the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties, meaning it is as equally probable that one side is right as it is that the other side is right, then you must decide that issue against the party having the burden of proof. That is because the party with the burden of proof must prove more than simple equality of evidence. On the other hand, the party with the burden of proof does not need to prove any more than a preponderance of the evidence. This means that as long as you find on a given issue that the scales tip, however slightly, in favor of the party with the burden of proof, then you must find for that party on that issue, as that issue will have been proved by a preponderance of the evidence.

Once more I remind you, as I did at the beginning of the trial, that proof beyond a reasonable doubt is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this, and you should put it completely out of your mind.

## J. Available Evidence

Although plaintiff bears the burden of proof on his claims, the law does not require plaintiff to call as witnesses all persons who may appear to have some knowledge of the matters at issue in this trial. Nor does the law require that all things mentioned during the course of the trial be produced as exhibits.

You are not to rest your decision on what some absent witness who was not brought in might have testified to, or what he or she might not have testified to. No party has an obligation to present cumulative testimony.

**K. Multiple Claims and Multiple Parties**

This case has more than one Defendant, as well as multiple claims. In reaching a verdict, you must bear in mind that each of Plaintiff's claims are to be considered separately. In the same vein, you must consider the evidence against each Defendant separately. Each Defendant is entitled to a fair consideration of the evidence relating to that Defendant and is not to be prejudiced by any finding you make for or against any other Defendant.

## Substantive Instructions

### L. Overview

I'm now going to tell you about the law that you will have to apply to the facts as you find them. My instructions are to help you evaluate the evidence, in light of what you are asked to do, now that you have heard all the evidence. To the extent that there are any differences between the preliminary instructions that I gave you at the beginning of trial and these final instructions, the final instructions are the ones you must follow in your deliberations.

You have also been provided with a verdict form that you will fill out during your deliberations. On the form, there are spaces to indicate your verdict on each of Plaintiff's claims against each Defendant. You should proceed through the questions in the order in which they are listed. The verdict form contains eleven questions about whether Mr. Karupaiyan has met his burden of proof to as to Defendants' liability for racial discrimination and/or battery, and, if you find that he has, three questions about what, if any, damages he is owed as a result. You may not have to answer all of the questions. The instructions I am about to give you will guide you on when and how to answer each question.

**M. Summary of the Claims**

The person suing in a lawsuit is called the plaintiff. The plaintiff here is Palani Karupaiyan. Those being sued are called defendants. There are five defendants in this case: two corporations, Aetna, Inc. and Active Health Management, Inc., which I will refer to together as Aetna-AHM, and three people named Kalyani Lakshmi Bellamkonda, Robert Denner, and Purvi Jhala.

Under federal, state, and New York City law, an employer may not discriminate against any employee because of the employee's race, either in their treatment of the employee during their employment or in the termination of that employment. I will say more about these laws before you leave to deliberate.

Here, Mr. Karupaiyan was hired through APN Consulting, Inc. and Karupaiyan Consulting, Inc. to provide services to the corporate defendants, Aetna-AHM. He alleges that Aetna-AHM and Ms. Bellamkonda treated him worse than others who worked at Aetna-AHM at the same time he worked there because of his race, that Aetna-AHM ended their professional relationship unlawfully because of his race, and that racial comments were made to him at the time Aetna-AHM ended their professional relationship with him. Mr. Karupaiyan alleges that he was an employee, which is required for some of his claims. He further asserts that Aetna-AHM and Ms. Bellamkonda created a hostile work environment for him because of his race.

Aetna-AHM and Ms. Bellamkonda claim that Plaintiff was an independent contractor employed by Karupaiyan Consulting, Inc. and not an employee of Aetna-AHM. They maintain that they ended his services as an independent contractor, as they were able to do under the agreement governing Plaintiff's professional relationship, by providing him with two weeks' pay in lieu of notice that his professional relationship would end. Aetna-AHM and Ms. Bellamkonda

further contend that Plaintiff was unable to perform the tasks he was required to perform and that he displayed unprofessional behavior in the workplace. Aetna-AHM and Ms. Bellamkonda deny that Mr. Karupaiyan was treated worse because of his race, that race played a role in their decision to end their professional relationship with him, and that any racial comments were made to him.

Mr. Karupaiyan also claims that, when he was notified of Aetna-AHM's decision to end their professional relationship with him, Mr. Denner and Ms. Jhala physically dragged him by the hand into a dark room, pulled his hair, and kicked him before escorting him off the premises. Mr. Denner and Ms. Jhala deny any intentional physical contact with Mr. Karupaiyan.

Your role after trial is to assess the facts based on the evidence you hear and apply the law on which I will instruct you. Based on the facts that you "find," you will conclude whether Plaintiff has proven any of his claims by a preponderance of the evidence. You will then give your verdict for each claim.

Plaintiffs bring several different claims in this action, each of which I will now briefly summarize for you. Later, I will explain the law as to each claim in more detail.

Mr. Karupaiyan asserts claims of race discrimination against Aetna-AHM under four laws. These laws are: (i) 42 U.S.C. § 1981, known as "Section 1981," (ii) Title VII of the Civil Rights Act of 1964, known as "Title VII," (iii) N.Y. Exec. Law. § 296, known as the "New York State Human Rights Law," which you will hear me abbreviate as "NYSHRL", and (iv) N.Y.C. Admin Code 8-107, known as the "New York City Human Rights Law," which I will abbreviate as "NYCHRL."

Mr. Karupaiyan also asserts claims of race discrimination against Defendant Bellamkonda under each of these laws, except Title VII.

Finally, Mr. Karupaiyan asserts a claim of battery against Mr. Denner and Ms. Jhala.

I will now instruct you on the law of the claims.

**N. Substantive Law – Employment Relationship**

To establish his claims under Title VII, the New York State Human Rights Law, and the New York City Human Rights Law, Mr. Karupaiyan must show by a preponderance of the evidence that he was an Aetna-AHM employee.

It is not always clear whether the law considers someone an "employee," and it is not always clear who the law considers someone's "employer." Some people, for example, perform services for others while remaining self-employed as independent contractors.

In this case, you must decide: was Mr. Karupaiyan an employee of Aetna-AHM, or was he an independent contractor? You should answer this question in light of the economic realities of the entire relationship between the parties. There are a number of factors you must consider in light of all the evidence in the case:

(a) Who controls Mr. Karupaiyan's work? In an employer/employee relationship, the employer has the right to control the employee's work, to set the means and manner in which the work is done, and set the hours of work. In contrast, an independent contractor generally must accomplish a certain work assignment within a desired time, but the details, means, and manner by which the contractor completes that assignment are determined by the independent contractor, normally using special skills necessary to perform that kind of work.

(b) How is Mr. Karupaiyan paid? An employer usually pays an employee on a time worked, piecework, or commission basis, and an employer usually provides vacation or sick time, insurance, retirement, and other fringe benefits to the employee. An independent contractor

is ordinarily paid an agreed-upon or set amount, or according to an agreed formula, for a given task or job, and no benefits are provided.

(c) What tax treatment did Mr. Karupaiyan receive? Independent contractors generally do not have taxes withheld from their wages or payments, while employees do have taxes withheld.

(d) Who provides Mr. Karupaiyan's tools, equipment, and supplies? An independent contractor usually provides the tools, equipment, and supplies necessary to do the job—but an employee usually does not.

(e) How does Mr. Karupaiyan offer services? Independent contractors generally offer their services to the public or others in a particular industry, have procured the necessary licenses for performing their services, and may have a business name or listing in the phone book. Employees ordinarily work for only one or just a few employers, and do not have business names or listings.

(f) How much skill did Mr. Karupaiyan's job require? A highly skilled or specialized job is more likely to be considered that of an independent contractor. In contrast, an individual is more likely to be an employee if the work he did was less skilled or if he was doing the kind of work that employer usually does.

(g) Where was the work performed? If the work is performed at defendant's building, this could weigh in favor of a finding that an individual is an employee. If, however, work needed to occur in a particular place due to the nature of the work or in order to have access to necessary equipment, then this factor may be given less weight in the analysis.

(h) What was the nature of the work performed? If the work performed was part of the regular business of the defendant, the individual is more likely to be an employee. If the work was more specialized, the individual is more likely to be an independent contractor.

(i) To what extent did the plaintiff have discretion over when and how long to work? The more discretion he had, the more likely it is that he is an independent contractor.

(j) What was the duration of the relationship between the parties? A fixed term of work is generally indicative of independent contractor status, while an indeterminate period is more suggestive of employment.

(k) Did the defendant have a right to assign additional projects to the plaintiff? A traditional employee will typically be hired to work not just on a single project, but will instead be subject to the employer's right to assign additional and distinct projects during the term of their employment. By contrast, an independent contractor is more likely to have been hired to complete a particular project, with the relationship terminating upon completion of the contractually assigned project.

You should consider all the circumstances surrounding the work relationship—no single factor determines the outcome. This list is not exhaustive. You may consider any evidence you believe impacts your determination of whether Aetna-AHM employed Mr. Karupaiyan. Nevertheless, the extent of the right to control the means and manner of the worker's performance is the most important factor.

You may also consider the parties' intent, but the description the parties themselves give to their relationship is not controlling—substance governs over form.

If, after you consider the evidence, you find that Mr. Karupaiyan did *not* prove that he had an employment relationship with Aetna-AHM, you will find for Defendants Aetna-AHM and Ms.

Bellamkonda on this issue and, further, find for Defendants Aetna-AHM and Ms. Bellamkonda on Mr. Karupaiyan's race discrimination claims under Title VII, New York State Human Rights Law, and New York City Human Rights Law, as those claims require him to establish such a relationship.

In other words, if you find that Mr. Karupaiyan did *not* prove that he had an employment relationship with Aetna-AHM, you will consider *only* Plaintiff's Section 1981 discrimination claim against Aetna-AHM and Ms. Bellamkonda, as a plaintiff can establish those claims without first establishing an employment relationship.

If, however, you decide that Mr. Karupaiyan proved that he *did* have an employment relationship with Aetna-AHM, you will proceed to consider each of Mr. Karupaiyan's race discrimination claims under Title VII, New York State Human Rights Law, New York City Human Rights Law, and Section 1981.

**O. Substantive Law – Title VII and the NYSHRL: Elements of Race Discrimination Claim (Aetna-AHM)**

If you find that Plaintiff was an employee of Aetna-AHM, you will then need to determine whether Aetna-AHM discriminated against Plaintiff because of his race in violation of Title VII and the New York State Human Rights Law. To succeed on this claim, Plaintiff has the burden of proving the following by a preponderance of the evidence:

First, that Plaintiff was terminated by the defendants;

Second, that Plaintiff's race was a motivating factor in the Defendants' decision to terminate Plaintiff.

**COURT EXHIBIT 3A**

## P. Substantive Law – Title VII and the NYSHRL: "Motivating Factor" Defined (Aetna-AHM)

What does "motivating factor" mean? A plaintiff is not required to prove that his race was the sole or exclusive motivating factor for a defendant's decision to terminate him, or to prove that all of the defendant's stated reasons for the decision to fire him were false. A plaintiff must prove only that his race was a motivating factor. That is, the plaintiff's race was a factor that made a difference in the defendant's decision to terminate him.

If you find Mr. Karupaiyan has proven by a preponderance of the evidence that Mr. Karupaiyan's race was a motivating factor in the decision to terminate his employment, then you will find in favor of Mr. Karupaiyan on his claims against Aetna-AHM under Title VII and the NYSHRL.

Conversely, if you find that Mr. Karupaiyan has *not* proven that Plaintiff's race was a motivating factor in the decision to terminate his employment, then you must find in favor of Aetna-AHM on his claims under Title VII and the NYSHRL.

## Q. Substantive Law – NYSHRL: Individual Liability for Bellamkonda

In addition to naming Aetna and AHM as defendants in this case, Mr. Karupaiyan has also named Kalyani Lakshmi Bellamkonda as an individual defendant in his claim of race discrimination under the New York State Human Rights Law.

Ms. Bellamkonda is liable under the NYSHRL if Mr. Karupaiyan has proved by a preponderance of the evidence that she personally participated in the decision to terminate his employment, and that Mr. Karupaiyan's race was the motivating factor in that decision. Ms. Bellamkonda may not be held liable under the NYSHRL simply because she holds a position of seniority.

**R. Substantive Law – NYCHRL: Overview (Aetna-AHM and Bellamkonda)**

Mr. Karupaiyan is also bringing claims under the New York City Human Rights Law. The NYCHRL is broader than some of the other anti-discrimination laws we've discussed so far in that it presents a lower bar to a plaintiff seeking to bring a case, requiring only that he show differential treatment — that he was treated less well — because of his race. Mr. Karupaiyan alleges that he was treated less well than other employees at Aetna-AHM in two ways. First, he claims he was treated less well when Aetna-AHM terminated his employment. Second, he alleges that he was subjected to a hostile work environment. I will discuss each of these in turn.

**COURT EXHIBIT 3A**

**S. Substantive Law – NYCHRL: Termination Claim (Aetna-AHM and Bellamkonda)**

To succeed on his claim under the NYCHRL for terminating his employment, Mr. Karupaiyan must prove by a preponderance of the evidence that Aetna-AHM and/or Ms. Bellamkonda intentionally treated him worse than others who worked at Aetna-AHM because of his race. In other words, he must show that, when these Defendants terminated his employment, they were motivated *at least in part* by his race. Plaintiff must prove that his race was a motivating factor, even if it was not the sole motivating factor for the decision.

### T. Substantive Law – NYCHRL: Hostile Work Environment (Aetna-AHM and Bellamkonda)

Mr. Karupaiyan also alleges that he was subjected to a hostile work environment because of his race. A hostile work environment exists when the conduct at the workplace, including intimidation, ridicule, or insults, would cause a reasonable person in Mr. Karupaiyan's circumstances to consider the work environment to be hostile.

In deciding whether Plaintiff's work environment was hostile, you must consider all of the circumstances, including: (1) the effect on Mr. Karupaiyan's psychological well-being; (2) whether the conduct was humiliating or physically threatening; and (3) whether the conduct unreasonably interfered with Mr. Karupaiyan's work performance. Because the New York City Human Rights Law is not a workplace civility code, the discriminatory treatment must be more than what a reasonable person would view as a petty insult or slight, but even a single comment made with discriminatory intent may establish liability.

To recover for employment discrimination arising out of a hostile work environment, Mr. Karupaiyan must prove that (1) he was subjected to a hostile work environment because of his race; (2) a reasonable person in Mr. Karupaiyan's circumstances would consider the work environment to be hostile; and (3) Mr. Karupaiyan considered the work environment to be hostile.

If you find that Mr. Karupaiyan has proved by a preponderance of the evidence that Defendants Aetna-AHM and/or Ms. Bellamkonda treated him worse than others because of his race by creating a hostile work environment, you will find for Mr. Karupaiyan on his hostile work environment claim under the NYCHRL. Alternatively, if you find that Mr. Karupaiyan has not proven by a preponderance of the evidence that Defendants Aetna-AHM and/or Ms. Bellamkonda treated him worse than others, you will find instead for Aetna-AHM and Ms. Bellamkonda on Mr. Karupaiyan's NYCHRL hostile work environment claim.

## U. Substantive Law – Section 1981: Elements of Race Discrimination Claim (Aetna-AHM and Bellamkonda)

I'm now going to turn to Plaintiff's claim under Section 1981. To establish a defendant is liable under Section 1981, a plaintiff has the burden of proving the following elements by a preponderance of the evidence:

First, the plaintiff was terminated by the defendant;

Second, the defendant terminated plaintiff because of his race.

This claim does not require Mr. Karupaiyan to first establish that he was an employee, rather than an independent contractor, of Aetna-AHM.

## V. Substantive Law – Section 1981: "Because of" Defined (Aetna-AHM and Bellamkonda)

"Because of" means "by reason of" or "on account of." This is sometimes referred to as "but-for causation." This form of causation is shown whenever a particular outcome would not have happened "but for" the purported cause. It is a reason without which the termination would not have occurred.

A but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a "but-for cause." Often, events have multiple but-for causes. For example, if a car accident occurred both because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a "but-for cause" of the collision.

In the context of this claim, a defendant cannot avoid liability just by citing some other factor that contributed to the challenged employment decision. A plaintiff is not required to prove that his race was the sole or even the principal factor in the decision to terminate him, or that the reasons stated by the employer played no role in the employment decision. A "but-for cause" does not mean the sole cause or even a primary cause.

So long as the plaintiff's race was one but-for cause of that decision, that is enough to trigger the law.

If you find Mr. Karupaiyan has proven by a preponderance of the evidence that Aetna-AHM would not have terminated Mr. Karupaiyan but-for his race, then you will find in favor of Mr. Karupaiyan on his claims against Aetna-AHM under Section 1981.

Conversely, if you find that Mr. Karupaiyan has *not* proven that Aetna-AHM terminated Plaintiff *because of* his race, or that he would still have been terminated regardless of his race, then you must find in favor of Aetna-AHM on this Section 1981 claim.

**W. Substantive Law – Section 1981: Individual Liability for Bellamkonda**

In addition to bringing a claim against Aetna-AHM under Section 1981, Mr. Karupaiyan has also brought a claim against Ms. Bellamkonda. Mr. Karupaiyan alleges that Ms. Bellamkonda violated Section 1981 by participating in the decision to terminate his employment.

If you find that Mr. Karupaiyan has established by a preponderance of the evidence that Aetna-AHM would not have terminated him "but-for" his race under Section 1981, then you must also decide whether Ms. Bellamkonda *herself* did something because of Mr. Karupaiyan's race in making the decision to terminate plaintiff. It must be shown that the Ms. Bellamkonda had personal involvement in the decision to terminate Plaintiff, and that she would not have done so "but for" his race. Under Section 1981, an individual defendant may not be held liable just because they hold a position of seniority.

If you find Mr. Karupaiyan has proven by a preponderance of the evidence that Ms. Bellamkonda would not have terminated Mr. Karupaiyan but-for his race, then you will find in favor of Mr. Karupaiyan against Ms. Bellamkonda on his *individual* liability claim under Section 1981.

Conversely, if you find that Mr. Karupaiyan has *not* proven that Ms. Bellamkonda terminated his professional relationship with Aetna-AHM *because of* his race, or that she would have terminated him otherwise, then you must find in favor of Ms. Bellamkonda on this Section 1981 claim.

## X. Substantive Law – Business Judgment

Defendants may make an employment decision for any reason that is not unlawful. This can be a good reason, a bad reason, or no reason at all. The fact that a decision may be based on Defendants' subjective assessment of Mr. Karupaiyan's performance while he was working at Aetna-AHM or his conduct in the workplace does not by itself make the decision discriminatory. Defendants can use their business judgment and make decisions for any lawful reason. You cannot find Defendants liable merely because you personally disapprove of Defendants' actions or because you would have acted differently. But Defendants cannot discriminate on the basis of race.

## Y. Substantive Law – Battery (Denner and Jhala)

Mr. Karupaiyan also asserts battery claims against Robert Denner and Purvi Jhala. To prove this claim, Plaintiff must establish by a preponderance of the evidence that Mr. Denner or Ms. Jhala or both touched him intentionally, and that a reasonable person would find the manner of that touch offensive.

Intent involves the state of mind with which an act is done. If a person acts voluntarily to cause a result, then he or she is said to have intended the result. A person also acts intentionally if they have good reason to think a result will happen, even if they do not intend it. The intent required for battery is to cause a bodily contact that a reasonable person would find offensive.

An offensive bodily contact is one that is done to harm another, or one that offends a reasonable sense of personal dignity, or one that is otherwise wrongful.

If you find that a defendant intentionally made offensive bodily contact with Mr. Karupaiyan, you will find that such defendant committed a battery.

If, on the other hand, you find that a defendant did not intentionally cause such bodily contact with Mr. Karupaiyan, you will find that that defendant did not commit a battery.

## Z. Damages

I am now going to instruct you on damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether Defendants should be held liable.

**AA. Damages – Compensatory Damages**

If you find by a preponderance of the evidence that any Defendant is liable with respect to any of the claims brought by Mr. Karupaiyan, then you must also consider whether Mr. Karupaiyan is owed compensatory damages. To receive compensatory damages, Mr. Karupaiyan must prove not only that Defendants are liable for discrimination and/or battery, but also that he was injured as a result of their conduct.

Mr. Karupaiyan alleges that Defendants caused him injuries such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Mr. Karupaiyan must show by a preponderance of the evidence that these injuries would not have occurred if Aetna-AHM and/or Ms. Bellamkonda had not discriminated against him, or if Mr. Denner and/or Ms. Jhala had not physically touched him without his consent. Mr. Karupaiyan does not contend that Defendants caused him any physical injuries that required medical treatment.

If you find Mr. Karupaiyan is owed compensatory damages, you must award him an amount that will fairly compensate him for any injury that he actually sustained *because* of Defendants' conduct. Any damages amount should be guided by common sense. If you find any of his emotional distress was caused by something other than Defendants' conduct, such as personal problems or pre-existing conditions, then you must determine what part Defendants caused. The law does not require that Mr. Karupaiyan prove the amount of his losses with mathematical precision, but you may not award based on sympathy, speculation, or guesswork.

This amount should not include any wages that Mr. Karupaiyan would have earned if he had continued to work with Aetna-AHM, which is known as "back pay." Any back pay issues will be decided separately by the Court. Similarly, attorneys' fees and costs, if relevant at all, are for the court and not the jury to determine.

## BB. Closing Arguments

With these instructions in mind, you will now hear from the lawyers, who will give their closing arguments. I remind you that arguments by lawyers are not evidence, because the lawyers are not witnesses. However, what they say to you in their closing arguments is intended to help you understand the evidence and to reach your verdict. Please pay careful attention to their arguments.

## Deliberations of the Jury

### CC. Right To See Exhibits and Hear Testimony; Communications with Court

You are about to go into the jury room and begin your deliberations. You will have all of the exhibits on a flash drive provided to you. If you want any of the testimony read back to you, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting portions of the testimony.

Your requests for testimony – in fact any communication with the court – should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

## DD. Notes

Some of you have taken notes periodically throughout this trial. I want to emphasize to you, as you are about to begin your deliberations, that notes are solely to assist you as an aid to your memory. Do not share your notes with other jurors during deliberations. Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. All jurors' recollections are equal. If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

**EE. Duty to Deliberate/Unanimous Verdict**

You will now return to decide the case. In order to prevail, Plaintiff must sustain his burden of proof, as I have explained to you, with respect to each element of each claim. If you find that Plaintiff has succeeded, you should return a verdict in his favor on that claim. If you find that Plaintiff failed to sustain the burden on any element of the claim, you should return a verdict against Plaintiff.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

## FF. Selection of Foreperson

When you retire, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

## GG. Return of Verdict

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you should be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

## HH. Verdict Form

I have prepared a verdict form for you to use in recording your decision. On the form, there are spaces to indicate your determinations regarding each of Plaintiff's claims against each Defendant. You should proceed through the questions in the order in which they are listed. After you have reached a verdict, the foreperson should fill in the verdict sheet, sign and date it, and then give a note to the deputy stating that you have reached a verdict. Do not specify what the verdict is in your note. Remember, the verdict must be unanimous and must reflect the conscientious judgment of each juror.

## II. Closing Comment

Finally, I say this not because I think it is necessary but because it is the custom in this courthouse: You should treat each other with courtesy and respect during your deliberation.

All litigants stand equal in this room. All litigants stand equal before the bar of justice. Your duty is to decide between these parties fairly and impartially, to see that justice is done, all in accordance with your oath as jurors.

Thank you for your time and attentiveness.

Court Exhibit 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PALANI KARUPAIYAN,

Plaintiff,

- v. -

CVS HEALTH CORPORATION; AETNA; ACTIVEHEALTH MANAGAMENT; KALYANI LAKSHMI BELLAMKONDA; ROBERT DENNER; APN CONSULTING INC.; VEDANT PATHAK; NEELA PATHAK; PURVI JHALA,

Defendants.

No. 19-CV-8814 (JAV)

**VERDICT FORM**

***Palani Karupaiyan v. CVS Health Corporation, et al.*, No. 19-CV-8814 (JAV)**

**General Instructions:** Please read and answer the questions below, beginning with Liability Question No. 1, and following any instructions that appear before the questions. After you have answered each question, follow the instructions that correspond to your answer to that question. The instructions will either direct you to answer another question or direct you to **STOP** and skip to the Signature Page at the end of the document.

---

## I. QUESTIONS REGARDING LIABILITY

### Liability Question No. 1

Did Plaintiff prove, by a preponderance of the evidence, that he had an employment relationship with Aetna-AHM, meaning he was not an independent contractor?

_________ Yes or _________ No

***If your answer to Question 1 is "No," please proceed to Liability Question No. 8.***

***If your answer to Question 1 is "Yes," please move on to Liability Question No. 2.***

***Race Discrimination Under Title VII and the New York State Human Rights Law***
***(Against Aetna-AHM and Kalyani Lakshmi Bellamkonda)***

### Liability Question No. 2

Did Mr. Karupaiyan prove, by a preponderance of the evidence, that his race was a motivating factor in **Aetna-AHM's** decision to terminate him?

_________ Yes or _________ No

***Please move on to Liability Question No. 3.***

**Liability Question No. 3**

Did Mr. Karupaiyan prove, by a preponderance of the evidence, that **Kalyani Lakshmi Bellamkonda** is individually liable for Mr. Karupaiyan's termination under the New York State Human Rights Law?

__________ Yes or __________ No

***Please move on to Liability Question No. 4.***

**Race Discrimination**
**Under the New York City Human Rights Law**
**(Against Aetna-AHM and Kalyani Lakshmi Bellamkonda)**

**Liability Question No. 4**

Did Mr. Karupaiyan prove, by a preponderance of the evidence, that **Aetna-AHM** treated him worse than others who were working at Aetna-AHM at the same time he worked there by terminating his employment at least in part because of his race?

__________ Yes or __________ No

***Please move on to Liability Question No. 5.***

**Liability Question No. 5**

Did Mr. Karupaiyan prove, by a preponderance of the evidence, that **Kalyani Lakshmi Bellamkonda** is individually liable for Mr. Karupaiyan's termination under the New York City Human Rights Law?

__________ Yes or __________ No

***Please move on to Liability Question No. 6.***

**Liability Question No. 6**

Did Mr. Karupaiyan prove, by a preponderance of the evidence, that **Aetna-AHM** treated him worse than others who were working at Aetna-AHM by subjecting him to a hostile work environment because of his race?

_________ Yes or _________ No

***Please move on to Liability Question No. 7***

**Liability Question No. 7**

Did Mr. Karupaiyan prove, by a preponderance of the evidence, that **Kalyani Lakshmi Bellamkonda** is individually liable under the New York City Human Rights Law for subjecting Mr. Kurpaiyan to a hostile work environment because of his race?

_________ Yes or _________ No

***Please move on to Liability Question No. 8.***

**Race Discrimination Under Section 1981**
**(Against Aetna-AHM and Kalyani Lakshmi Bellamkonda)**

**Liability Question No. 8**

Did Mr. Karupaiyan prove, by a preponderance of the evidence, that his race was the "but-for" cause of **Aetna-AHM's** decision to end its professional relationship with him?

_________ Yes or _________ No

***Please move on to Liability Question No. 9.***

**<u>Liability Question No. 9</u>**

Did Mr. Karupaiyan prove, by a preponderance of the evidence, that **Kalyani Lakshmi Bellamkonda** is individually liable for Mr. Karupaiyan's termination under Section 1981?

__________ Yes or __________ No

***Please move on to Liability Question No. 10.***

**<u>Battery</u>**
**(Against Robert Denner and Purvi Jhala)**

**<u>Liability Question No. 10</u>**

Did Mr. Karupaiyan prove, by a preponderance of the evidence, that Robert Denner is liable for battery?

__________ Yes or __________ No

***Please move on to Liability Question No. 11.***

**<u>Liability Question No. 11</u>**

Did Mr. Karupaiyan prove, by a preponderance of the evidence, that Purvi Jhala is liable for battery?

__________ Yes or __________ No

***If you found in favor of Mr. Karupaiyan on any of his claims, meaning you answered "Yes" to at least <u>one</u> of Liability Question Nos. 2-11, continue to Part Two.***

***If you found for Defendants on all of Mr. Karupaiyan's claims, meaning if you answered "No" to all Liability Questions or "No" to all Liability Questions except Liability Question No. 1 (regarding the parties' employment relationship), STOP deliberating, as you have finished your deliberations, and SKIP to the Signature Page.***

## II. QUESTIONS REGARDING DAMAGES

**Damages Question No. 1**

***NOTE: To be answered only if you returned a liability verdict in favor of Mr. Karupaiyan on any of his discrimination claims against Aetna-AHM or Kalyani Lakshmi Bellamkonda* (Liability Question Nos. 2-5, 8-9).**

Has Mr. Karupaiyan proven by a preponderance of the evidence that he is entitled to compensatory damages from Aetna-AHM or Kalyani Lakshmi Bellamkonda because she discriminated against him because of his race when ending the Aetna-AHM's professional relationship with him early?

_________ Yes or _________ No

***If your answer to Damages Question No. 1 is "Yes," what is the amount that will fairly and reasonably compensate Mr. Karupaiyan for the harm that he suffered? $____________***

***If you awarded Mr. Karupaiyan compensatory damages, how much of the damages should be paid by Aetna-AHM: $______________***

***If you awarded Mr. Karupaiyan compensatory damages, how much of the damages should be paid by Kalyani Lakshmi Bellamkonda: $______________***

**Damages Question No. 2**

***To be answered only if you returned a liability verdict in favor of Mr. Karupaiyan on his hostile work environment claim against Aetna-AHM and/or Kalyani Lakshmi Bellamkonda* (Liability Question Nos. 6-7).**

Has Mr. Karupaiyan proven by a preponderance of the evidence that he is entitled to compensatory damages because a racially hostile work environment existed at Aetna-AHM while he was working there?

_________ Yes or _________ No

***If your answer to Damages Question No. 2 is "Yes," what is the amount that will fairly and reasonably compensate Mr. Karupaiyan for the damages that he suffered? $_________***

***If you awarded Mr. Karupaiyan compensatory damages, how much of the damages should be paid by Aetna-AHM: $______________***

***If you awarded Mr. Karupaiyan compensatory damages, how much of the damages should be paid by Kalyani Lakshmi Bellamkonda: $______________***

**<u>Damages Question No. 3</u>**

***To be answered only if you returned a liability verdict in favor of Mr. Karupaiyan on his battery claim against Robert Denner and/or Purvi Jhala* (Liability Question Nos. 10-11).**

Has Mr. Karupaiyan proven by a preponderance of the evidence that he is entitled to compensatory damages from Robert Denner and/or Purvi Jhala because of the battery?

_________ Yes or _________ No

***If your answer to Damages Question No. 3 is "Yes," what is the amount that will fairly and reasonably compensate Mr. Karupaiyan for the damages that he suffered because of the battery? $_____________________________***

***If you awarded Mr. Karupaiyan compensatory damages, how much of the damages should be paid by Robert Denner: $______________***

***If you awarded Mr. Karupaiyan compensatory damages, how much of the damages should be paid by Purvi Jhala: $______________***

***You have finished your deliberations. Proceed to the signature page.***

**SIGNATURE PAGE**

Instructions to the Foreperson: Once you have indicated the jury's answers to the questions above and have been directed by the instructions to the signature page, simply sign and date this page in the space provided below. Then inform the Clerk of Court or Court Security Officer that you have finished deliberating.

By their signature below, the Jury Foreperson affirms that the above are the answers of the jury in the case of ***Palani Karupaiyan v. CVS Health Corporation, et al.*****, 19-cv-8814 (JAV).**

______________________________
JURY FOREPERSON

Dated: May 14, 2026
New York, New York

05.14.2024
19cv8814

We have reached a verdict.